## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIBEL MOSES, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE NEW YORK TIMES COMPANY, d/b/a *The New York Times*,<br><br>        Defendant. | Civil Action No.: 1:20-cv-4658<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Maribel Moses brings this action on behalf of herself and all others similarly situated against Defendant The New York Times Company, d/b/a *The New York Times* ("NYT" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans for *The New York Times* (collectively, the "NYT Subscriptions") through its website at https://www.nytimes.com and its mobile application (the "NYT Website" and the "NYT App"). Defendant is an international media company that, among other activities, publishes and distributes *The New York Times*, including both its print and online editions. Relevant to Plaintiff's allegations, when consumers sign up for *The New York Times* at the NYT Website or App, Defendant actually enrolls consumers in a program that automatically renews customers' NYT Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card,

1

debit card, or third party payment account (collectively, "Payment Method"). In doing so, Defendant's NYT Website and App fail to provide the requisite disclosures and authorizations required to be made to California consumers under California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*

2.      Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; and (c) provide an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions. As will be discussed below, the enrollment process for the NYT Subscriptions, which can be completed through the NYT Website or App, uniformly violates each of these requirements. Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their NYT Subscriptions.

3.      Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b). Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b). As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the

automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL.  Cal. Bus. & Prof. Code § 17603.

4.      For the foregoing reasons, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's NYT Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their NYT Subscriptions.  Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) conversion; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (4) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; and (5) unjust enrichment.

## PARTIES

5.      Plaintiff Maribel Moses is a citizen of California, residing in Los Angeles, California.  In or around August 2019, Ms. Moses purchased a monthly digital subscription to *The New York Times* from Defendant's website while in California.  During the enrollment process, but before finally consenting to Defendant's subscription offering, Ms. Moses provided her PayPal account information directly to Defendant.  At the time Ms. Moses enrolled in her NYT Subscription, Defendant did not disclose to Ms. Moses all required automatic renewal offer terms associated with the subscription program or obtain Ms. Moses's affirmative consent to those terms.  Further, after Ms. Moses completed her initial order, Defendant sent Ms. Moses an acknowledgment email that failed to provide Ms. Moses with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or

information regarding how to cancel Ms. Moses's NYT Subscription in a manner capable of being retained by her.  Ms. Moses did not receive any other acknowledgement that contained the required information.  After she first signed up for her NYT Subscription in August 2019, Defendant automatically renewed Ms. Moses's NYT Subscription and charged Ms. Moses's PayPal account the rate associated with her NYT Subscription an additional ten times, for a total of eleven unauthorized charges amounting to Ms. Moses's PayPal account.  On or around May 18, 2020, Ms. Moses attempted to cancel her NYT Subscription via email.  Nevertheless, one week later, Defendant continued to automatically renew Ms. Moses's NYT Subscription and charge her PayPal account for the subsequent month.  Ultimately, Ms. Moses's May 18 attempt was unsuccessful, and she was unable to terminate her subscription due to Defendant's confusing cancellation policy, the most crucial aspects of which were missing from the Checkout Page and acknowledgment email.  As a result, Ms. Moses remains subscribed to *The New York Times* today.  Defendant's disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be a gift to consumers.  Cal. Bus. & Prof. Code § 17603.  Had Defendant complied with the ARL, Ms. Moses would have been able to read and review the pertinent automatic renewal terms prior to purchase, and she would have not subscribed to *The New York Times* or she would have cancelled her NYT Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period.  As a direct result of Defendant's violations of the ARL, Ms. Moses suffered, and continues to suffer, economic injury.

6.      Defendant The New York Times Company ("NYT" or "Defendant") is a New York corporation with its principal place of business at 620 Eighth Avenue, New York, New York 10018.  Defendant is an international media company that publishes *The New York Times*, including both its print and online editions, which it markets to consumers through the NYT

Website and App.  Defendant is also responsible for the promotion, advertisement, and/or marketing of the automatically renewing subscription plans for *The New York Times*, and it owns and operates the NYT Website and App, where it markets and sells its NYT Subscriptions. Defendant sells NYT Subscriptions in California and New York and has done business throughout California and New York, and throughout the United States, at all times during the Class Period.  Defendant also made automatic renewal or continuous service offers to consumers in California and New York, and throughout the United States, via the NYT Website and/or App during the Class Period.

7.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York.

10.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein

occurred in this District.  Also, Defendant's principal place of business is located in this District.

## FACTUAL ALLEGATIONS

### A.    Background On The Subscription e-Commerce Market

11.    The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1] Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years.  According to TechCrunch.com, "[s]ubscriptions have turned into a booming business for app developers, accounting for $10.6 billion in consumer spend on the App Store in 2017, and are poised to grow to $75.7 billion by 2022."[2]  Subscription e-commerce services now target a wide range of customers and cater to a variety of specific interests.

12.    Defendant "launched the subscription model in March 2011, becoming one of the first American news organizations that put its content behind a paywall after allowing unrestricted access."[3]  Since then, Defendant has been "seeing positive results at a time when newspapers nationwide have been suffering."[4]

13.    The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to

---

[1] *See* https://www.coredna.com/blogs/ecommerce-subscription-services.

