# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIBEL MOSES, on behalf of herself and all others similar situated, | Civil Action No. 1:20-cv-4658-RA |
| Plaintiff, | Hon. Judge Ronnie Abrams |
| v. | |
| THE NEW YORK TIMES COMPANY, d/b/a *The New York Times,* | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE NEW YORK TIMES COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: 212-768-6802
Email: sandra.hauser@dentons.com

Natalie J. Spears (*pro hac vice*)
Kristen C. Rodriguez (*pro hac vice*)
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: 312-876-8000
Email: natalie.spears@dentons.com
Email: kristen.rodriguez@dentons.com

*Attorneys for Defendant,*
*The New York Times Company*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 4

    I.      NYT's Subscription Process ........................................................................ 4

    II.     Plaintiff's FAC ............................................................................................ 5

    III.    Plaintiff's Claims and Requested Relief .................................................... 7

LEGAL STANDARDS ...................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

    I.      There Is No Violation of the Pre-Purchase Requirements in §§ 17602(a)(1) and (a)(2), or the Mechanism of Cancellation Required by § 17602(b). ................ 9

         A.    NYT Provided the Automatic Renewal Terms in a Clear and Conspicuous Manner, and with the Requisite Visual Proximity - § 17602(a)(1). ................................................................................. 9

         B.    NYT Obtained Affirmative Consent - § 17602(a)(2). .................................. 13

         C.    NYT Offers ARL-Compliant Mechanisms of Cancellation - § 17602(b). .................................................................................... 15

         D.    Plaintiff's Statutory Claims Based on Violations of §§ 17602(a)(1)-(2) and § 17602(b) Must Be Dismissed. .................................................... 16

            1. Plaintiff Has Not Pled a CLRA Claim with Sufficient Particularity. .......... 17

            2. Plaintiff Has Not Pled an FAL Claim with Sufficient Particularity. ........... 18

            3. Plaintiff Has Not Pled a UCL Claim With Sufficient Particularity. ........... 18

    II.     Plaintiff Has No Statutory Claims for NYT's Alleged Post-Purchase ARL Violations. .............................................................................................. 19

         A.    Plaintiff Fails to State a CLRA Claim Because the Post-Purchase Acknowledgment Did Not Intend to Result in a Sale. ............................... 20

         B.    Plaintiff Has Not Pled an FAL Claim Based on the Lack of an ARL-Compliant Acknowledgment, and Could Not Do So. ............................... 21

         C.    Plaintiff Lacks Statutory Standing for Her UCL, FAL, and CLRA Claims Based on the Allegedly Non-Compliant Acknowledgment. ........... 22

    III.    Plaintiff Has Not Plausibly Pled Conversion. ........................................... 24

    IV.    Unjust Enrichment Is Not a Valid Cause of Action Under California Law. ........ 25

    V.    Plaintiff Has Not Plausibly Alleged Fraud or Negligent Misrepresentation. ....... 25

CONCLUSION ................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Hearst Magazine Media, Inc.*,
  2020 WL 3469367 (S.D. Cal. June 25, 2020) ..................................................16, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................8

*Avidor v. Sutter's Place, Inc.*,
  212 Cal. App. 4th 1439 (2013) .........................................................................24

*Baxter v. Intelius, Inc.*,
  2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ..................................................27

*Bell Atlantic Co. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................3, 8

*Bird v. First Alert, Inc.*,
  2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ..............................................22, 27

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal. App. 4th 513 (2004) ...........................................................................26

*Chase v. Hobby Lobby Stores, Inc.*,
  2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ........................................................8

*Chulick-Perez v. CarMax Auto Superstores Cal., LLC*,
  71 F. Supp. 3d 1145 (E.D. Cal. 2014) ...............................................................22

*Conroy v. Regents of Univ. of California*,
  45 Cal. 4th 1244 (2009) ...................................................................................26

*Darling v. Green*,
  2013 WL 11323320 (C.D. Cal. Sept. 25, 2013) .............................................26, 28

*Driver v. Acquisto*,
  145 Cal. App. 2d 304 (1956) ............................................................................25

*Freeman v. Time, Inc.*,
  68 F. 3d 285 (9th Cir. 1995) .............................................................................27

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) .............................................................26

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847 (2008) ..................................................................22

*Hall v. Time, Inc.*,
   2019 WL 8107879 (C.D. Cal. Sept. 24, 2019) ......................................................12

*Hall v. Time, Inc.*,
   2020 WL 2303088 (C.D. Cal. Mar. 13, 2020)............................................13, 14, 25

*Harlan v. Roadtrek Motorhomes, Inc.*,
   2009 WL 928309 (S.D. Cal. Apr. 2, 2009)..........................................................21

*Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*,
   61 Cal. 4th 988 (2015) .........................................................................25

*Hensley-Maclean v. Safeway, Inc.*,
   2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ........................................................21

*Herrington v. Johnson & Johnson Consumer Co.*,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...................................................8, 17

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .........................................................25

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................8, 26

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)........................................................................8

*Klett v. Sec. Acceptance Co.*,
   38 Cal. 2d 770 (1952) ..........................................................................24

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005)............................................................22

*In re Late Fee & Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ............................................................25

*Lopez v. YP Holdings, LLC*,
   2019 WL 2895190 (C.D. Cal. Mar. 26, 2019).......................................................16

*Mayron v. Google LLC*,
   2020 WL 5494245 (Cal Ct. App. Sept. 11, 2020) ................................................24

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017).......................................................................14

*Moran v. Am. Gen. Fin.*,
    2011 WL 768141 (S.D. Cal. Feb. 28, 2011) ...................................................................17

*Rapoport v. Asia Electrics Holding, Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)...........................................................................8

*Sansoe v. Ford Motor Co.*,
    2017 WL 4025218 (N.D. Cal. Sept. 13, 2017) .........................................................20

*Sazerac Co. v. Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994) .............................................................................9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)........................................................................22

*Starke v. Gilt Groupe, Inc.*,
    2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)...........................................................14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................................................8

*Walker v. Equity I Lenders Group*,
    2009 WL 1364430 (S.D. Cal. May 14, 2009)...........................................................25

*Wilens v. TD Waterhouse Grp., Inc.*,
    120 Cal. App. 4th 746 (2003) ....................................................................................22

*Wolph v. Acer Am. Corp.*,
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) .........................................................25

**Statutes**

California Business and Professions Code
    § 17200....................................................................................................................18
    § 17500....................................................................................................................18
    § 17601............................................................................................................ *passim*
    § 17602............................................................................................................ *passim*
    § 17603................................................................................................................7, 20

California Civil Code
    § 1709......................................................................................................................26
    § 1761......................................................................................................................17
    § 1770.........................................................................................................17, 19, 20

**Other Authorities**

Federal Rules of Civil Procedure

Rule 9(b) ............................................................................................8, 17, 27

Rule 11 ..............................................................................................18

Rule 12(b)(6)......................................................................................8

## INTRODUCTION

Plaintiff Maribel Moses, a California resident, filed this class action complaint on behalf of all California subscribers to *The New York Times* seeking the return of all subscription fees paid by her and the putative class over the past four years based on purported violations of California's Automatic Renewal Law ("ARL").  The New York Times Company ("NYT") moved to dismiss Plaintiff's original Complaint.   Rather than oppose NYT's motion, Plaintiff filed the First Amended Complaint ("FAC").  Her amendments do nothing to save this case from dismissal.