[2] *Sneaky subscriptions are plaguing the App Store*, TechCrunch (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[3] *The New York Times increases digital subscription price for the first time*, CNN Business (Feb. 4, 2020), https://www.cnn.com/2020/02/04/media/newyorktimes-raises-subscription-price/index.html.

[4] *New York Times Company Continues to Add Online Subscribers as Digital Advertising Grows*, NYTimes (May 8, 2019), https://www.nytimes.com/2019/05/08/business/media/new-york-times-company-earnings.html.

Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5]

14.     However, there are downsides associated with the subscription-based business model.  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[6]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[7]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[8]  As these companies have realized, "[t]he real money is in the inertia."[9]  To facilitate consumer inertia, several subscription e-commerce companies, including Defendant, fail to fully disclose the terms of their automatic-renewal programs.

15.     Defendant has successfully implemented this tactic.  "From 2017 to 2018,

---

[5] *The State Of The Subscription Economy, 2018*, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[6] *Thinking inside the subscription box: New research on e-commerce consumers*, McKinsey & Company (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[7] *Id.*

[8] *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets*, Washington Post (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[9] *Id.*

revenues from the Times' digital-only subscription packages increased 18% year-over-year to $401 million[.]"[10]  By the end of 2019, Defendant "passed $800 million in annual digital revenue for the first time[.] … Most of that $800.8 million — more than $420 million — came from news subscribers."[11]  According to Mark Thompson, NYT's president and CEO, the fiscal year of 2019 was "'a record-setting year for [Defendant's] digital subscription business, the best since the company launched digital subscriptions [in 2011].'"[12]

**B.     Online Consumer Complaints About The NYT Subscriptions**

16.     Defendant's recent growth in revenues and subscriber count with respect to its digital NYT Subscriptions coincides with a sharp decline in subscriber satisfaction as the NYT Website and App have become riddled with "dark patterns."  A dark pattern is "a process design that requires several complex procedures to do simple things."  One consumer complaint indicates that Defendant has been "using dark patterns to prevent user unsubscription from [its] site" by adopting "complex procedures to increase the friction in the subscription cancellation process and keep the user subscriber."  For instance, although one page of the NYT Website states that consumers can cancel their NYT Subscription via chat, "[t]he chat facility is only available in-office hours (07:00 AM-10:00 PM) on weekdays and 07:00 AM-03:00 PM on weekends[, and] most of the time and days, their chat facility is unavailable due to excessive chat from customers[.]"[13]

---

[10] *The New York Times increases digital subscription price for the first time*, CNN Business (Feb. 4, 2020), https://www.cnn.com/2020/02/04/media/newyorktimes-raises-subscription-price/index.html.

[11] *The New York Times Tops 5 Million Subscriptions as Ads Decline* (Feb. 6, 2020), https://www.nytimes.com/2020/02/06/business/new-york-times-earning.html.

[12] *Id*.

[13] *NYT shady unSubscription dark pattern explained & steps to exit* (May 1, 2020), https://thedigitalhacker.com/nyt-found-to-be-using-dark-patterns/.

17.     In fact, many subscribers have complained of the unclear billing practices and confusing cancellation policy associated with the NYT Subscriptions on the Better Business Bureau website:[14]



**Complaint Type:** Billing/Collection Issues     **Status:** Answered ⊘

02/28/2020

I was subscribed to the New York Times and cancelled 3 times over the course of 3 months. Every month I continue to be billed the $5. They refuse to offer a refund. When you call, text or chat to cancel the subscription, there is always a "longer than usual wait time". Sometimes I do not hear back and other times it takes hours.



**Complaint Type:** Billing/Collection Issues     **Status:** Resolved ⊘

01/29/2020

I have been attempting to cancel my digital subscription with this company for the past 24 hours. I first attempted to do so through their online chat. Eventually the technician stopped replying and was taking an inordinate amount of time to reply when they were replying (asking basic elections like "why do I want to cancel", "what is my name". So once they hadn't replied for 10 minutes I switched to their text message cancellation service. I was only ever answered by the automatic reply system. I was finally connected with a representative almost 12 hours later at 4 AM. I was unable to reply since I was asleep. Instead of canceling my subscription like I requested, they offered me a new deal. When I replied at 6 AM after waking up, I got another automated message stating that I would be reconnected with a representative but that I would have to wait again.



**Complaint Type:** Billing/Collection Issues     **Status:** Answered ⊘

04/07/2020

To retain me as a customer, the NYT agreed to freeze my monthly subscription rate at $15.00 for as long as I continued to subscribe.The NYT continued to abide by this agreement for several years. Then, in the last bill(and without notice) the NYT raised my subscription price to $18.06 per month. I immediately complained to the NYT by phone about the unilateral price increase. I was channeled through 3 separate customer service representatives. All of whom admitted that their notes stated that the NYT had, in fact, made such an agreement with me. But they emphasized that the paper would not live by the agreement, essentially repudiating it, now indicating,in a spirit of buyer's remorse. that NYT should not have been made such an agreement

---

[14] *See* https://www.bbb.org/us/ny/new-york/profile/publishers-periodical/the-new-york-times-company-0121-229/complaints.