The FAC's factual allegations and its embedded exhibits remain exactly the same, and they continue to show that Plaintiff has no claim as a matter of law.  Plaintiff's core allegation—and the claimed basis for the massive class action windfall she seeks—is that NYT did not follow ARL guidelines to obtain her "affirmative consent" to the automatic renewal of her monthly subscription and specifically, that the automatic renewal terms were not sufficiently clearly and conspicuously displayed before purchase, and in visual proximity to the final purchase button, as the ARL requires.  But her own FAC belies these allegations: the Checkout Page from NYT's website embedded in the FAC demonstrates compliance with the ARL's pre-purchase requirements.

The Checkout Page informed her (1) that her subscription will continue until she cancels; (2) that NYT's cancellation policy allows her to cancel at any time; (3) that recurring charges will be charged to her payment account as a part of the automatic renewal plan; (4) the amount of the automatic renewal charges for the first year; and (5) the amount to which the rate will change after a year.  Those are the only terms the ARL requires prior to the purchase of an automatic renewal subscription, and NYT provided all of them in obtaining Plaintiff's affirmative consent.

Nor is this a case where these terms were buried in fine print or contained in a cluttered page with many different distracting pieces of information.  Far from it.  Again, Plaintiff's own screenshot shows just the opposite: these terms were presented on the minimalist, uncluttered

Checkout Page in a framed box, set off from other text, preceded by a bolded header, and they appeared prior to and in visual proximity to the final "Purchase Subscription" button that needed to be pressed to complete the transaction.  Subscribers provided affirmative consent to those clear and conspicuous terms by clicking that final button on the Checkout Page.  Contrary to what Plaintiff suggests, the ARL does not require separate, stand-alone consent to automatic renewal; it requires consent to an agreement containing such a feature—consent that was unquestionably provided prior to purchase, according to Plaintiff's own allegations.

Plaintiff's additional claim that NYT did not provide an appropriate method of cancellation under the ARL is undermined, once again, by Plaintiff's own admissions in her FAC about the existence of both online and offline methods of cancellations, both of which are fully compliant with the ARL's requirements.  Plaintiff has, thus, pleaded herself out of court.

Because the ARL does not contain its own private right of action, Plaintiff asserts a potpourri of California statutory and common law claims: the Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and common law conversion, unjust enrichment, negligent misrepresentation, and fraud claims—all of which are premised on violations of the ARL.  Accordingly, since all of Plaintiff's alleged predicate violations of the ARL's pre-purchase and method of cancellation provisions fail, the statutory and common law claims based on those non-existent grounds necessarily fail as a matter of law.  Of course to prevail in this case, Plaintiff must establish all of the elements of the actual causes of action she brings, beyond any alleged ARL violations.  She cannot meet this burden.

Having no viable claim regarding the pre-purchase disclosures or the method of cancellation, Plaintiff next asserts that NYT's post-purchase acknowledgment email did not comply with the ARL.  But as the allegedly deficient acknowledgement, by definition, occurred

2

*post*-purchase, it cannot be the basis for claims under the FAL or the CLRA, as relief under those statutes requires the existence of misleading statements that *induce* a sale.  Moreover, Plaintiff cannot plausibly plead that a *post*-purchase acknowledgment could have impacted her *pre*-purchase behaviors, and so she cannot assert injury and causation, which are both required elements of her claims and necessary for statutory standing under the UCL, FAL, or CLRA.  These statutory causes of action also fail because Plaintiff has failed to plead them with particularity.

Plaintiff's purported common law claims fare no better.  There is no "conversion" claim because Plaintiff's FAC confirms she consented to have her subscription fees deducted from her payment account.  Her "unjust enrichment" claim also fails out of the gate because, under California law, that is not a stand-alone cause of action.  Finally, the FAC added two new generically pled claims for fraud and negligent misrepresentation, both of which fail, among other reasons, because  Plaintiff does not identify a single false statement made to her, nor any omission that she reasonably relied on to make her subscription purchase.

In sum, this FAC—cut and paste from other complaints and heedless of the fact that the allegations do not match up with the actual, conceded facts of this transaction—threatens to impose massive liability against NYT in the form of four years of subscription fees from its California subscribers over non-existent violations of the ARL, or at most, technical, non-injurious statutory violations that cannot be the basis for any cause of action.  The threat of such *in terrorem* damages is precisely why pleadings must meet a plausibility standard.  *Bell Atlantic Co. v. Twombly,* 550 U.S. 544, 557–558 (2007).  This FAC on its face flunks that standard in multiple, incurable ways.  Dismissal with prejudice is in order.

**FACTUAL BACKGROUND**

I.    **NYT's Subscription Process**

NYT publishes *The New York Times*, including both its print and online editions.  (FAC ¶ 6.)  NYT offers automatically renewing monthly or yearly subscriptions.  (*Id.* ¶ 30.)  Consumers can subscribe through the NYT's website or its mobile application.  (*Id.* ¶ 31.)  According to the FAC's allegations about the subscription process, consumers are first presented with a choice of subscription plan.  (*Id.*)[1]  After selecting a subscription option, users "are directed to subsequent webpages on the NYT Website and/or App where they are prompted to create a membership account and input their billing information."  (FAC ¶ 32.)[2]

After creating the account, consumers are directed to the Checkout Page.  (*Id.*)  As the screenshot embedded in the FAC reveals (a clearer copy of which is attached in NYT's Request for Judicial Notice ("RJN") submitted herewith), the Checkout Page provides automatic renewal terms under the bolded phrase "**PAYMENT INFORMATION**":

---

[1] NYT accepts Plaintiff's allegations about the website subscription purchase process as true for purposes of this Motion as required, but notes that Plaintiff selectively excludes certain portions of the website in her allegations.

[2] The Complaint does not include these subsequent pages, likely because they would reveal that every user must create an account with NYT to make a purchase, and in creating the account, the user agrees to the NYT Terms of Service.  Those Terms of Service contain a class action waiver.  As a result, not only does this case fail out of the gate on the merits, but also it is ultimately doomed to fail as a class action.

4



(FAC ¶ 32; RJN, Ex. 1.)

The Checkout Page also features a "**Purchase Subscription**" button that includes the following text directly above it:

By subscribing, you agree to the Terms of Sale, including the Cancellation and Refund Policy. Your subscription will renew automatically, and you will be charged in advance. You may cancel at any time. The cancellation goes into effect at the start of your following billing cycle.