18.     Other subscribers to *The New York Times* left similar complaints on Yelp.com:[15]

---

**Kelsea E.**
**Tuscaloosa, AL**
👫 91 friends
⭐ 2 reviews

 9/23/2019

The online subscription is great if you plan on paying $15 every month for the rest of your life. Had to cancel not once, not twice, but three times as of today. The second time I cancelled they refunded me for the month because I had saved my initial cancellation text exchange. I deleted it following the second cancellation because surely it wouldn't happen twice, but what do you know? I was charged again. When I emailed this time without proof they refused a refund. I notified my bank to not accept any further charges from New York Times, so after this review I will not longer have to think of them. Definitely left a bad taste in my mouth about the organization of this company.

---

**F. C.**
**West Vancouver, Canada**
👫 9 friends
⭐ 71 reviews

 1/21/2019

Digital subscription woes -- double charging! Watch your billing!

While sorting my receipts for income tax purposes, I noticed that from one month to the next my subscription rate doubled and continued at twice the original rate for 5 months. I couldn't figure out why, so I telephoned The New York Times today. According to call-taker at a call centre in Florida, my "promotion" subscription rate had run its course after 12 months and that for the past 5 months I was being charged at the usual rate of $21 per month. I had completely forgotten it was a "promotion." They make the big bucks by taking advantage of their customers' forgetfulness!

---

**DANA S.**
**San Jose, CA**
👫 0 friends
⭐ 6 reviews

8/6/2018

Hideous customer service.
Called to cancel my subscription several days before it was due for renewal: they tied me up on the phone repeatedly trying to get me to continue.
Then they failed to cancel my subscription, charging me for their failure to end it!

---

[15] *See* https://www.yelp.com/biz/the-new-york-times-san-francisco-2?start=40.

**D J.**
Laguna Beach, CA
0 friends
9 reviews

 1/23/2018

I have been trying since December 8, 2017 to have the delivery of the New York Times to my residence stopped.  They are champions of the blah, blah, blah platitudes but no one apparently has the wherewithal to make the phone call to the person who actually makes the delivery.  Bottom line:  don't bother to start the delivery as you will NEVER GET IT STOPPED.

**Patricia S.**
Jacksonville, FL
0 friends
19 reviews
2 photos

7/31/2017

I've subscribed to the Sunday print edition for years. Yesterday, after chronic customer service problems (account misinformation, billing & delivery issues), I canceled via online chat w/ a customer service representative (Cameron). First he/she pushed discount incentives if I would keep the subscription. When I declined, he/she assured me an email confirming cancellation would be sent. Never happened. The email sent said only that I'd experienced a delivery issue. This morning I had to call and go through the cancellation process again. We'll see if it actually happens. That a newspaper of such high-caliber journalism has such low-grade business operations is a shame.

**Larry K.**
Danville, CA
1 friend
12 reviews
1 photo

7/14/2017

Watch out for the NYT promotional offers.  They're easy to get in to but to cancel you have to call (no online cancellations allowed) and you go through a process where they give you a big sales pitch before they will process your cancellation.  Funny, they can sign you up in a "New York minute" with your credit card but can't offer a simple cancellation.

//

//

//

//

//

//

11

19.     Yet more unhappy subscribers left negative reviews on the "New York Times Customer Service" webpage at CustomerServiceScoreboard.com:[16]

---

**30**
Dec

**Posted by Unhappy** 🚩

*12/30/19 6:07PM*

I have wasted a total of three hours today trying to connect with NYT customer service. This is in addition to the two hours I spent on Dec. 17 on the phone and also chatting with a customer service agent.

This is the very WORST customer service I have ever experienced!

You need more staff, more knowledgeable staff, a system that allows customer service to address/make changes to gift subscriptions. This is a long, painful story, too long at this point to retell. I am most dissatisfied!

---

**13**
Nov

**Posted by Harley, Summer** 🚩

*11/13/19 1:05PM*

Honestly worst customer service I have ever come across. They always take half an hour to solve your problem. They offered me a four month free subscription then sneakily charged money on my account. When I requested refund it took them ages to set up a new account. Now I am quite prepared that my money will just be snatched up.

---

**20**
Aug

**Posted by Anonymous** 🚩

*8/20/19 1:25PM*

All I want to do is change the credit card number you charge for my monthly subscription. I don't in Understand what you are telling me to do. Could I please talk to a real person?

---

**27**
Jul

**Posted by Kwikoff** 🚩

*7/27/19 9:28AM*

Why do you make it so damn hard to cancel a subscription? I have spent almost 30 minutes trying to do so. Your digital newspaper is too difficult to use. Your newspaper has changed since I first subscribed and I do not find it interesting. You don't need my phone number or anything else.

---

**27**
Dec

**Posted by Anonymous** 🚩

*12/27/19 8:04AM*

I keep getting charged each month. I wanted to cancel. have been texting for OVER an hour waiting for a response besides someone will be with you shortly. It should not be this difficult to cancel a 6$ a month subscription. They are doing this so you go screw it and keep charing you. even if it is 6$ a month , imagine the millions of people they are doing this too. I will resort to canceling my credit card if this crap continues

---

[16] *See* https://www.customerservicescoreboard.com/New+York+Times.