Purchase Subscription

## II.    Plaintiff's FAC

Plaintiff filed the original Complaint in this action on June 17, 2020.  NYT moved to dismiss on August 17, 2020.  Rather than respond to the motion to dismiss, Plaintiff filed the FAC on August 31, 2020.  The substantive factual allegations in the FAC are identical to those in the Complaint.  Plaintiff, a California resident, alleges she purchased a subscription from NYT website in or around August 2019.  (FAC ¶ 44.)[3]  She claims she signed up for the subscription at a

___

[3] The FAC also alleges Plaintiff purchased the same subscription in or around December 2019.  (FAC ¶ 48.)

promotional rate of $4.00 per month, using PayPal for payment. (*Id.*) Plaintiff alleges she has been charged $4.00 eleven times by NYT. (*Id.* ¶ 50.) Plaintiff does not assert that she did not know or did not want or anticipate that her subscription would last longer than a single month; in fact, she admits that she knew NYT was automatically charging her $4.00 throughout her subscription, but claims that such billing practices were "confusing and unpredictable" because the charges were posted to her account "at different points each month." (*Id.*)[4]

Despite being well aware of her automatically renewing subscription, Plaintiff bases her case on her allegations that when she subscribed, NYT did not comply with the technical requirements of the ARL. Specifically, notwithstanding and in contradiction to the actual Checkout Page interface incorporated in her FAC, she claims that NYT committed the following pre-purchase ARL violations: 1) failing "to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled" and 2) charging her "Payment Method[] without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms." (*Id.* ¶ 34.) She also complains that NYT violated the ARL post-purchase by sending her a deficient acknowledgment email that did not contain all of the required information. (*Id.*)

In addition, although she does not consistently itemize it as one of her purported violations of the ARL, Plaintiff claims that NYT violates §17602(b) of the ARL, which requires a business to provide "a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or . . . another cost-effective, timely, and easy-to-use mechanism for cancellation . . . ." (*Id.* ¶ 58.) However, Plaintiff admits that NYT allows customers to cancel "by

---

[4] In reality, Plaintiff's own allegations of the dates when NYT charged her indicates she was charged every 28 days (i.e., "every 4 weeks" as noted on the Checkout Page included in the FAC (*id.* at ¶ 32)), with the sole exception of the first renewal charge, which allegedly was posted 27 days after her purchase. (*See id.* at ¶ 50.)

calling a toll free number during particular hours or by utilizing the chat function on the NYT Website"—information which is provided on the NYT webpage Plaintiff herself cites.  (*Id.* ¶ 56, n. 20.)  Plaintiff nonetheless alleges that she "struggled immensely" with the cancellation process, which she did not find "easy-to-use."  (*Id.* ¶¶ 53, 58.)  Plaintiff does not allege that she attempted to call or chat online to cancel her subscription; rather, she claims she emailed nytimes-paypal@nytimes.com to cancel her subscription, but that such cancellation attempt was ineffective.  (*Id.* ¶ 54.)  She alleges she "had received several emails in the preceding months" from that email, so she assumed it would "be an acceptable method of cancellation."  (*Id.* ¶ 55.)

### III.    Plaintiff's Claims and Requested Relief

Plaintiff seeks to represent a putative class of "[a]ll persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred renewal fee(s) in connection with Defendant's subscription offerings to The New York Times."  (*Id.* ¶ 62.)  Plaintiff claims that because of NYT's purported technical noncompliance with the ARL, her subscription, and the subscriptions of all of the California subscribers in her putative class, amount to an "unconditional gift" under the terms of the ARL  (*Id.* ¶ 59); *see* ARL § 17603 (when a "business sends any goods . . . to a consumer . . . without first obtaining the consumer's affirmative consent the goods . . . shall for all purposes be deemed an unconditional gift to the consumer. . . .").  Therefore, she seeks return of "all amounts charged or caused to be charged" to California subscribers to *The New York Times* in the four years preceding the filing of the FAC and continuing until final judgment.  (*E.g.*, FAC ¶ 85.)  She also seeks damages pursuant to the CLRA, including punitive damages.  (*E.g.*, FAC ¶ 110.)

7

## **LEGAL STANDARDS**

On a Rule 12(b)(6) motion, the Court "must accept as true all of the [factual] allegations contained in a complaint," but need not accept its "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("Conclusory allegations or legal conclusions masquerading as facts will not suffice to defeat a motion to dismiss.") (citation and brackets omitted). To survive, a complaint's factual allegations must be sufficient "to 'state a claim to relief that is plausible on its face.'" *Id.* Further, if documents incorporated by reference in, or otherwise relied on by, the FAC contradict allegations in the FAC, "the documents control" and can be the basis for dismissal. *Rapoport v. Asia Electrics Holding, Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

In addition, the heightened pleading standard in Rule 9(b) applies to claims under the CLRA, UCL, and the FAL where the claims sound in fraud or are grounded in claims of allegedly misleading and false advertising, as they are here. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–1127 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–06 (9th Cir. 2003); *see also Chase v. Hobby Lobby Stores, Inc.*, 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ("The heightened pleading standard applies to claims under the CLRA, UCL, and FAL."). The heightened pleading standard also applies to Plaintiff's fraud and negligent misrepresentation claims. *Herrington v. Johnson & Johnson Consumer Co.*, 2010 WL 3448531, at *6–8 (N.D. Cal. Sept. 1, 2010).

8

## ARGUMENT

I. **There Is No Violation of the Pre-Purchase Requirements in §§ 17602(a)(1) and (a)(2), or the Mechanism of Cancellation Required by § 17602(b).**

Plaintiff has not pled and cannot plead a violation of the ARL based on NYT's pre-purchase disclosures, or the method of cancellation it provides to its subscribers.

To start, Plaintiff's FAC alleges that NYT violated the ARL in two ways prior to her purchase: 1) failing "to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent" in violation of § 17602(a)(1); and 2) charging Plaintiff without first obtaining "affirmative consent" in violation of §17602(a)(2). (FAC ¶ 34.)  The FAC and incorporated Checkout Page, both of which control over and contradict Plaintiff's conclusory allegations, render those allegations implausible on their face. *See, e.g., Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("If the allegations of a complaint are contradicted by documents made a part thereof, then the document controls and the court need not accept as true the allegations of the complaint.").  Therefore, Plaintiff's purported claims based on pre-purchase ARL violations cannot stand.  Any claim based on a violation of § 17602(b), requiring certain methods of cancellation, likewise fails on the face of the FAC, based on Plaintiff's admissions that NYT provides such cancellation methods.

A. **NYT Provided the Automatic Renewal Terms in a Clear and Conspicuous Manner, and with the Requisite Visual Proximity - § 17602(a)(1).**

Section 17602(a)(1) of the ARL requires a business to "present the automatic renewal offer terms . . . in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer."  Under the ARL, the "automatic renewal offer terms" mean the following terms, as relevant here:

9

(1)   That the subscription or purchasing agreement will continue until the consumer cancels.

(2)   The description of the cancellation policy that applies to the offer.