20.     The above reviews are just a sampling of numerous negative reviews consumers have left about Defendant's NYT Subscriptions and the unclear cancellations policy and confusing billing associated with the Subscriptions.

**C.     California's Automatic Renewal Law**

21.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).  More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

22.     The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.  If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.
>
> (2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

23.     Section 17602(b) of the ARL further provides:

A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

24.     Additionally, following the 2018 amendment to the ARL, the updated law requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(c) provides:

[A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain

consumer consent to the non-discounted price prior to billing.  *Id.*

25.     Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

26.     Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

27.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).

28.     Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the

consumer's part to the business[.]"  Cal. Bus. & Prof. Code § 17603.

29.     As alleged below, Defendant's practices on the NYT Website and App systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

**D.     Defendant's Business: The Subscription Enrollment Process**

30.     At all relevant times, Defendant offered, via the NYT Website and App, various NYT Subscriptions for *The New York Times*, a publication available in digital and print formats. These paid subscriptions are offered on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels.  For example, customers that sign up for a *monthly* NYT Subscription are, at the end of the initial one-month period, automatically renewed and typically charged the full amount for the next month, and every month thereafter if they do not cancel.  Defendant's NYT Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

//

//

//

//

//

//

//

//

//

//

31.     Consumers can sign up for one of Defendant's subscription plans through the NYT Website, on either its mobile or desktop format, or Defendant's mobile application. Defendant provides monthly and/or yearly subscription plans, as shown in the screen shot below:[17]



32.     After selecting a subscription option, consumers are directed to subsequent webpages on the NYT Website and/or App where they are prompted to create a membership account and input their billing information.  After these steps, consumers are directed to another, final webpage (the "Checkout Page"), where prospective subscribers are invited to complete their purchase.  On the Checkout Page, there are two distinct areas of the webpage that contain potentially relevant information regarding the automatic renewal offer terms associated with the NYT Subscriptions: (1) the block of text located to the right of the screen, immediately below the bolded and capitalized text that reads "Payment Information"; and (2) the block of text located immediately above the "Purchase Subscription" button.  These blocks of text contain the

---

[17] This screen shot was captured from the NYT Website on April 6, 2020.  While the prices contained therein accurately reflect the costs associated with the various NYT Subscriptions as of that date, exact costs on other dates may vary based on the pricing structure in place on the date of purchase and the availability of a promotional discount offer at that time, among other factors.

following language:



33.     Regardless of how the consumer subscribes (via the NYT Website on its mobile or desktop format, or through the mobile application) or which NYT Subscription plan the consumer selects, Defendant fails to disclose the full terms of its auto-renewal program either before or after checkout, and it never requires the individual to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for NYT Subscriptions.  Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

### E.     Defendant Violates California's Automatic Renewal Law

34.     At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).

//

//

//

**i.      Defendant Fails To Clearly And Conspicuously Present The NYT Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

35.     First, the relevant portion of the Checkout Page does not present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code §17601(b), in violation of Section 17602(a)(1) of the ARL.  Specifically, although the Checkout Page states that the customer's "subscription will continue until [the customer] cancel[s,]" it nevertheless fails to comply with the ARL because it is placed in the block of text positioned near the top right of the webpage, while the "Purchase Subscription" button appears towards to bottom left of the webpage.  It is therefore not "in visual proximity to the request for consent" to the automatic renewal offer.  Moreover, it is presented in the same size, color, and font as that of the surrounding block of text, and it is placed alongside other, unrelated disclosures without distinction from the surrounding text of the same size in any manner that calls attention to the language.  In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as defined by Cal. Bus. & Prof. Code § 17601(c).  Given such inconspicuousness, Defendant fails to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by statute.  Cal. Bus. & Prof. Code §§ 17601(b)(1), 17602(a)(1).

36.     For the same reasons, the relevant portion of the Checkout Page does not adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period.  Although, the "Payment Information" portion of the Checkout Page states, in the case of the monthly digital access subscription displayed above, for example, that the subscriber's "payment method will be automatically charged [a specific dollar amount] every 4 weeks for the first year [and] … will then be automatically charged [at a specific rate] every 4

weeks thereafter, starting on [a particular date,]" it does not contain a clear and conspicuous statement of those terms *in visual proximity* to the "Purchase Subscription" button.  Thus, Defendant does not provide notice of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(3), in violation of Section § 17602(a)(1) of the ARL.