(3)   The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

(4)   The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

§ 17601(b)(1)–(4).  The ARL defines "clear and conspicuous" to mean any one of three manners of presentation:

- in larger type than the surrounding text, ***OR***

- in contrasting type, font, or color to the surrounding text of the same size, ***OR***

- set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language.

§ 17601(c) (emphasis and bullets added).  NYT provided all of the requisite automatic renewal terms, clearly and conspicuously, and in visual proximity to the request for consent to the offer.

***Automatic Renewal Offer Terms.***   The Checkout Page screenshot incorporated in Plaintiff's FAC includes *all* of the requisite terms as a matter of law:

- ✓ ARL 17601(b)(1): The subscription will continue until the consumer cancels.

  NYT: "*Your subscription will continue until you cancel.*"

- ✓ ARL 17601(b)(2): The description of the cancellation policy that applies to the offer.

  NYT: "*You can cancel at anytime.*"

- ✓ ARL 17601(b)(3): The recurring charges that will be charged and that the amount of the charge may change, and the amount to which the charge will change.

  NYT: "*Your payment method will be automatically charged $4.00 every 4 weeks for the first year ($1.00 per week). It will then be automatically charged $17.00 every 4 weeks thereafter, starting on April 5, 2021 ($4.25 per week).*"

- ✓ ARL 17601(b)(4): The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

  NYT:  *See above.*

10

*Clear and Conspicuous.* Plaintiff claims that the automatic renewal terms are not clear and conspicuous because they are "presented in such a way that it could be, and was, easily overlooked" and because they are presented in the "same size, color, and font as that of the surrounding block of text" and "placed alongside other, unrelated disclosures without distinction from the surrounding text of the same size in any manner that calls attention to the language." (FAC ¶ 35.) The actual screenshot included in Plaintiff's Complaint (FAC ¶ 32) however, belies all of these allegations—*see also* RJN Ex. 1:



To start, there is a gray box that surrounds the section titled **BASIC DIGITAL ACCESS**. That box serves as a mark to call attention to that section of the page.  Further, the automatic renewal terms are preceded by a bolded header in all capital letters that states **PAYMENT INFORMATION**, with horizontal lines immediately preceding and following that section.  The bolded header and horizontal lines serve as marks to set off the automatic renewal terms and call attention to them.  Moreover, the terms are also set off from the form the customer fills out on that page.  Although Plaintiff feebly alleges otherwise, this placement increases the clear and conspicuous nature of the disclosures, not detracts from it.  It is right next to the part of the screen that the customer is certainly going to see when she enters her payment details.  It is not placed in some location on the page where the customer could easily scroll past it without stopping on that part of the page.

Even further, the page itself on which the terms are appear is clean, minimalist, and completely uncluttered, with large amounts of white spacing, and no distracting elements. Although Plaintiff alleges that the automatic renewal terms are "placed alongside other, unrelated disclosures," it's unclear what other "unrelated disclosures" Plaintiff is referencing because, other than a brief description of what benefits come with the "Basic Digital Access" subscription, the only disclosures by the NYT on that simple, uncluttered Checkout Page are the automatic renewal terms.  All of these factors combined foreclose Plaintiff's allegations that the NYT's automatic renewal terms were not presented clearly and conspicuously, in a manner that clearly called attention to them.  Courts have not hesitated to dismiss ARL cases like this out of the gate when the ARL disclosures are clear and conspicuous based on the pleadings.  *Hall v. Time, Inc.*, 2019 WL 8107879 (C.D. Cal. Sept. 24, 2019) (granting motion to dismiss because defendant complied

with Section 17602(a)(1); *Hall v. Time, Inc.*, 2020 WL 2303088 (C.D. Cal. Mar. 13, 2020) (same). This Court should do the same.

  ***Visual Proximity***.  Despite Plaintiff's conclusory allegations to the contrary, the automatic renewal terms are presented in visual proximity to the "**Purchase Subscription**" button on the Checkout Page.  *See* FAC ¶ 32 (the Checkout Page); *see also* RJN Ex. 1.  They are on the same uncluttered page, in a section to the right of the "Purchase Subscription" button, and next to the form that the customer must populate in order to purchase her subscription.  There is no requirement under the ARL that the automatic renewal terms appear right above the final button the customer must press to affirm her consent to the purchase—it only needs to be in visual proximity to it.  Clearly, the automatic renewal terms on the Checkout Page in Plaintiff's FAC meet that requirement.

### B.  NYT Obtained Affirmative Consent - § 17602(a)(2).

  The ARL requires that businesses "first obtain[] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms" before charging the consumer.  § 17602(a)(2).  The Checkout Page embedded in the FAC, on its face, demonstrates compliance with this requirement.  (FAC ¶ 32.)

  The only purported deficiency Plaintiff alleges with regard to the affirmative consent requirement is that "at no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with the NYT Subscription, i.e. by requiring consumers to select or click a 'checkbox' next to the automatic renewal offer terms to complete the checkout process."  (FAC ¶ 40.)  However, the plain language of the ARL does not require a "checkbox."  § 17602(a)(2).  Rather, the ARL states that it is unlawful for a business to charge a consumer's payment method for an auto renewing product "without first obtaining the

consumer's affirmative consent to *the agreement containing the automatic renewal* offer terms or continuous service offer terms . . . ." Cal. Bus & Prof. Code 17602(a) (emphasis added). As this statutory language shows, the affirmative consent requirement is not tied to the automatic renewal alone, but to the entire *agreement* including the auto-renewal provision. Plaintiff cannot engraft an extra-statutory "checkbox" requirement that does not exist in the ARL. *See Hall*, 2020 WL 2303088 at *4 ("Defendants conspicuously disclosed their renewal policy in plain language. [citation] Plaintiff affirmatively consented to the agreement containing those terms by entering her payment information and submitting her order after receiving notice of those terms.").[5]

The Checkout Page's structure makes clear that affirmative consent was obtained. The Page discloses the automatic renewal offer terms prior to the button on which the consumer must click to purchase his or her subscription on a clean and uncluttered page. (*See* FAC ¶ 32.) That is, the relevant terms appear *before* the "Purchase Subscription" button—the consumer does not need to scroll *past* that button to view them. Moreover, in addition to providing the automatic renewal terms in a section marked by a box and horizontal lines, and set off from the remainder of the text on that page, immediately above the "Purchase Subscription" button, there is text that states: "By subscribing you agree to the Terms of Sale, including the Cancellation and Refund Policy. Your subscription will renew automatically, and you will be charged in advance. You may cancel at any time. The cancellation goes into effect at the start of your following billing

---

[5] Indeed, courts have found that clicking on a "sign in wrap"—wherein website visitors are told in visual proximity to the final button of the transaction that by completing the transaction they are bound to the terms in a hyperlinked agreement—amounts to consent to a site's terms, even one that contains an arbitration agreement. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *8–9 (S.D.N.Y. Apr. 24, 2014). Certainly, if a user can consent to give up her right to go to court on a website with a similar, if not less detailed, visual presentation as the Checkout Page here, then a user should be deemed to have affirmatively consented to an automatically renewing newspaper subscription that can be cancelled based on the Checkout Page.

cycle." *Id.*[6]  Indeed, the button the customer must click is labeled "Purchase Subscription"—further signaling to the customer that they are providing consent to purchasing their automatic renewal subscription upon the click.