37.     Defendant also fails to present a complete "description of the cancellation policy that applies to the offer."  Cal. Bus. & Prof. Code § 17601(b)(2).  With respect to cancellation, the relevant portion of the Checkout Page states: "You may cancel at any time.  The cancellation goes into effect at the start of your following billing cycle."  However, the Checkout Page contains no explanation of *how* to cancel.  For instance, the Checkout Page does not mention that subscribers must contact Customer Care in order to cancel their NYT Subscriptions, which they can do by calling a toll-free number during particular hours or by utilizing the chat function on the NYT Website, as is set forth in the "Help" articles accessible from the "Account Management" page of the NYT Website.[18]  Yet, Defendant failed to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with statute because the ARL requires that companies provide such information "in visual proximity to the request for consent to the [automatic renewal] offer."  Cal. Bus. & Prof. Code § 17602(a)(1).  In other words, the

---

[18] *See* https://help.nytimes.com/hc/en-us/articles/360003499613-Cancel-your-subscription ("Cancel Your Subscription  * There are several ways to unsubscribe from The Times. …  * Speak with a Customer Care Advocate  * Call us at 866-273-3612 if you are in the U.S. Our hours are 7 a.m. to 10 p.m. E.S.T. Monday to Friday, and 7 a.m. to 3 p.m. E.S.T. Saturday and Sunday. …  * Chat with a Customer Care Representative  * When chat is available, click the 'Chat' button to the right or bottom of this page.").

required terms must appear on the Checkout Page, and more precisely they must appear in the block of text immediately above the "Purchase Subscription" button on that page.  However, Defendant failed, and continues to fail, to satisfy that requirement.

38.     Moreover, the disclosures hidden in links on the Account Management page also fail to place consumers on notice of the cancellation policy as required by statute because consumers may only access that portion of the NYT Website *after* completing the checkout process and fulfilling the subscription agreement, and the ARL requires disclosure of such terms "before the subscription or purchasing agreement is fulfilled."  Cal. Bus. & Prof. Code § 17602(a)(1).  Additionally, Defendant does not specify anywhere on the Checkout Page that "[d]igital products sold as part of a promotion[] … may have different cancellation or refund policies that will be made clear at the time of purchase[,]" or that "[c]ertain promotions may not permit cancellation during the promotional period[,]" as do terms set forth on other pages of Defendant's website.[19]  Defendant therefore fails to present pertinent information regarding cancellation "before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer[,]" as the ARL requires.  Cal. Bus. & Prof. Code § 17602(a)(1).

39.     Furthermore, although the Checkout Page states the initial amount to be charged to the consumer's Payment Method for the first renewal period of the consumer's NYT Subscription (*e.g.*, the amount to be charged on a single occasion for the first month of a monthly subscription, or for the first year of a yearly subscription), it does not contain a clear and conspicuous statement *in visual proximity* to the "Purchase Subscription" button of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the

---

[19] *See* https://help.nytimes.com/hc/en-us/articles/115014893968-Terms-of-sale#canceldigi.

automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(3), in violation of Section § 17602(a)(1) of the ARL.  Cal. Bus. & Prof. Code § 17602(a)(1).

**ii.    Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The NYT Subscriptions.**

40.     Second, at no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with the NYT Subscription, *i.e.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process.  Accordingly, when Defendant automatically renews customers' NYT Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

**iii.   Defendant Fails To Provide A Post-Checkout Acknowledgment That Includes Clear And Conspicuous Disclosures Of The NYT Subscription Offer Terms.**

41.     Finally, after Plaintiff and the members of the Class subscribed to one of Defendant's NYT Subscription plans, Defendant sent to Plaintiff and the Class email follow-ups regarding their purchases.  The subject line of the email stated: "NYTimes Digital Subscription Order Confirmation."  The body of the email contained, in relevant part, the following text and images:

//

//

//

23

42.    The acknowledgment email contains even less of the required information than is featured on the relevant portion of the Checkout Page, discussed above.  Namely, the purchase confirmation does not provide:  that the subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17602(b)(1); a "description of the cancellation policy that applies to the offer[,]" Cal. Bus. & Prof. Code § 17602(b)(2); or a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic

renewal plan or arrangement, and that the amount of the charge may change[, and,] if that is the case, and the amount to which the charge will change," Cal. Bus. & Prof. Code § 17602(b)(3). As such, the acknowledgment fails to "include[] the automatic renewal offer terms … , cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer" in violation of Section 17602(a)(3) of the ARL.

43.     By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL.  As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

44.     Plaintiff Maribel Moses is an individual consumer who purchased a monthly digital NYT Subscription from Defendant's website while in California on or around August 20, 2019.  Ms. Moses signed up for her NYT Subscription at the promotional or discounted rate of $4.00 a month.  At the time of enrollment, Ms. Moses provided her PayPal account information directly to Defendant.

45.     Before Ms. Moses purchased her NYT Subscription, Defendant did not disclose to Ms. Moses all required automatic renewal offer terms associated with the subscription program.  Additionally, although the Checkout Page from which Ms. Moses made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Moses on notice.  Specifically, prior to completing her initial NYT Subscription order, the relevant screens and buttons presented to Ms. Moses did not clearly and conspicuously state that her NYT Subscription would automatically

renew every month until she cancelled, and they did not describe the full cancellation policy that applied to her purchase.

46.     At no point prior to completing her initial purchase did Defendant obtain Ms. Moses's affirmative consent to an agreement containing the automatic renewal offer terms.

47.     After Ms. Moses completed her initial order, Defendant sent Ms. Moses an acknowledgment email that her NYT Subscription had been activated.  However, that acknowledgement email failed to provide Ms. Moses with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Moses's NYT Subscription in a manner capable of being retained by her.  Ms. Moses did not receive any other acknowledgements that contain the required information.