In short, the allegations and Checkout Page screenshot incorporated in the FAC show that a consumer can only order a subscription *after* being informed of the automatic renewal terms, *after* they enter their credit card information, and *after* clicking on the "**Purchase Subscription**" button *after* being informed again that the "subscription will renew automatically."  Plaintiff cannot plausibly plead that she did not provide affirmative consent to the clear and conspicuous automatic renewal terms here.[7]

### C.     NYT Offers ARL-Compliant Mechanisms of Cancellation - § 17602(b).

NYT provided ARL-compliant mechanisms for cancellation under 17602(b).  That section provides that "[a] business that makes an automatic renewal offer or continuous service offer shall provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, *or* it shall provide *another* cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of

---

[6] One can safely assume that the content of the "Terms of Sale" and "Refund and Cancellation Policy" hyperlinks above the "Purchase Subscription" button are not referenced by Plaintiff because they contain additional disclosures and explanation related to the automatic renewal feature that, like the class action waiver in the Terms of Service to which users would have necessarily agreed on a prior screen (*see n.* 2, *infra*), would further doom Plaintiff's claims.

[7] Plaintiff attempts to add a term to the required *pre*-purchase ARL terms that simply does not exist: an "explanation of how to cancel."  (FAC ¶ 37 ("Defendant also fails to present a complete 'description of the cancellation policy that applies to the offer. . . . [T]he Checkout Page contains no explanation of *how* to cancel.") (emphasis in original).)  However, the cancellation policy, and information on how to cancel, are two different ARL requirements.  The "acknowledgment" that may be provided by the business to the subscriber *after* the purchase must contain, among other things, the "cancellation policy, and information regarding how to cancel," § 17602(a)(3); 17602(e)(1).  That the post-purchase acknowledgment requires *both* the cancellation policy *and* information on how to cancel demonstrates they are two different requirements.  The ARL terms that must be provided prior to purchase, on the other hand, mandate only one of those requirements: the "cancellation policy." § 17601(b)(2).

subdivision (a)."  § 17602(b) (emphasis added).  As Plaintiff herself acknowledges, NYT provides a toll free number that customers can call to cancel their subscriptions.  (FAC ¶ 56, n. 20.)  Plaintiff also acknowledges that NYT allows customers to cancel by conducting an online chat with customer care representatives (*id.*), consistent with NYT's obligations under § 17602(c) to provide an "exclusively online" method of cancellation for subscribers who order online.  Providing those two methods of cancellation is all that is required by the ARL.

Nonetheless, despite never attempting to use either one of these cancellation methods, Plaintiff alleges that NYT violated § 17602(b) of the ARL because "the mechanism for cancellation provided by NYT is not one [Plaintiff] and other reasonable consumers would consider 'easy to use.'"  (FAC ¶ 58.)  But the toll free number mechanism is explicitly approved in the ARL as an appropriate method of cancellation, and by extension, is a method that the California legislature already pre-ordained as "easy to use."  As that is all that the statute requires (along with an online cancellation mechanism for online customers, which NYT provided and which Plaintiff did not even attempt to use), Plaintiff cannot claim NYT violated the ARL.

### D.     Plaintiff's Statutory Claims Based on Violations of §§ 17602(a)(1)-(2) and § 17602(b) Must Be Dismissed.

Because, as demonstrated, Plaintiff cannot establish a violation of ARL § 17602(a)(1) (clear and conspicuous ARL terms), § 17602(a)(2) (affirmative consent), or § 1702(b) (method of cancellation), her purported FAL, UCL, CLRA, and common law claims based on those non-existent ARL violations fail and must be dismissed.  *E.g., Arnold v. Hearst Magazine Media, Inc*., 2020 WL 3469367, at *7 (S.D. Cal. June 25, 2020) ("Arnold does not allege any basis for her FAL claim independent of the [ARL].  Arnold fails to state a claim for violation of the FAL."); *Lopez v. YP Holdings, LLC*, 2019 WL 2895190, at *4 (C.D. Cal. Mar. 26, 2019) (plaintiff's "UCL claim fail[ed] to the extent it [was] predicated on her claim for violation of the ARL").

16

In addition, Plaintiff's statutory claims based on any pre-purchase or cancellation method violations of the ARL also fail because she has not pled them plausibly, much less with the particularity required by Federal Rule 9(b).  *Herrington*, 2010 WL 3448531 at *6–8 (applying Rule 9(b) to UCL, FAL, CLRA, and intentional and negligent misrepresentation claims).

### 1.    Plaintiff Has Not Pled a CLRA Claim with Sufficient Particularity.

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by a person in a transaction intended to result or which results in the sale . . . of any goods or services to any consumer."  § 1770(a).  Plaintiff alleges that NYT violated two specific provisions of the CLRA: (1) representing that the subscriptions have "characteristics, uses, and/or benefits that they do not have" and (2) advertising "the goods in question without the intent to sell them as advertised."  (FAC ¶ 107.)

Plaintiff does not describe how NYT is alleged to have engaged in these prohibited acts beyond stating "[t]he acts and practices of Defendant as described above," referencing the entire factual allegation section of the FAC.  Plaintiff's allegations are but mere conclusory statements parroted from the statute.  *Compare* FAC ¶ 107 *with* Cal. Civ. Code § 1770.  The allegations are wholly unsupported by any facts, and in some instances, are obviously thoughtless copy and paste jobs, which Plaintiff did not even bother to clean up in her FAC even though NYT pointed them out in its initial Motion to Dismiss.  For example, paragraph 106 alleges that "Defendant's selection and/or subscription offers and *the cosmetic and beauty products pertaining thereto* are 'goods' and/or services' within the meaning of Cal. Civ. Code 1761(a) and (b)" (emphasis added)—an allegation that clearly has zero relevance to NYT here.  *See, e.g., Moran v. Am. Gen. Fin.*, 2011 WL 768141, at *2–3 (S.D. Cal. Feb. 28, 2011) (dismissing complaint where allegations were "copied from some other source" and emphasizing that "[c]utting and pasting text wholesale

with an uncritical eye and with no regard for whether the allegations are supported by facts or law is a violation of Rule 11"). Plaintiff makes no attempt to allege or explain what, specifically, NYT "falsely represented" to her or why any such statement was false when made. That failure is grounds for dismissal on its own. *E.g., Arnold*, 2020 WL 3469367 at *9 (dismissing as conclusory plaintiff's allegations that defendants failed to "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner").