48.     As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Moses selected and paid for her discounted NYT Subscription in or around December 2019, she was unaware that Defendant enrolled her in an "automatic renewal" program under which the subscription would renew each month at varying rates unless Ms. Moses chose to cancel.

49.     Defendant nevertheless automatically renewed Ms. Moses's NYT Subscription and charged Ms. Moses's Payment Method an additional ten times, for a total of eleven unauthorized charges amounting to $44.00 to Ms. Moses's PayPal account without her knowing consent.

### Defendant's Inconsistent Billing And Shipping Practices

50.     During the course of her NYT Subscription, Ms. Moses found Defendant's billing practices confusing and unpredictable.  As shown by the table below, the monthly renewal fees that Defendant charged to Ms. Moses's Payment Method from August 2019 to May 2020 posted

to her PayPal account at different points each month, which came as a surprise to Ms. Moses:

| Billing Date | Amount |
|---|---|
| 08/20/2019 | $4.00 |
| 09/16/2019 | $4.00 |
| 10/14/2019 | $4.00 |
| 11/11/2019 | $4.00 |
| 12/09/2019 | $4.00 |
| 01/06/2020 | $4.00 |
| 02/03/2020 | $4.00 |
| 03/02/2020 | $4.00 |
| 03/30/2020 | $4.00 |
| 04/27/2020 | $4.00 |
| 05/25/2020 | $4.00 |
|  | **Total: $44.00** |

51.     During the life of Ms. Moses's NYT Subscription, Defendant's practices with respect to billing also varied widely from month-to-month and were therefore a source of continual frustration for Ms. Moses.  Because Defendant tended to charge Ms. Moses's Payment Method at different points of each month, Ms. Moses could not discern any regular monthly billing schedule.  Moreover, Ms. Moses had not expected that Defendant would charge a renewal fee to Ms. Moses's Payment Method *twice* for certain months, as Defendant did in March 2020.

52.     Ms. Moses's confusion and surprise with respect to Defendant's billing practices is the direct result of Defendant's failure to place Ms. Moses on notice of the recurring amount that would be charged to Ms. Moses's PayPal account as part of her NYT Subscription.  Because Defendant failed to disclose this material information in the manner required by statute, Ms. Moses was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.

**Defendant's Undisclosed Cancellation Policy**

53.     Frustrated with Defendant's confusing billing practices and other hidden automatic renewal terms, Ms. Moses finally attempted to cancel her NYT Subscription – something she had been meaning to do ever since she had first enrolled – in May 2020. However, finding no useful guidance in the vague and incomplete terms that were presented to her on the Checkout Page at the point of sale and later in the acknowledge email, Ms. Moses struggled immensely with the cancellation process.

54.     Ultimately, on or around May 18, 2020, Ms. Moses attempted to cancel her NYT Subscription via an email addressed to nytimes-paypal@nytimes.com (the "NYT-PayPal email address").  Ms. Moses's email to Defendant contained the subject line "unsubscribe".  The body of the email stated: "Hi I'd like to cancel my subscription to the New York Times.  * Please let me know if you need any additional information!  * Thank you".  Ms. Moses never received any reply from Defendant in regard to her May 18 email.

55.     Because Ms. Moses had received several emails in the preceding months from the NYT-PayPal email address concerning her NYT Subscription, she had believed her May 18 email to be an acceptable method of cancellation.  However, on June 16, 2020, upon review of her PayPal account banking history, Ms. Moses learned that, notwithstanding her attempt to cancel on May 18, 2020, Defendant had continued to automatically renew her NYT Subscription on a recurring, monthly basis and, without Ms. Moses's authorization, charged Ms. Moses's Payment Method another monthly renewal fee for $4.00 on May 25, 2020.  Thus, Ms. Moses attempt at cancellation one week earlier was utterly ineffective.  As a result, Ms. Moses is still enrolled in, and continues to receive monthly renewal charges for, her NYT Subscription to this day, despite the fact that she does not want to remain subscribed or pay further renewal fees.

56.     Notably, neither the Checkout Page nor the acknowledgment email contain any explanation whatsoever regarding how to cancel the NYT Subscription.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the acknowledgment email, Ms. Moses did not know that subscribers must contact Customer Care in order to cancel their NYT Subscriptions, which they can do by calling a toll-free number during particular hours or by utilizing the chat function on the NYT Website, as is set forth in the "Help" articles accessible from the "Account Management" page of the NYT Website.[20]  Additionally, Defendant does not specify anywhere on the Checkout Page that "[d]igital products sold as part of a promotion[] … may have different cancellation or refund policies that will be made clear at the time of purchase[,]" or that "[c]ertain promotions may not permit cancellation during the promotional period[,]" as do terms set forth on other pages of Defendant's website.[21]

57.     Ms. Moses was not previously aware of either aspect of Defendant's cancellation policy.  At no point during her NYT Subscription was Ms. Moses required or even prompted to navigate to or otherwise examine any of the terms disclosed on the on any other page of the NYT Website aside from the Checkout Page.  Further, Defendant neglected to disclose this information to Ms. Moses at the point of purchase on the Checkout Page or in the acknowledgment email that Defendant sent to Ms. Moses after she completed the checkout process.  Accordingly, Defendant failed to place Ms. Moses on notice of its cancellation policy or provide Ms. Moses information regarding how to cancel in a manner that is capable of being