### 2. Plaintiff Has Not Pled an FAL Claim with Sufficient Particularity.

To state a cause of action under California's False Advertising Law, a plaintiff must plead that the defendant made or disseminated advertising statements that are "untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus & Prof. Code § 17500. Plaintiff's FAL claim again simply parrots the statutory language of the law without identifying any particular statement that NYT has made that is untrue or misleading. *See generally*, FAC ¶¶ 95–102. Nor has Plaintiff pleaded any facts showing that any such unspecified statement was known or should have been known to NYT to be false. *Id.* Plaintiff's restatement of the statutory language as her factual allegations utterly fails to meet the heightened pleading standard for FAL claims and does not entitle her to state a claim. *Arnold*, 2020 WL 3469367, at *7 (dismissing plaintiff's FAL cause of action where plaintiff failed "to allege facts from which the Court can identify any violation of the Automatic Renewal Law" and where plaintiff did not allege any other bases for her FAL claim independent of the ARL).

### 3. Plaintiff Has Not Pled a UCL Claim With Sufficient Particularity.

The UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…" Cal. Bus. & Prof. Code § 17200. Plaintiff claims that NYT "committed unlawful and/or unfair business

practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class."   Like Plaintiff's other statutory claims, her UCL allegations fail to allege *how* NYT did so.   Plaintiff nowhere explains how the alleged violations of the ARL amount to a representation that NYT's "goods and services had certain characteristics that they do not" or how the purported ARL failures mean that NYT advertised goods and services "with the intent not to sell as advertised."   Thus, even putting aside that Plaintiff has failed to plead an ARL violation based on §§ 1702(a)(1)–(2) or 17602(b), the UCL claim cannot stand.

## II.   Plaintiff Has No Statutory Claims for NYT's Alleged Post-Purchase ARL Violations.

Having failed to plausibly plead that NYT violated the ARL through any of its pre-purchase disclosures, Plaintiff attempts to plead claims based on post-purchase actions.   Specifically, Plaintiff claims that NYT sent her an allegedly deficient "acknowledgment" email after her purchase.  (FAC ¶ 41.)  Again, the ARL provides no private cause of action, and Plaintiff's attempt to found CLRA and FAL claims on that email must fail because the post-purchase email did not cause or induce the sale.  Moreover, *all* of Plaintiff's statutory claims based on that post purchase acknowledgment fail in any event because Plaintiff lacks statutory standing to pursue them.

The ARL requires that the business "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer," § 17602(a)(3), and that such acknowledgment "may be fulfilled after completion of the initial order," § 17602(e)(1).  Plaintiff alleges that the post-purchase acknowledgment email

she received was deficient under the ARL because it did not include the automatic renewal offer

terms, the cancellation policy, and information on how to cancel.  (FAC ¶ 42.)

Assuming that is true, as NYT must for purposes of this Motion, the alleged deficiencies

in the acknowledgment do not provide any basis for a claim.  To start, neither the CLRA nor the

FAL provide redress to Plaintiff based on a post-purchase failure by a defendant.  Moreover,

Plaintiff cannot plausibly plead that the failure to receive certain information post-purchase

influenced her pre-purchase decisions, and so none of the statutes provide her with relief.  Further

still, all of these statutory claims relating to a post-purchase deficient acknowledgement fail for

the additional reason that they have not been pled with particularity, and all of the reasons

discussed in §I(D), apply with equal force to statutory claims based on the acknowledgment.[8]

### A.     Plaintiff Fails to State a CLRA Claim Because the Post-Purchase Acknowledgment Did Not Intend to Result in a Sale.

Post-purchase acts cannot serve as the basis for a CLRA claim.  As noted, the CLRA

prohibits certain "unfair methods of competition and unfair or deceptive acts or practices

undertaken by a person in a transaction *intended to result or which results in the sale* or lease of

any goods or services to any consumer." Cal. Civ. Code § 1770(a) (emphasis added).  Therefore,

based on the statute's plain language, a non-compliant post-sale statement cannot be an "act or

practice" that is "intended to result or which results in the sale."  Accordingly, even if there were

unfair or deceptive acts in the form of the post-sale acknowledgement—and there were not—they

are excluded from the scope of the CLRA.  *E.g., Sansoe v. Ford Motor Co.,* 2017 WL 4025218, at

*2 (N.D. Cal. Sept. 13, 2017) ("The CLRA claim fails because the challenged conduct occurred

---

[8] Notably, Plaintiff's newspaper subscription cannot be deemed an "unconditional gift" under § 17603 simply because NYT may have her sent a post-purchase acknowledgement email that did not contain all of the requisite ARL terms.  Section 17603 only makes goods and products sent to a consumer under an automatic renewal program an "unconditional gift" when a business "fails to obtain affirmative consent" prior to purchase.

after the sale of the vehicles, and thus could not have constituted deceptive acts that were intended to or did result "in the sale or lease of goods or services to [a] consumer.'"); *Hensley-Maclean v. Safeway, Inc*., 2014 WL 1364906, at *6 (N.D. Cal. Apr. 7, 2014) ("The flaw in plaintiffs' approach [to CLRA claim] is that Safeway's post-sale failure to warn does not occur in the context of a transaction.  Rather, these omissions occur after the transaction had been completed."); *Harlan v. Roadtrek Motorhomes, Inc.,* 2009 WL 928309, *17 (S.D. Cal. Apr. 2, 2009) (conduct occurring after the sale of the product at issue "could not have constituted 'deceptive acts ... intended to result ... in the sale or lease of goods or services" under [the CLRA].") (ellipses in original).

> **B.**     **Plaintiff Has Not Pled an FAL Claim Based on the Lack of an ARL-Compliant Acknowledgment, and Could Not Do So.**

Nor can post-purchase acts serve as a basis for an FAL claim, which prohibits any person from "*induc[ing] the public to enter* into any obligation" relating to "the dispos[ition] of . . . personal property or to perform services" by disseminating "in *any advertising device*," among other advertising mechanisms, a statement concerning "personal property or those services . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  (FAC ¶¶ 96–97, citing Cal. Bus & Prof. Code § 17500; emphasis added.)  Based on a plain reading of the statute, NYT's alleged failure to send a compliant ARL acknowledgment email following Plaintiff's subscription purchase falls outside the scope of the FAL for the same reasons it falls outside of the CLRA.  Plaintiff has not pled and cannot plead that the post-purchase acknowledgment was sent with the "intent to dispose of . . . personal property or to perform services" nor that statements made therein were disseminated in an advertisement because the acknowledgment email was sent post-purchase.  Indeed, Plaintiff has not even attempted to plead such a claim.  Rather, she pleads that the "representations and omissions *on the Checkout Page*"—*i.e.*, the statements made *pre*-purchase—are the only

statements that actually "constitute . . . advertisements." (FAC ¶ 98.) Plaintiff's FAL claim must be dismissed in its entirety.

> ## C. Plaintiff Lacks Statutory Standing for Her UCL, FAL, and CLRA Claims Based on the Allegedly Non-Compliant Acknowledgment.