---

[20] *See* https://help.nytimes.com/hc/en-us/articles/360003499613-Cancel-your-subscription ("Cancel Your Subscription  * There are several ways to unsubscribe from The Times. …  * Speak with a Customer Care Advocate  * Call us at 866-273-3612 if you are in the U.S. Our hours are 7 a.m. to 10 p.m. E.S.T. Monday to Friday, and 7 a.m. to 3 p.m. E.S.T. Saturday and Sunday. …  * Chat with a Customer Care Representative  * When chat is available, click the 'Chat' button to the right or bottom of this page.").

[21] *See* https://help.nytimes.com/hc/en-us/articles/115014893968-Terms-of-sale#canceldigi.

retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

58.     Moreover, even if the acknowledgment email *had* contained Defendant's complete cancellation policy (it did not), the "mechanism for cancellation" that exists is not one Ms. Moses and other reasonable consumers would consider "easy-to-use."  Defendant therefore failed to provide Ms. Moses with an "easy-to-use mechanism for cancellation" or describe any such mechanism in an acknowledgment email, in violation of Cal. Bus. & Prof. Code § 17602(b).

59.     Defendant's pre- and post-checkout disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be unconditional gifts to consumers. Cal. Bus. & Prof. Code § 17603.

60.     As a direct result of Defendant's unlawful conduct described above, Ms. Moses suffered economic injury.  Had Defendant complied with the ARL by adequately disclosing the terms associated with her NYT Subscription purchase, Ms. Moses would have been able to read and review the auto renewal terms prior to purchase, and she would have not subscribed to *The New York Times* or she would have cancelled her NYT Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period.

61.     The facts giving rise to Ms. Moses's claims are materially the same as the Class she seeks to represent.

## CLASS ACTION ALLEGATIONS

62.     **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in

this action, incurred renewal fee(s) in connection with Defendant's subscription offerings to *The New York Times*.

63.     Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

64.     Plaintiff reserves the right to amend the definitions of this Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

65.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, the Class comprises at least thousands of consumers throughout California.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

66.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:  (a) whether Defendant's NYT Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and Class members' Payment Method for an automatic renewal service without first obtaining their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code§ 17602(a)(2); (d) whether Defendant failed to provide an acknowledgement that included

the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

67.     ***Typicality.***   The claims of Plaintiff Moses are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the Class's affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the NYT Subscriptions before charging their Payment Methods.

68.     ***Adequacy***.   Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

69.     ***Superiority***.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions

of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

70.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

71.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Class and will likely retain the benefits of its wrongdoing.

72.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL"),
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

73.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

75.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

76.     As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

77.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*  Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its NYT Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer[,]" in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their NYT Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

78.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

79.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof.

Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.  As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and the Class for their NYT Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

80.    Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

81.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

82.    Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

83.    Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue Defendant's acts of unfair competition, which caused them to purchase the NYT Subscriptions.  Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their NYT Subscriptions or would have cancelled their NYT Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

84.    Defendant's violations have continuing and adverse effects because Defendant's

unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the NYT Subscriptions are still used by Defendant today.

85.     Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Method in connection with their NYT Subscriptions during the four years preceding the filing of this Complaint.  Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

86.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

87.     Plaintiff Moses brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest.  Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

## COUNT II
### Conversion

88.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

90.     As a result of charges made by Defendant to Plaintiff's and Class members'

Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiff and the Class.

91.     The amount of money wrongfully taken by Defendant is capable of identification.

92.     Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

93.     As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

## COUNT III
### Violations of California's False Advertising Law ("FAL"),
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

94.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

95.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

96.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

97.     Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by

omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

98.     Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's NYT Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.

99.     Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

100.    Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their NYT Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's NYT Subscription. They relied on Defendant's statements and omissions to their detriment.

101.    Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the NYT Subscriptions on the same terms if the true facts were known about the product and the NYT Subscriptions do not have the characteristics as promised by Defendant.

102.     Plaintiff Moses, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

**COUNT IV**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq*.**

103.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

104.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

105.     Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

106.     Defendant's selection and/or subscription offers and the cosmetic and beauty products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

107.     The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions

deceiving that the NYT Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

108. Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase NYT Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid. Had Defendant fully and clearly disclosed the terms associated with the NYT Subscriptions, Plaintiff and the Class would have not subscribed to *The New York Times* or they would have cancelled their NYT Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

109. Plaintiff, on behalf of herself and all other members the Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

110. In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on June 15, 2020, informing Defendant of her intention to seek damages under California Civil Code § 1750. The letter was sent via certified mail, return request, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." A true and correct copy of the letter is attached hereto as **Exhibit A**. If Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d).

## COUNT V
## Unjust Enrichment

111. Plaintiff re-alleges and incorporates by reference every allegation set forth in the

preceding paragraphs as though alleged in this Count.