In addition, a separate and independent reason for dismissing all of Plaintiff's statutory claims based on the alleged failure to send a compliant acknowledgment is that Plaintiff has failed to allege statutory standing under the UCL, FAL, or the CLRA. To have statutory standing under those statutes a plaintiff must allege two elements. *First*, she must plead an economic injury in fact. *See Chulick-Perez v. CarMax Auto Superstores Cal., LLC*, 71 F. Supp. 3d 1145, 1149–51 (E.D. Cal. 2014) (consumer did not sufficiently plead injury under UCL or CLRA, based on claim that used vehicle dealership failed to provide her with authentic vehicle inspection certificate, absent plausible allegation that she suffered even minor pecuniary damage); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (dismissing UCL, FAL, and CLRA claims because consumer had not sufficiently plead injury).

*Second*, she must plead causal linkage between the offending conduct and that injury. *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 856–57 (2008) ("The language of the UCL . . . makes clear that a showing of causation is required as to each representative plaintiff . . . Because Plaintiffs fail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation . . . ."); *Laster v. T- Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing UCL claim where plaintiff failed to allege causation); *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof."). Ultimately both elements need to be established (i.e., beyond pleading) to state a claim.

Neither element is (or can be) plausibly alleged by Plaintiff here based on the failure to send a compliant acknowledgement. She has not alleged that she suffered an economic injury as a result of the lack of a compliant acknowledgment, as opposed to the supposedly non-compliant pre-purchase disclosures. Indeed, her claims of "economic injury" have no allegations that pertain *solely* to the deficient acknowledgment email she received.[9] Thus Plaintiff has not adequately pled and cannot plead economic injury solely from the allegedly deficient post-purchase acknowledgment (nor is there any way she could ever show this on behalf of a putative class).

Moreover, even if Plaintiff could state some sort of actual pecuniary harm stemming from the acknowledgment, she cannot plausibly allege sufficient causation between the noncompliant acknowledgment and that pecuniary harm. In fact, she alleges that all of her monetary injuries are causally related to the *pre-purchase* disclosures by NYT, not those in the acknowledgement. *See, e.g.,* FAC ¶ 83 (UCL: "Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue Defendant's acts of unfair competition, *which caused them to purchase* the NYT Subscriptions.") (emphasis added).[10] Nowhere does Plaintiff allege that she would not have purchased her automatically renewing subscription to *The New York Times* had she known she was going to receive a deficient acknowledgement email after her purchase. Nor would any such allegations pass the plausibility test.

---

[9] FAC ¶ 60 ("Ms. Moses suffered economic injury. Had Defendant complied with the ARL by adequately disclosing the terms associated with her NYT Subscription purchase, Ms. Moses *would have been able to read and review the auto renewal terms prior to purchase*, and she would have not subscribed to The New York Times or she would have cancelled her The New York Times Subscription earlier, i.e., prior to the expiration of the initial subscription period.") (emphasis added).

[10] *See also* FAC ¶ 101 (ARL: "Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they *would not have purchased* the NYT Subscriptions on the same terms if the true facts were known about the product and the NYT Subscriptions do not have the characteristics as promised by Defendant."); ¶ 108 (CLRA: "Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because *they were induced to purchase* NYT Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.") (emphasis added).

23

Finally, to the extent that Plaintiff is claiming that NYT's alleged failure to provide an "easy to use" cancellation mechanism caused her economic injury, then Plaintiff's own allegations—once again—belie the plausibility of that claim. Plaintiff admits in her FAC that NYT offers two methods of cancellation: online chat and a toll free phone number—the latter of which is explicitly blessed in the ARL as an "easy to use" cancellation mechanism. As a result, any claim based on the lack of an easy to use cancellation method is completely unfounded.[11]

III. **Plaintiff Has Not Plausibly Pled Conversion.**

A conversion claim requires a defendant's conversion of property by a wrongful act resulting in damages to Plaintiff, *Avidor v. Sutter's Place, Inc*., 212 Cal. App. 4th 1439, 1452 (2013); such a claim cannot be stated here. As the Checkout Page demonstrates, Plaintiff accepted NYT's offer of a subscription at a set price and agreed to pay for what she ordered. After being presented with the automatic renewal terms in a clear and conspicuous manner, inputting her payment information, and after being told twice on the same page that her subscription would automatically renew, a user must click on the "Purchase Subscription" button, at which point the initial amount is charged. This series of voluntary acts constitutes consent to the purchase of a subscription to at the price stated. Plaintiff's consent to the transfer of funds from her account to NYT bars a claim for conversion. *See Klett v. Sec. Acceptance Co*., 38 Cal. 2d 770, 789 (1952);

---

[11] Nor can Plaintiff plausibly establish statutory standing for (or the necessary elements of) any statutory claim based on the *pre*-purchase disclosures. Plaintiff suffered no economic injury from those disclosures because they were compliant with the ARL, as discussed above. Moreover, Plaintiff admits she was well-aware she was being automatically charged. She pleads that she saw such charges appear periodically on her account and was confused about the cadence of their timing – but not about their existence – yet she did not attempt to cancel until nearly a year after her purchase. (FAC ¶ 54.) Thus, although she pleads she would not have subscribed to the NYT had NYT provided compliant pre-purchase disclosures (which it did), those allegations are not plausible given that Plaintiff, by her own admission, was aware of the repeated renewal charges and kept on subscribing for nearly a year nonetheless. *See Mayron v. Google LLC,* 2020 WL 5494245, at *4 (Cal Ct. App. Sept. 11, 2020) (causal connection required by UCL not pled because allegedly deficient disclosures did not change plaintiff's behavior).

*Driver v. Acquisto*, 145 Cal. App. 2d 304, 308 (1956).  Further, because Plaintiff consented to the

transfer at issue, she likewise has not plead damages as required to state a claim for conversion.

*Hall*, 2020 WL 2303088 at *5 ("Because Plaintiff fails to plausibly allege any ARL violations, the

Court also finds that she fails to plausibly state a claim for theft or conversion.").

## IV.    Unjust Enrichment Is Not a Valid Cause of Action Under California Law.

Plaintiff's unjust enrichment claim must be dismissed because under California law, there

is no such thing as a stand-alone cause of action for unjust enrichment.  *Wolph v. Acer Am. Corp*.,

2009 WL 2969467, at *5 (N.D. Cal. Sept. 14, 2009) ("unjust enrichment does not constitute a

stand-alone cause of action"); *In re Late Fee & Over-Limit Fee Litig.,* 528 F. Supp. 2d 953, 966

(N.D. Cal. 2007) ("there simply is no cause of action in California for unjust enrichment") (citation

and internal quotations omitted); *Johns v. Bayer Corp*., 2010 WL 476688, at *6 (S.D. Cal. Feb. 9,

2010) (same); *Walker v. Equity I Lenders Group*, 2009 WL 1364430, at *9 (S.D. Cal. May 14,

2009) (same).[12]  Further, the only basis for this claim is "Defendant's failure to disclosure material

terms of the purchase agreement" which "induced Plaintiff and the Class to purchase the NYT

Subscriptions."   (FAC ¶ 114.)   But because none of NYT's pre-purchase disclosures were

deficient, NYT cannot have been unjustly enriched by them.  This claim accordingly fails as well.