112.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

113.    Plaintiff and the Class conferred benefits on Defendant by purchasing the NYT Subscriptions.

114.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class's purchases of the NYT Subscriptions.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiff and the Class to purchase the NYT Subscriptions.  These omissions caused injuries to Plaintiff and the Class because they would not have purchased the NYT Subscriptions at all, or on the same terms, if the true facts were known.

115.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: June 17, 2020                      Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      */s/ Neal J. Deckant*
         Neal J. Deckant

Neal J. Deckant
Frederick J. Klorczyk III
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ndeckant@bursor.com
         fklorczyk@bursor.com

*Attorneys for Plaintiff*

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Neal J. Deckant, declare as follows:

1.      I am an attorney at law licensed to practice in the State of New York and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Maribel Moses in this action.  Plaintiff Maribel Moses resides in Los Angeles, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of New York.  Additionally, Defendant has its principal place of business in this District.

I declare under the penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct and that this declaration was executed at Oakland, California, this 17th day of June, 2020.

*/s/ Neal J. Deckant*
_____
Neal J. Deckant

**EXHIBIT A**

# BURSOR & FISHER

P.A.

**1990 N. CALIFORNIA BLVD., SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**FREDERICK J. KLORCZYK III**
Tel: **925.300.4455**
Fax: **925.407.2700**
**fklorczyk@bursor.com**

June 15, 2020

*__Via Certified Mail – Return Receipt Requested__*

The New York Times Company
620 Eighth Avenue
New York, NY 10018

*Re:*     *Notice And Demand Letter Pursuant To California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by The New York Times Company ("New York Times"), pursuant to the California Consumers Legal Remedies Act ("CLRA"), Civil Code § 1782(a), and any other state law cause of action requiring pre-suit notice, on behalf of our client, Maribel Moses, and a class of all similarly situated persons in the State of California who were charged renewal fees in connection with New York Times's magazine subscription offerings (the "Class").

Ms. Moses allege that New York Times has engaged in an illegal automatic renewal scheme with respect to its magazine subscriptions (the "NYT Subscriptions"). On the final webpage of the *New York Times* website (the "NYT Website") where prospective subscribers are invited to complete their purchase (the "Checkout Page"), and in the confirmation email New York Times subsequently sent to consumers after completing the checkout process (the "Acknowledgment Email"), New York Times intentionally made and disseminated statements concerning the NYT Subscriptions to consumers in California and the general public, including our client and the Class, which are untrue and misleading on their face and by omission. New York Times's untrue and misleading statements include but are not limited to representations and omissions regarding the terms of payment for and cancellation of a consumer's automatic payments. These representations and omissions constitute false and deceptive advertisements.

The acts and practices of New York Times as described herein violated, and continue to violate, the CLRA in at least the following respects:

a.      in violation of Section 1770(a)(5), New York Times has represented that the NYT Subscriptions have characteristics and benefits they do not have; and

b.      in violation of Section 1770(a)(9), New York Times has advertised the NYT Subscriptions with an intent not to sell them as advertised.

On behalf of our client and the Class, we hereby demand that New York Times immediately (1) cease, and desist from engaging in, the foregoing violations of the CLRA by fully and clearly disclosing any of the terms associated with the NYT Subscriptions (the "Terms") to consumers on the Checkout Page and in the Acknowledgment Email in the manner required by statute; and (2) make full restitution to all California subscribers to the *New York Times* of all purchase and renewal money obtained from sales thereof.

We also demand that New York Times preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents that disclose any information listed below concerning renewal fees charged by New York Times with respect to the NYT Subscriptions:

    a. Net revenues generated from renewal fees;

    b. The total number of people in California who paid renewal fees; and

    c. The average amount of renewal fees paid.

2. All reports, memoranda, summaries, excel sheets, databases or similar documents that track aggregate information regarding renewal fees paid by California purchasers of a NYT Subscription.

3. All documents concerning the advertisement and marketing of the NYT Subscriptions.

4. All documents and communications that discuss disclosure of the Terms by New York Times on the NYT Website:

    a. Documents and communications discussing how the Terms should be disclosed;

    b. Documents and communications discussing whether consumers see and understand disclosures about the Terms;

    c. Documents and communications discussing whether to display the Terms more prominently, or less prominently;

    d. Documents and communications discussing any actual or potential changes to how the Terms are disclosed.

5. Exemplar screenshots showing what information was shown to consumers when they purchased NYT Subscriptions from the NYT Website.

**BURSOR&FISHER**
P.A.

6.  All consumer surveys, research, or memoranda discussing the Terms or the disclosure of the Terms generally, and any email attaching or discussing such surveys, research or memoranda.

7.  All documents and communications concerning New York Times's decision to exclude any of the Terms from the Checkout Page of the NYT Website.

8.  All documents, communications, consumer surveys, research, or memoranda discussing how to retain customers or prevent churn through the adoption of policies or practices related to cancellation and/or billing.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under Cal. Civ. Code § 1782 for damages.  Accordingly, should you fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, our client will amend her class action complaint against New York Times, and seek actual and punitive damages against New York Times for violations of the CLRA on behalf of herself and the Class seeking monetary damages and equitable relief.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Frederick J. Klorczyk III