## V.    Plaintiff Has Not Plausibly Alleged Fraud or Negligent Misrepresentation.

Plaintiff's claims for fraud and negligent misrepresentation go nowhere.  Plaintiff purports

to assert a cause of action for negligent misrepresentation based on vague and conclusory

allegations that NYT "made misrepresentations and omissions to consumers before and after

---

[12] While the California Supreme Court has allowed an unjust enrichment claim past the pleading stage, it was in a highly fact-specific circumstance not applicable here.  *See Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 998–99 (2015) (permitting claims for unjust enrichment of an insured's counsel where counsel's fees are not for the insured's benefit; "emphasiz[ing] that its conclusion hinges on the particular facts and procedural history of this litigation").

enrollment in Defendant's NYT Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments," and she further alleges that NYT "omitted, failed to disclose, and intentionally concealed" from its "false and deceptive advertisements" "material facts concerning billing, shipping,[13] cancellation, and automatically payment terms, policies, and requirements." (FAC ¶ 118.)  Similarly, she purports to assert a cause of action for fraud based on the allegation that "Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the NYT Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies."  (*Id.*, ¶ 126.)

To state a claim for fraud, a plaintiff must allege: "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage."  *Conroy v. Regents of Univ. of California*, 45 Cal. 4th 1244, 1254 (2009); Cal. Civ. Code § 1709.  "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance."  *Cadlo v. Owens-Illinois, Inc*., 125 Cal. App. 4th 513, 519 (2004).  "Unlike fraud, however, negligent misrepresentation demands a positive assertion, not merely a misleading omission."  *Darling v. Green*, 2013 WL 11323320, at *12 (C.D. Cal. Sept. 25, 2013).  A plaintiff must set forth, with particularity, "what is false and misleading about a statement and why it is false," *Glen Holly Entm't, Inc. v. Tektronix, Inc*., 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999)), and the circumstances surrounding the plaintiff's reliance on the statements.  *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that the complaint did not meet the standard of

---

[13] Plaintiff's allegation that NYT omitted "shipping" information in its disclosures to Plaintiff is particularly nonsensical, and yet another example of her sloppy copy and paste job, given that Plaintiff alleges she ordered a digital access subscription (FAC ¶ 44) – and so there was nothing to be "shipped" to her.

Rule 9(b) partly because the plaintiff failed to specify when he was exposed to the allegedly fraudulent advertisements, which ones he found material, and on which ones he relied).

Plaintiff has not identified any statement NYT made that was false.  As for her claimed "omissions," Plaintiff has not identified what *specific* omissions NYT allegedly made.  This dooms her claims at the outset.  NYT can only assume that Plaintiff intended to allege that NYT omitted required ARL disclosures prior to her purchase.  However, the allegations in the FAC reveal that she *was* informed of all the requisite automatic renewal terms prior to her purchase.  Plaintiff cannot state a negligent misrepresentation or fraud claim by omission when all of the terms that were legally required to be disclosed pre-purchase were, in fact, disclosed to her.

Courts in the Ninth Circuit routinely dismiss consumer fraud claims where, as here, the allegedly undisclosed or misleading information was actually provided.  *See, e.g.*, *Freeman v. Time, Inc*., 68 F. 3d 285, 290 (9th Cir. 1995) (affirming dismissal of UCL and FAL claims alleging nondisclosure after reviewing promotional materials at issue); *Bird v. First Alert, Inc*., 2014 WL 7248734, at *7 (N.D. Cal. Dec. 19, 2014) (dismissing consumer fraud claims where defendant's packaging disclosed information claimed to be omitted); *Berry v. Webloyalty.com*, Inc., 2011 WL 1375665, at *4-5 (S.D. Cal. Apr. 11, 2011) (dismissing consumer fraud claims where allegedly undisclosed information was provided) *vacated on other grounds*, 517 Fed. Appx. 581 (9th Cir. 2013); *Baxter v. Intelius, Inc*., 2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010) (dismissing nondisclosure claims where webpage provided allegedly undisclosed information).

To the extent that Plaintiff intends to claim that NYT omitted certain information in the *post*-purchase acknowledgment sent to her via email, any such omissions cannot form the basis for a fraud or negligent misrepresentation under the law and Plaintiff's own allegations.  Plaintiff alleges that the "misrepresentations and omissions"—whatever they are—were "intended to

27

induce and actually induce Plaintiff and Class members to purchase and enroll in Defendant's NYT Subscription Program."  (FAC ¶¶ 121, 127.)  She baldly alleges that she "reasonably and justifiably relied" on these alleged omissions, and that she "would not have purchased the NYT Subscriptions if the true facts had been known."  (FAC ¶¶ 122, 128.)  However, for similar reasons discussed previously regarding Plaintiff's CLRA and FAL claims, any omissions occurring post-purchase could not have induced Plaintiff to purchase her NYT subscription.  *Darling v. Green*, 2013 WL 11323320 (C.D. Cal. Sept. 25, 2013) (finding plaintiffs could not base a claim for fraud based false misrepresentations and omissions that allegedly induced purchase when the alleged misrepresentations and omissions occurred after the purchase).

Nor can she plausibly plead she justifiably relied on post-purchase disclosures in her decision to purchase her NYT subscription.  And again, Plaintiff's own allegations demonstrate that she received all of the requisite ARL disclosures pre-purchase; so even if that information was not repeated in the post-purchase acknowledgment email, such an omission cannot be the basis for a fraud or negligent misrepresentation claim because *it was already disclosed to Plaintiff*.  And finally, in all events, an omission cannot form the basis for a negligent misrepresentation claim. *Darling*, 2013 WL 11323320, at *12.  Thus, any way you look at it here, Plaintiff cannot state a claim based on post-purchase omissions.  In sum, this is simply not a fraud or misrepresentation case.  These newly added counts only serve to demonstrate that no matter what label Plaintiff slaps on her claims, her own allegations in the FAC still confirm she has no claim as a matter of law.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's claims with prejudice.

28

Dated:  September 21, 2020

Respectfully submitted,

DENTONS US LLP

By:   /s/ Sandra D. Hauser
      Sandra D. Hauser
      1221 Avenue of the Americas
      New York, New York 10020
      Phone: 212-768-6802
      Email: sandra.hauser@dentons.com

      Natalie J. Spears
      Kristen C. Rodriguez
      233 S. Wacker Drive, Suite 5900
      Chicago, IL 60606
      Phone: 312-876-8000
      Email: natalie.spears@dentons.com
      Email: kristen.rodriguez@dentons.com

      *Attorneys for Defendant,*
      *The New York Times Company*

29

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 21, 2020 I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ Sandra Hauser