## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIBEL MOSES, on behalf of herself and all others similarly situated, <br><br>                Plaintiff, <br> v. <br><br> THE NEW YORK TIMES COMPANY, d/b/a *The New York Times*. <br><br>                Defendant. | Civil Action No.: 1:20-cv-04658-RA <br><br> Hon. Judge Ronnie Abrams |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Dated:  October 29, 2020

**BURSOR & FISHER, P.A.**

Neal J. Deckant
Frederick J. Klorczyk III
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ndeckant@bursor.com
        fklorczyk@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 3

I.    DEFENDANT FAILED TO COMPLY WITH THE DISCLOSURE
REQUIREMENTS OF THE ARL............................................................................ 3

    A.    Defendant Failed To Fully Disclose Its Cancellation Policy On The
Checkout Page ........................................................................................ 3

    B.    Defendant's Disclosures Are Neither Clear And Conspicuous Nor
In Close Visual Proximity To The Request For Consent ....................... 6

    C.    Browsewrap Agreements Do Not Constitute Affirmative Consent....................... 7

    D.    Plaintiff Plausibly Alleges That Defendant's Cancellation
Mechanism Is Not "Timely" Or "Easy To Use" As Required By §
17602(b)................................................................................................ 11

II.    PLAINTIFF STATES CLAIMS UNDER CALIFORNIA'S CONSUMER
PROTECTION STATUTES................................................................................. 12

    A.    Plaintiff Adequately Alleges The Circumstances Of Defendant's
Fraud .................................................................................................... 12

    B.    Plaintiff Adequately Alleges Intent, Omissions, And Knowledge ...................... 14

    C.    Plaintiff Properly Alleges Consumer Protection Claims Based On
The Material Omissions In Defendant's Acknowledgment Email...................... 18

III.    DEFENDANT'S STANDING ARGUMENTS LACK MERIT ................................... 18

    A.    Plaintiff Has Suffered Economic Injury ............................................... 18

    B.    Plaintiff Sufficiently Alleges Causation .............................................. 19

IV.    PLAINTIFF STATES A CLAIM FOR CONVERSION.................................................. 22

V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY PLED
IN THE ALTERNATIVE UNDER CALIFORNIA LAW.............................................. 22

VI.    PLAINTIFF STATES CLAIMS FOR FRAUD AND NEGLIGENT
MISREPRESENTATION..................................................................................... 24

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Aron v. U-Haul Co. of California*,
   143 Cal. App. 4th 796 (2006) .................................................................................... 15

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................... 23, 24

*Be In, Inc. v. Google Inc.*,
   2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ............................................................... 9

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......................................................................... 9

*Borkman v. BMW of N. Am., LLC*,
   2017 WL 4082420 (C.D. Cal. Aug. 28, 2017) .......................................................... 17

*Browning v. Unilever United States, Inc.*,
   2017 WL 7660643 (C.D. Cal. Apr. 26, 2017) ........................................................... 21

*Bruton v. Gerber Prod. Co.*,
   703 F. App'x 468 (9th Cir. 2017) .............................................................................. 23

*Cavka v. SoulCycle Inc.*,
   2017 WL 2906034 (C.D. Cal. 2017) .......................................................................... 10

*Cirulli v. Hyundai Motor Co.*,
   2009 WL 5788762 (C.D. Cal. June 12, 2009) ...................................................... 21, 22

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ................................................................................... 15

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) .................................................................................... 16

*Falk v. General Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................................................... 15

*Hall v. Marriott Int'l, Inc.*,
   2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ......................................................... 6, 7

*Hansen v. Newegg.com Americas, Inc.*,
   25 Cal. App. 5th 714 (2018) ................................................................. 14

*Holley v. Gilead Scis., Inc.*,
   410 F. Supp. 3d 1096 (N.D. Cal. 2019) ............................................ 13, 14

*In re Safeway Tuna Cases*,
   2016 WL 3743364 (N.D. Cal. July 13, 2016) ....................................... 24

*Johnson v. Pluralsight, LLC*,
   728 F. App'x 674 (9th Cir. 2018) ........................................................... 5

*Jordan v. Wonderful Citrus Packing LLC*,
   2018 WL 4350080 (E.D. Cal. Sept. 10, 2018) ...................................... 23

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   2019 WL 6998661 (C.D. Cal. Oct. 9, 2019) .......................................... 20

*King v. Bumble Trading, Inc.*,
   393 F. Supp. 3d 856 (N.D. Cal. 2019) .................................................... 7

*Kissel v. Code 42 Software, Inc.*,
   2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) .......................................... 7

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal.App.4th 1342 (2012) ............................................................... 15

*Kutza v. Williams-Sonoma, Inc.*,
   2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ..................................... 23, 24

*Lewis v. Rodan & Fields, LLC*,
   2019 WL 978768 (N.D. Cal. Feb. 28, 2019) .......................................... 20

*Lilly v. ConAgra Foods, Inc.*,
   743 F.3d 662 (9th Cir. 2014) .................................................................. 6

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. 2018) ...................................... 5, 6, 7, 19

*Lopez v. Terra's Kitchen, LLC*,
   331 F. Supp. 3d 1092 (S.D. Cal. 2018) ..........................................Passim

*Mayron v. Google LLC*,
   54 Cal. App. 5th 566 (2020) ................................................................ 20

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020)........................................................................ 16

*Myers v. BMW of N. Am., LLC*,
2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ............................................... 17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)................................................................... 9, 10

*Parrish v. Volkswagen Grp. of Am., Inc.*,
2020 WL 4529615 (C.D. Cal. May 7, 2020) ................................................. 17

*Price v. Synapse Grp., Inc.*,
2017 WL 3131700 (S.D. Cal. July 24, 2017)................................................... 7

*Ronzani v. Sanofi S.A*,
899 F.2d 195 (2d Cir. 1990)........................................................................... 26

*Smith v. Keurig Green Mountain, Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019) .......................................................... 23

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016)........................................................................ 13

*Vasquez v. Superior Court*,
4 Cal. 3d 800 (1971)....................................................................................... 19

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................ 23

*Williams v. Gerber Products*,
552 F.3d 934 (9th Cir. 2008)............................................................................ 6

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012)................................................................. 15, 17

**STATUTES**

Cal. Bus. & Prof. Code § 17601(a)............................................................. 2, 8, 18

Cal. Bus. & Prof. Code § 17601(b)................................................................... 4, 5

Cal. Bus. & Prof. Code § 17601(c)....................................................................... 7

Cal. Bus. & Prof. Code § 17200 ........................................................................... 3

Cal. Bus. & Prof. Code § 17500 ..................................................................................... 3

Cal. Bus. & Prof. Code § 17600 ..................................................................................... 1

Cal. Bus. & Prof. Code § 17602 ..............................................................................Passim

Cal. Civ. Code § 1750.................................................................................................... 3

**RULES**

Fed. R. Civ. P. 8(a) ...................................................................................................... 24

Fed. R. Civ. P. 8(d) ...................................................................................................... 24

Fed. R. Civ. P. 9(b) ................................................................................................ 13, 15

Fed. R. Civ. P. 15(a) .................................................................................................... 26

## INTRODUCTION

Defendant The New York Times Company ("Defendant" or "NYT") has violated California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, in four distinct ways.  First, Defendant failed to disclose the automatic renewal offer terms associated with the NYT Subscriptions on the Checkout Page in a "clear and conspicuous" manner and in visual proximity to the request for consent on that page, in violation of Section 17602(a)(1).  Specifically, Defendant's disclosures are neither clear and conspicuous, nor in close visual proximity to the "Purchase Subscription" button on the Checkout Page.  *See* First Amended Complaint ("FAC") ¶¶ 35-39.  That is, with respect to the automatic renewal terms that do appear on the Checkout Page, such disclosures were presented in such a way that they could be, and were, easily overlooked.  *Id.* ¶ 35.

Second, Defendant failed to obtain Plaintiff's affirmative consent to the automatic renewal terms associated with the NYT Subscriptions before charging her Payment Method, in violation of Section 17602(a)(1).  FAC ¶ 40.  Notably, Defendant's website contains no mechanism that requires consumers to expressly manifest their assent to the automatic renewal offer terms associated with the NYT Subscriptions.  *Id.*  Although Defendant contends that Plaintiff manifested her affirmative consent by simply using the NYT Website, Def.'s Br. ("MTD") at 14, consent decrees obtained through ARL enforcement actions in California demonstrate that such passive use of Defendant's website is insufficient to confer affirmative consent to the terms embedded in other pages of that website.  *See, e.g.*, *People v. Guthy-Renker LLC*, No. 19-cv-341980, at *5 (Cal. Super. Ct. Feb. 1, 2019) (noting that affirmative consent is obtained through "a check-box, signature, express consent button, or other substantially similar mechanism that [California consumers] must affirmatively select to give their consent" and that

1

the "mechanism cannot relate to consent for anything other than the AUTOMATIC RENEWAL OFFER TERMS (such as final payment or completion of the transaction)"); *see also People v. Beachbody*, LLC, No. 55029222, at *5 (Cal. Super. Ct. Aug. 24, 2017); *People v. eHarmony, Inc.*, No. 17-cv-03314, at *4 (Cal. Super. Ct. Jan. 8, 2018).  Moreover, relevant case law contradicts Defendant's argument that passive action could satisfy the requirement for affirmative consent.  *See, e.g.*, *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1100 (S.D. Cal. 2018) ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on – without more – is insufficient to give rise to notice.").

Third, Defendant failed to provide Plaintiff with an acknowledgment that includes the automatic renewal offer terms and information regarding how to cancel in a manner that is capable of being retained by her, in direct violation of Section 17602(a)(3).  FAC ¶¶ 41-42.  As Plaintiff alleges, "[t]he acknowledgment email contains even less of the required information than is featured on the relevant portion of the Checkout Page[.]"  *Id.* ¶ 42.  In its motion, Defendant argues that Plaintiff's statutory claims under the FAL and the CLRA fail to the extent they are premised upon the acknowledgment email because the acknowledgment email is a "post-sale" communication.  However, Defendant's semantical argument on this point relies on mischaracterization.  Critically, Defendant's acknowledgment email required by the ARL is <u>not</u> an exclusively "post-sale" communication; it is necessarily also a *pre*-sale communication in the context of automatic renewal programs such as the NYT Subscriptions.  Indeed, it is the very nature of an automatic renewal program to renew.  *See* Cal. Bus. & Prof. Code § 17601(a)

(defining an "automatic renewal" program as "a plan or arrangement in which a paid subscription is automatically renewed at the end of a definite term for a subsequent term").

Fourth, Defendant failed to provide an easy and efficient mechanism for Plaintiff and consumers to cancel their subscriptions, in violation of Section 17602(b).  Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b); *see also* FAC ¶¶ 3, 53-55.  Plaintiff's failed attempt at affecting cancellation establishes that the cancellation process that exists is neither to "easy to use" nor "timely," as the ARL requires.  *Id.*

Based on Defendant's violations of the ARL and for the following reasons, as will be discussed below, Plaintiff brings cognizable legal claims for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, under the "unlawful" prong.  Moreover, because Defendant's ARL violations as described above constitute material omissions, Plaintiff also brings plausible claims under the "fraudulent" prong of the UCL, as well as claims under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*  Plaintiff also brings common law claims for unjust enrichment / restitution, negligent misrepresentation, and fraud.  *See* FAC ¶ 4.

## ARGUMENT

**I.    DEFENDANT FAILED TO COMPLY WITH THE DISCLOSURE REQUIREMENTS OF THE ARL**

### A.    Defendant Failed To Fully Disclose Its Cancellation Policy On The Checkout Page

Pursuant to Section 17601(b) of the ARL, Defendant was required to disclose the following automatic renewal offer terms in a "clear and conspicuous disclosure:"

> (1) That the subscription or purchasing agreement will continue until the consumer cancels;

3

(2) The description of the cancellation policy that applies to the offer;

(3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

(4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and

(5) The minimum purchase obligation, if any.

Cal Bus. & Prof. Code § 17601(b) ("'Automatic renewal offer terms' means the following clear and conspicuous disclosures ….").

Defendant contends its Checkout Page meets each of these requirements. *See* MTD at 10. However, contrary to Defendant's assertions, the statement "You may cancel at any time" does not identify "all" of the terms associated with Defendant's NYT Subscription because such webpage does not identify Defendant's *complete* cancellation policy. *See id.* For example, "the Checkout Page does not mention that subscribers must contact Customer Care in order to cancel their NYT Subscriptions." FAC ¶ 37. Nor does the Checkout Page indicate that consumers may effectively cancel in just one of two ways, "by calling a toll-free number during particular hours or by utilizing the chat function on the NYT Website," and it fails to provide the associated toll-free number on the Checkout Page. *Id.* Moreover, "Defendant does not specify anywhere on the Checkout Page that '[d]igital products sold as part of a promotion[] … may have different cancellation or refund policies that will be made clear at the time of purchase[,]' or that '[c]ertain promotions may not permit cancellation during the promotional period[,]' as do terms set forth on other pages of Defendant's website." *Id.* ¶ 38. Each of these terms relates to cancellation, and each is therefore a material component of Defendant's cancellation policy. Since

4

"Defendant [] fails to present a complete 'description of the cancellation policy that applies to the offer[,]'" it has violated the clear text of Section 17602(a)(1). *Id.* ¶ 37.

Defendant concedes, in a footnote, that it failed to include these terms on the Checkout Page, but it tries to justify these omissions on the basis that "the cancellation policy, and information on how to cancel, are two different ARL requirements." MTD at 15 n.7. The Ninth Circuit rejected that argument in 2018 based on the nearly identical underlying violations of the ARL:

> [Plaintiff] has also sufficiently alleged unlawful conduct to pursue a claim under the UCL. His complaint alleges that Pluralsight underlined violated the ARL by charging him without first providing information on how to cancel the subscription. The record also indicates that consumers signing up for trial subscriptions were not specifically given instructions on how to cancel before payment. This amply satisfies the UCL requirement that an unlawful business practice be any violation of "other laws."

*Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018) (emphasis added). As another court similarly explained:

> Defendant contends that it discloses "the full cancellation policy." A review of the attached webpage reveals that the only information regarding cancellation is that the subscriber is instructed to call a particular phone number. The webpage does not include information instructing the subscriber that they must call that phone number at least one day prior to the date the next monthly delivery ships. Accordingly, Plaintiff sufficiently alleges that Defendant's "description of the cancellation policy that applies to the offer" is incomplete, and therefore, it is plausible that the incomplete cancellation policy violates the ARL. *See* Cal. Bus. & Prof. Code § 17601(b)(2).

*Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1071-72 (S.D. Cal. 2018) (emphasis added).

As *Johnson* and *Lopez* make clear, the fact that the ARL does not prescribe any specific cancellation policy is of no moment. What matters is that Defendant's cancellation policy is

5

buried in separate webpages linked on the Checkout Page, instead of actually on the Checkout

Page itself as required by the ARL. *See* FAC ¶¶ 37-38. The ARL requires that such information

be disclosed to consumers *on the Checkout Page* before the business may charge the consumer's

Payment Method. Cal. Bus. & Prof. Code §§ 17601(b)(2), 17602(a)(1). Instead of making those

disclosures, Defendant instead omitted the terms related to cancellation from the Checkout Page

and buried them elsewhere on its website. *Id.* Thus, as in *Johnson* and *Lopez*, Plaintiff has

sufficiently alleged that Defendant's "description of the cancellation policy that applies to the

offer" is incomplete in violation of Section 17602(a)(1).

> **B.     Defendant's Disclosures Are Neither Clear And Conspicuous Nor In Close
> Visual Proximity To The Request For Consent**

As Defendant's brief demonstrates, the parties dispute whether Defendant's disclosures

are in fact (1) "clear and conspicuous" and (2) whether they are in fact presented in visual

proximity to the request for consent. MTD at 11, 13. Both of these questions depend on the

same issue: whether a *reasonable consumer* would be misled by the substance or form of

Defendant's disclosures. This is typically a question of fact for the jury. Indeed, it is well-

established under California law that "whether [Defendant's] business practice is deceptive will

usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Hall v.

Marriott Int'l, Inc.* (*Marriott*), 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) (slip op.); *see also

Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014) (same); *Williams v. Gerber

Products*, 552 F.3d 934, 938-39 (9th Cir. 2008) ("California courts, however, have recognized

that whether a business practice is deceptive will usually be a question of fact not appropriate for

decision on demurrer.").

Here, Plaintiff alleges precisely where Defendant *should have* made these disclosures on

the Checkout Page. *See* FAC ¶¶ 32, 37 ("On the Checkout Page, there are two distinct areas of

the webpage that contain potentially relevant information regarding the automatic renewal offer terms associated with the NYT Subscriptions: (1) the block of text located to the right of the screen, immediately below the bolded and capitalized text that reads 'Payment Information'; and (2) the block of text located immediately above the 'Purchase Subscription' button. … [T]he required terms must appear on the Checkout Page, and more precisely they must appear in the block of text immediately above the "Purchase Subscription" button on that page."). "Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, as the Court must at this stage, the Court [should not] conclude as a matter of law that the alleged failure to disclose … would not deceive a reasonable consumer." *Marriott*, 2020 WL 4727069.

Stated otherwise, Plaintiff's allegations are sufficient at this stage. *See, e.g.*, *Price v. Synapse Grp., Inc.*, 2017 WL 3131700, at *6 (S.D. Cal. July 24, 2017) ("Read in the light most favorable to Plaintiffs, the SAC plausibly alleges that Defendants failed to present the text 'in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text ... in a manner that clearly calls attention to the language.'") (citing Cal. Bus. & Prof. Code § 17601(c)).

### C.      Browsewrap Agreements Do Not Constitute Affirmative Consent

"'The purpose of the ARL is to protect consumers from unwittingly consenting to automatic renewals or subscription orders.'" *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1071 (S.D. Cal. 2018) (quoting *Price v. Synapse Grp., Inc.*, 2017 WL 3131700, at *5 (S.D. Cal. July 24, 2017)).[1]  To achieve this the ARL requires, among other things, that Defendant

---

[1] "As the legislative history provides, the ARL was enacted to protect consumers who 'believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.' … The bill's author asserts that such 'unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to,' and that the bill is a response to '[a] widespread

"first obtain[] the consumer's affirmative consent to the agreement containing the automatic

renewal offer terms or continuous offer terms" before charging the consumer.  Cal. Bus. & Prof.

Code § 17602(a)(2).  As Plaintiff alleges, "Defendant … never requires the individual to read or

affirmatively agree to any terms … before consumers complete the checkout process and submit

their orders for NYT Subscriptions.  Consequently, Defendant uniformly fails to obtain any form

of consent from – or even provide effective notice to – its subscribers before charging

consumers' Payment Methods on a recurring basis."  FAC ¶ 33.

Defendant disputes this requirement to obtain affirmative consent, instead arguing that it

has done so because "the relevant terms appear [on the Checkout Page] before the 'Purchase

Subscription' button[, and as a result,] the consumer does not need to scroll past that button to

view them."  MTD at 14; *see also id.* at 15 ("[A] consumer can only order a subscription after

being informed of the automatic renewal terms, after they enter their credit card information, and

after clicking on the 'Purchase Subscription' button after being informed again that the

'subscription will renew automatically.'").  But that conflates two wholly distinct requirements

under the ARL, namely: (1) the requirement that Defendant provide consumers with ***notice*** of

the automatic renewal terms *vis-a-vis* clear and conspicuous disclosure; and (2) the requirement

that Defendant obtain consumers' affirmative ***consent*** to the agreement containing the automatic

renewal terms.  At best, the presence of the requisite disclosures in the space immediately above

---

instance of these violations.' …. The statutory language confirms '[i]t is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service.' …. Thus, the ARL was clearly enacted to protect consumers from 'the oppressive use of superior bargaining power' when entering into subscription or purchasing agreements." *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *4–5 (C.D. Cal. Apr. 14, 2016) (citation omitted); *see also King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868 (N.D. Cal. 2019).

the "Purchase Subscription" button, without more, could only serve to place a consumer on **notice** of those disclosures, but it would not serve to obtain the consumer's **consent** to those terms (affirmative or otherwise).

What Defendant describes is nothing but a browsewrap agreement, *i.e.*, one where the "consumer assents to the Terms & Conditions simply by using the website or purchasing a subscription, without visiting the Terms & Conditions page or even acknowledging that use of the website constitutes assent to the Terms & Conditions." *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1099 (S.D. Cal. 2018). "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014), 763 F.3d at 1176; *Be In, Inc. v. Google Inc.*, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013). In contrast, "clickwrap" agreements require users "to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen*, 763 F.3d at 1175-76. In other words, clickwrap agreements "require a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015).

As consent decrees obtained through ARL enforcement actions in California demonstrate, browsewrap agreements are insufficient to confer affirmative consent. That is because affirmative consent is obtained:

> [T]hrough a check-box, signature, express consent button, or other substantially similar mechanism that [California consumers] must affirmatively select to give their consent. This mechanism cannot relate to consent for anything other than the AUTOMATIC RENEWAL OFFER TERMS (such as final payment or completion of the transaction).

*People v. Guthy-Renker LLC*, No. 19-cv-341980, at \*5 (Cal. Super. Ct. Feb. 1, 2019).[2]

Similarly, Defendant's inclusion of hyperlinks to its "Terms of Sale" and "Cancellation and Refund Policy" likewise undercut any finding of affirmative consent here.  That is because "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on – without more – is insufficient to give rise to notice."  *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d at 1100 (internal quotations omitted).  Moreover, "[t]hat a consumer could have come across the required information somewhere else on [Defendant's] website does not mean that [Plaintiff] has not suffered a concrete injury when a health studio fails to include the mandatory disclosures in the actual agreement."  *See Cavka v. SoulCycle Inc.*, 2017 WL 2906034, \*4 (C.D. Cal. 2017); *Nguyen,* 763 F.3d at 1179 ("[C]onsumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.").  As such, the proximity or conspicuousness of the "Terms of Sale" and "Cancellation and Refund Policy" hyperlinks cannot save Defendant.

Regardless, even a "checkbox" that consumers had to affirmatively click in order to complete the subscription process would be insufficient to constitute affirmative consent to terms that appear on a separate page.  *See, e.g.*, *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1099 (S.D. Cal. 2018) ("Defendant points to no language on its webpages indicating that by

---

[2] https://www.santamonica.gov/Media/Default/Attorney/Guthy%20judgment%20conformed.pdf. *See also People v. Beachbody,* LLC, No. 55029222, at \*5 (Cal. Super. Ct. Aug. 24, 2017), https://www.santamonica.gov/Media/Default/Attorney/170828%20Beachbody%20Judgment%20conformed.pdf; *People v. eHarmony, Inc.*, No. 17-cv-03314, at \*4 (Cal. Super. Ct. Jan. 8, 2018),https://www.santamonica.gov/Media/Default/CMO/eHarmony%20final%20judgment%20180108.pdf.

clicking a button on its webpage, the consumer is indicating that he or she <u>has read *and* agrees to</u> the Terms & Conditions."); *see also* FAC ¶ 32 ("By subscribing, you agree to the Terms of Sale, including the Cancellation and Refund Policy."); Rodriguez Decl. Ex. 1 (same).

### D.     Plaintiff Plausibly Alleges That Defendant's Cancellation Mechanism Is Not "Timely" Or "Easy To Use" As Required By § 17602(b)

Section 17602(b) provides that "[a] business making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a postal address only when the seller directly bills the consumer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment[.]" Cal. Bus. & Prof. Code § 17602(b). Defendant claims it "provided [two] ARL-compliant mechanisms for cancellation" – its toll-free number and its online chat. MTD at 16. That position is based on a misunderstanding of Section 17602(b).

Section 17602(b)'s use of the word "another" indicates that, even if Defendant provides a toll-free number, the process of cancelling through that mechanism must still be "cost-effective, timely, and easy-to-use mechanism." Thus, Defendant's contention that "[p]roviding those two methods of cancellation is all that is required by the ARL" is also incorrect to the extent that neither of those two mechanisms is "cost-effective, timely, and easy-to-use mechanism."

Here, Plaintiff has plausibly alleged that Defendant's cancellation mechanism was not "easy to use" in violation of Cal. Bus. & Prof. Code § 17602(b). *See, e.g.*, FAC ¶ 2 ("Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their NYT Subscriptions."); *id.* ¶ 58 ("[T]he 'mechanism for cancellation' that exists is not one Ms. Moses and other reasonable consumers would consider 'easy-to-use.'"); *id.* ¶ 53 ("Ms. Moses struggled immensely with the cancellation process."); *id.* at ¶ 55 ("[O]n June 16, 2020, … Ms. Moses learned that, notwithstanding her attempt to cancel on May 18, 2020, Defendant had

11

continued to automatically renew her NYT Subscription on a recurring, monthly basis[.] …

Thus, Ms. Moses['s] attempt at cancellation one week earlier was utterly ineffective.").  These

allegations are sufficient to support an inference that Defendant's cancellation policy is neither

"timely" nor "easy to use."  Moreover, the question here – whether a reasonable consumer would

find the cancellation polices at issue to be "cost-effective, timely, and easy-to-use mechanism" –

is one of fact and therefore not appropriate for resolution on the pleadings.  Accordingly,

Plaintiff plausibly alleges that Defendant failed to comply with Section 17602(b).

Regardless, Plaintiff alleges that she purchased her monthly digital subscription "from

Defendant's website."  FAC ¶ 5.  As such, Defendant is also subject to Section 17602(c), which

provides that a "consumer who accepts an automatic renewal or continuous service offer online

shall be allowed to terminate the automatic renewal or continuous service exclusively online,

which may include a termination email formatted and provided by the business that a consumer

can send to the business without additional information."[3]

## II.   PLAINTIFF STATES CLAIMS UNDER CALIFORNIA'S CONSUMER PROTECTION STATUTES

### A.    Plaintiff Adequately Alleges The Circumstances Of Defendant's Fraud

Defendant argues that "Plaintiff's statutory claims based on any pre-purchase or

cancellation method violations of the ARL also fail because she has not pled them plausibly,

---

[3] According to a letter dated September 15, 2017, from the author of S.B. 313, Senator Robert M. Hertzberg, "[t]he word 'exclusively' in Section 17602(c) is intended to clarify that any and all steps must be completed exclusively online, and that it would be unlawful for a business to utilize an online cancellation process that is initiated online and that requires any additional offline steps, such as directing the consumer to make a telephone call or directing the consumer to print and mail a cancellation form by postal mail."  *See* S. Daily Journal, 2017-2018 Reg. Sess., at 2971 (Cal. Sept. 15, 2017), *available at* https://leginfo.legislature.ca.gov/faces/pubSenDailyJrn2.xhtml?type=doc&sessionyear=20172 018&pagenum=2943&sessionnum=0..

much less with the particularity required by Federal Rule 9(b)."  MTD at 17.  That is a non-starter.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Importantly, the Ninth Circuit holds that Rule 9(b) "does not require absolute particularity or a recital of the evidence."  *United States v. United Healthcare Ins. Co.,* 848 F.3d 1161, 1180 (9th Cir. 2016).  The "most basic consideration" is whether the allegations "give adequate notice to an adverse party and enable that party to prepare a responsive pleading."  *Id.*  Generally, such notice is provided by alleging the "who, what, when, where, and how" of the circumstances constituting fraud.  *Holley v. Gilead Scis., Inc.*, 2019 WL 5867433, at *2 (N.D. Cal. Oct. 16, 2019).  The FAC meets that standard:

> **Who:** The FAC specifically identifies Defendant as the entity that failed to disclose material automatic renewal offer terms despite being under a legal duty to do so.  FAC ¶ 26 ("Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the NYT Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies.  <u>These misrepresentations and omissions were made by Defendant</u> with knowledge of their falsehood.") (emphasis added).

> **What:** The FAC identifies and describes the NYT Subscriptions.  *See, e.g.*, *id.* ¶¶ 1, 6, 30.  Plaintiff alleges that "Defendant made <u>misrepresentations and omissions</u> to consumers before and after enrollment in Defendant's NYT Subscriptions <u>regarding the terms of payment for and cancellation of</u> [her NYT Subscription].  Such representations and omissions … constitute false and deceptive advertisements."  *Id.* ¶ 98; *see also id.* ¶ 126 ("Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the NYT Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood."); *id.* ¶ 118.

> **When:** Plaintiff alleges that she purchased Defendant's NYT Subscription within the relevant class period, specifically "[i]n or around <u>August 2019</u>[.]"  *Id.* ¶ 5 (emphasis added).  Plaintiff alleges that Defendant's omissions occurred at the

point of sale, "<u>Before Ms. Moses purchased</u> her NYT Subscription[,]" *id.* ¶ 45 (emphasis added), and also "<u>after Ms. Moses completed her initial order</u>, [when] Defendant sent Ms. Moses an acknowledgment email[.]" *Id.* ¶ 5 (emphasis added); see also id. ¶ 59 (generally noting that "Defendant's pre- and post-checkout disclosures fail to comply with the ARL"). Moreover, the FAC contains a chart following chart detailing each and every date on which Plaintiff was charged by Defendant in connection with her NYT Subscription, and in what amount she was charged on each occasion. *Id.* ¶ 50. These allegations are more than sufficient to put Defendant on notice of when the fraud took place.

**Where:** Plaintiff alleges that she is a California citizen and purchased her NYT Subscription "<u>from Defendant's website while in California.</u>" *Id.* ¶ 5. Plaintiff alleges that Defendant's material omissions were <u>on Defendant's website</u>, specifically at the point of sale <u>on the Checkout Page</u>, a "final webpage … where prospective subscribers are invited to complete their purchase[,]" *id.* ¶ 32, and also <u>in the acknowledgment email</u>, which is a standardized "email follow-up" that Defendant sent to Plaintiff and each member of the Class after they enrolled in one of Defendant's NYT Subscription plans. *Id.* ¶ 41.

**How:** The FAC alleges that Defendant's conduct was false and misleading because Defendant "failed to disclose material facts about the NYT Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies." *Id.*

## B.   Plaintiff Adequately Alleges Intent, Omissions, And Knowledge

Even though Defendant addresses each of Plaintiff's claims under the CLRA, FAL, and UCL individually, because its arguments for all are largely identical, Plaintiff will now address them together.

Defendant argues that Plaintiff's CLRA claims fail because "Plaintiff does not describe how" Defendant engaged in the alleged violations and because "Plaintiff makes no attempt to allege or explain what, specifically, [Defendant] 'falsely represented' to her or why any such statement was false when made." MTD at 17. That is meritless. In this case, most of Plaintiff's statutory and common law claims are premised on Defendant's failure to disclose material information regarding the terms of the NYT Subscriptions from its Checkout Page prior to purchase, as well as from its post-checkout acknowledgment email, despite obligations under

being under a legal duty to do so.  *See, e.g.*, FAC ¶¶ 52, 97, 100; *see also Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731 (2018), *review denied* (Oct. 17, 2018) ("[O]ur Legislature's decision to prohibit the use of false and misleading former price information shows that it has deemed such misrepresentations to be material.").  In other words, Plaintiff's claims are largely based on <u>*omissions*</u>, not affirmative misrepresentations, and thus need not be pled with the same degree of specificity that is required under Rule 9(b).  *See Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (time, place, and content of omissions need not be pled with same specificity as affirmative misrepresentations).  General allegations as to Defendant's omissions are sufficient.  Nevertheless, as established above, Plaintiff adequately pleads injury resulting from Defendant's material omissions.  Specifically, Plaintiff alleges that Defendant made material <u>omissions</u> before and after checkout in order to affect such purpose; that Defendant acted at all times with the <u>intent</u> to mislead Plaintiff and the Class and to induce their purchases of the NYT Subscriptions; and that Defendant acted at all times with the <u>knowledge</u> of the facts that make its conduct misleading.

   **Omissions.**  Defendant seems to suggest that Plaintiff's statutory claims fail because, in Defendant's view, she has not identified specific misrepresentations as the basis for those claims.  However, Plaintiff need not point to any affirmative misrepresentation to maintain her claims under California consumer protection statutes.  "Fraudulent omissions are actionable under both" the UCL and the CLRA.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342 (2012)); *see also Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 806-07 (2006) (applying UCL) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."); *Wilson v. Hewlett-Packard Co.*, 668 F.3d

1136, 1141-42 (9th Cir. 2012) (acknowledging that CLRA claims may be based on fraudulent omissions if the omissions are contrary to representations made by the defendant, or are omissions of fact that the defendant was obliged to disclose) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)).

Here, Plaintiff alleges that Defendant omitted material information regarding how to cancel the NYT Subscriptions and other legally mandated disclosures from its Checkout Page and its post-checkout acknowledgment email, despite being under a legal duty to do so. *See, e.g.*, FAC ¶¶ 52, 97, 100. The allegations of the FAC identify several specific omissions of fact and also reflect both a duty to disclose and the materiality of Defendant's omissions. For instance, Plaintiff alleges that Defendant failed to disclose its full cancellation policy on the Checkout Page and then again in the acknowledgment email. *See, e.g.*, FAC ¶ 33. Because the ARL mandates disclosure of these terms, there is no question that Defendant was under a legal duty to disclose the missing terms. Moreover, because the disclosures were mandated by law, the ARL also establishes their materiality. And in any case, materiality is a question of fact not appropriate for resolution on the pleadings. *See, e.g.*, *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020).

***Intent.*** Plaintiff alleges that, in failing to disclose such information regarding the NYT Subscriptions, Defendant acted with intent to conceal material terms of the agreement. Specifically, Defendant uses dark patterns with respect to user experience (UX), deliberately complicating the cancellation process such that a consumer is likely to struggle to affect timely cancellation before the next renewal term, resulting in continued automatic renewals (i.e., economic loss to the consumer) and, correspondingly, increased revenues for Defendant:

> One consumer complaint indicates that Defendant has been "using dark patterns to prevent user unsubscription from [its] site" by

16

> adopting "complex procedures to increase the friction in the
> subscription cancellation process and keep the user subscriber."
> For instance, although one page of the NYT Website states that
> consumers can cancel their NYT Subscription via chat, "[t]he chat
> facility is only available in-office hours (07:00 AM-10:00 PM) on
> weekdays and 07:00 AM-03:00 PM on weekends[, and] most of
> the time and days, their chat facility is unavailable due to excessive
> chat from customers[.]"  For instance, although one page of the
> NYT Website states that consumers can cancel their NYT
> Subscription via chat, "[t]he chat facility is only available in-office
> hours (07:00 AM-10:00 PM) on weekdays and 07:00 AM-03:00
> PM on weekends[, and] most of the time and days, their chat
> facility is unavailable due to excessive chat from customers[.]"

FAC ¶ 16.

   ***Knowledge.***  The FAC provides numerous examples of online consumer complaints,

which support an inference that Defendant had knowledge.  This is critical because "customer

complaints may support knowledge when they are submitted to a forum the defendant is likely to

view[.]"  *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016)

(citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-48 (9th Cir. 2012)).  An "'unusually

high level' of pre-sale complaints [is not required] to survive a motion to dismiss."  *Parrish v.*

*Volkswagen Grp. of Am., Inc.*, 2020 WL 4529615, at *4 (C.D. Cal. May 7, 2020).  Indeed, two or

three pre-sale complaints may be sufficient.  *See, e.g.*, *Borkman v. BMW of N. Am., LLC*, 2017

WL 4082420, at *5 (C.D. Cal. Aug. 28, 2017) (finding allegations sufficient where "three

complaints pre-date plaintiff's purchase of her vehicle"); *Myers*, 2016 WL 5897740, at *4

(finding allegations sufficient where "two of these complaints are dated prior to the time Meyers

must have purchased her car").  Here, the FAC provides many more than merely three

complaints.  *See* FAC ¶¶ 17-19 (showing screenshots of 14 online consumer complaints posted

to the Better Business Bureau website, Yelp.com, and CustomerServiceScoreboard.com during

the class period).  Therefore, Plaintiff alleges Defendant's omissions, intent, and knowledge with

sufficient particularity.

### C.      Plaintiff Properly Alleges Consumer Protection Claims Based On The Material Omissions In Defendant's Acknowledgment Email

Defendant argues that Plaintiff's statutory claims under the FAL and CLRA fail to the extent they are based solely on the *post-checkout* omissions of Defendant's acknowledgment. According to Defendant, this is because "[p]ost-purchase acts cannot serve as the basis for" either a CLRA or FAL claim, and the acknowledgment is a post-purchase act.  MTD.  That is wrong.  The ARL defines an "automatic renewal" program as "a plan or arrangement in which a paid subscription is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a).  Placed into context, this definition suggests that when one renewal term comes to a close, the commercial relationship between the business and the consumer ends, and when the subscription is then automatically renewed and funds are withdrawn from her Payment Method for the following term, a new commercial relationship is formed.  In other words, each renewal is itself a new sale.  Accordingly, the acknowledgment email required by the ARL is not an exclusively "post-sale" communication; it is necessarily also a *pre*-sale communication in the context of automatic renewal programs such as the NYT Subscriptions.  Plaintiff therefore states claims under the FAL and CLRA based on Defendant's pre- and post-checkout material omissions to Plaintiff and the Class.  Plaintiff's UCL claims based on these omissions also survive to the extent they are predicated on Defendant's FAL and CLRA violations.

## III.     DEFENDANT'S STANDING ARGUMENTS LACK MERIT

### A.      Plaintiff Has Suffered Economic Injury

Defendant argues that Plaintiff lacks statutory standing to assert consumer protection claims under California law because she "has not adequately pled and cannot plead economic injury *solely* from the allegedly deficient post-purchase acknowledgment[.]"  MTD at 23.  That is

18

wrong. As California courts have acknowledged, a fraudulent omission can support statutory

standing "if it was a substantial factor in inducing the plaintiff to act [or refrain from acting,]"

but "it need not be the *sole* cause of damage." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814

(1971). Thus, it is of no moment that the FAC indicates that Plaintiff's economic injury has

more than one source. Indeed, in this case, Plaintiff's pecuniary loss was caused by three

different violations of the ARL, including those based on: (1) the omissions relating to

Defendant's pre-checkout disclosures; (2) the omissions relating to Defendant's post-checkout

acknowledgment email, and (3) Defendant's non-compliant cancellation mechanism. *See*, *e.g.*,

FAC ¶ 34. As long as each of the practices was indeed a substantial factor in causing Plaintiff's

economic loss (and based on her allegations, it is clear they were), she has statutory standing to

assert her claims under the UCL, CLRA, and FAL on the basis of each asserted violation.[4]

## B.   Plaintiff Sufficiently Alleges Causation

Defendant contends that Plaintiff fails to plead statutory standing because she "alleges

that all of her monetary injuries are causally related to the *pre-purchase* disclosures by NYT, not

those in the acknowledgement" and that "[n]owhere does Plaintiff allege that she would not have

purchased her automatically renewing subscription to *The New York Times* had she known she

was going to receive a deficient acknowledgement email after her purchase." MTD at 23. That

is incorrect.

---

[4] Defendant also asserts in that Plaintiff has, at most, identified "technical, non-injurious
statutory violations" of the ARL. MTD at 3. That is a non-starter. *See*, *e.g*, *Lopez v. Stages of
Beauty, LLC*, 307 F. Supp. 3d 1058, 1070 (S.D. Cal. 2018) (rejecting defendant's argument that
plaintiff "only alleged a technical violation of a statute" where "Plaintiff [] lost money due to
Defendant's automatic renewal policy that violates the ARL"); *id.* ("[Plaintiff] therefore meets
the standing requirements of the UCL and Article III.").

Defendant neglects to cite any case law in support of its contention that Plaintiff's allegations evince a lack of statutory standing. *Mayron v. Google LLC*, 54 Cal. App. 5th 566 (2020), *reh'g denied* (Oct. 2, 2020) – a recent decision of the California Court of Appeal – is instructive on the issue. As in this case, the plaintiff in *Mayron* asserted a predicate claim under the "unlawful" prong of the UCL based on Defendant's alleged ARL violations. *Id.* On appeal, the panel for the Sixth Appellate District held that the plaintiff "ha[d] not properly alleged causation of an economic loss as required to bring a claim under [the UCL and that t]he trial court therefore correctly sustained Google's demurrer to the complaint." *Id.* In so holding, the court reasoned that, "[t]o establish standing, plaintiff would also need to allege that he ordered increased Google Drive storage but would not have done so had the disclosures been provided, or that he would have cancelled the additional storage had it been easier to do so. But plaintiff makes no such allegation[.] … The complaint therefore does not show a causal link between plaintiff's payments and Google's alleged violations." *Id.* (emphasis added); *see also Lewis v. Rodan & Fields, LLC*, 2019 WL 978768, at *3 (N.D. Cal. Feb. 28, 2019) ("[T]he court finds that plaintiffs have adequately alleged an injury because they allege that they would not have bought the product if the material had not been omitted."); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661, at *7 (C.D. Cal. Oct. 9, 2019) ("Plaintiffs sufficiently allege they suffered damage" because "they paid more than what they would have been willing to pay if the Products were labeled accurately.").

Applying *Mayron*, it is clear that Plaintiff's allegations are sufficient at this stage. *See* FAC ¶ 83 ("Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their NYT Subscriptions or would have cancelled their NYT Subscriptions prior to the renewal of the subscriptions, so as not to incur

additional fees.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices."); *id.* at ¶ 5 ("Had Defendant complied with the ARL, Ms. Moses would have been able to read and review the pertinent automatic renewal terms prior to purchase, and she would have not subscribed to The New York Times or she would have cancelled her NYT Subscription earlier[.]  …  As a direct result of Defendant's violations of the ARL, Ms. Moses suffered, and continues to suffer, economic injury."); *id.* at ¶ 108 ("Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase NYT Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.  Had Defendant fully and clearly disclosed the terms associated with the NYT Subscriptions, Plaintiff and the Class would have not subscribed to *The New York Times* or they would have cancelled their NYT Subscriptions earlier[.]").

In sum, Plaintiff has standing to assert her claims under California's consumer protections statutes.[5]  *See Browning v. Unilever United States, Inc.*, 2017 WL 7660643, at *3 (C.D. Cal. Apr. 26, 2017) (denying motion to dismiss based on material omission because "Plaintiffs have alleged that they purchased the Product at specific locations and that if the alleged omission had been on the Products' labels they wouldn't have purchased them"); *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. June 12, 2009) (denying motion to dismiss based on omission where "Plaintiff allege[d] that if Defendant had disclosed the omitted information, then Plaintiff would have been aware of the alleged defect and would have behaved differently.").

---

[5] For the same reasons (i.e., because Defendant's material omissions caused Plaintiff economic injury), Plaintiff has standing to assert California consumer protection claims based on Defendant's pre- and post-checkout material omissions alike.

## IV.    PLAINTIFF STATES A CLAIM FOR CONVERSION

Defendant argues that "[there is no 'conversion' claim because Plaintiff's FAC confirms she consented to have her subscription fees deducted from her payment account."  MTD at 3. That is incorrect.  Here, Plaintiff expressly alleges that "Defendant uniformly fails to obtain any form of consent."  FAC ¶ 33; *id.* ¶ 23 ("[A]t no point during the checkout process does Defendant require consumers to read or affirmatively agree to any terms of service associated with the NYT Subscription.").  Furthermore, even if any of Plaintiff's acts could be construed as consent, she expressly withdrew any apparent consent that might have existed in May 2020 when Plaintiff emailed Defendant attempting to cancel her NYT Subscription.  Thus, at the very least, the automatic renewal fee Plaintiff incurred one week after attempting to cancel her NYT Subscription supports Plaintiff's claim for conversion here.

## V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY PLED IN THE ALTERNATIVE UNDER CALIFORNIA LAW

Defendant makes two arguments for dismissal of Plaintiff's unjust enrichment claim under California law.  Neither argument is persuasive.

First, Defendant argues that the unjust enrichment claim must be dismissed because Plaintiff's "only basis for this claim is 'Defendant's failure to disclose material terms of the purchase agreement' which 'induced Plaintiff and the Class to purchase the NYT Subscriptions.'"  MTD at 25 (citing FAC ¶ 114).  According to Defendant, the claim fails as a matter of law "because none of NYT's pre-purchase disclosures were deficient," and therefore "NYT cannot have been unjustly enriched by them."  *Id.*  That argument fails for all of the reasons described above.

Second, Defendant argues that that Plaintiff's unjust enrichment claim should be dismissed "because under California law, there is no such thing as a stand-alone cause of action

for unjust enrichment." MTD at 25. But that argument fails because it ignores decisive case law to the contrary. As the Ninth Circuit has recognized, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted).

In *Astiana*, the Ninth Circuit overturned the district court's dismissal of an unjust enrichment claim where the plaintiff alleged "that she was entitled to relief under a 'quasi-contract' cause of action because [the defendant] had 'enticed' plaintiffs to purchase [its] products through 'false and misleading' labeling, and that [the defendant] was 'unjustly enriched' as a result." 783 F.3d at 762. In doing so, the Ninth Circuit "clarif[ied] a long-standing inconsistency in California law" as to whether a claim for unjust enrichment under California law could be sustained as a standalone cause of action in federal court. *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1057 (N.D. Cal. 2018). There is now no question that it can. *See id.* ("The Ninth Circuit … now allow[s] an independent claim for unjust enrichment to proceed."); *see also Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("But since then, the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute. In light of this clarification, we reverse the district court's dismissal."); *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 848-49 (N.D. Cal. 2019); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018); *Jordan v. Wonderful Citrus Packing LLC*, 2018 WL 4350080, at *4 (E.D. Cal. Sept. 10, 2018).

Defendant's "reliance on several opinions before the Ninth Circuit's holdings in *Astiana* is not persuasive, as these cases did not have the benefit of the Ninth Circuit's interpretation of

California law on this subject." *Williams*, 384 F. Supp. 3d at 1057. Defendant's position is also

contrary Federal Rule of Civil Procedure 8(d), which permits pleading in the alternative,

regardless of consistency. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of

a claim or defense alternatively or hypothetically, either in a single count or defense or in

separate ones."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses

as it has, regardless of consistency."); *see also* Fed. R. Civ. P. 8(a)(3) ("[A] demand for the relief

sought, which may include relief in the alternative or different types of relief."). The Ninth

Circuit foreclosed Defendant's argument here by holding that it is reversible error to dismiss an

unjust enrichment claim for being duplicative of other legal claims because Rule 8 permits

pleading in the alternative. *Astiana*, 783 F.3d at 762-63 ("To the extent the district court

concluded that the [unjust enrichment] cause of action was nonsensical because it was

duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal.") (citing

Fed. R. Civ. P. 8(d)(2)); *see also Kutza,* 2018 WL 5886611, at *4 ("The fact that [an unjust

enrichment claim] may be inconsistent with [another] claim, does not preclude Kutza from

pleading [both claims] in the alternative.") (internal citations omitted); *In re Safeway Tuna

Cases*, 2016 WL 3743364, at *2 ("Plaintiffs are permitted to plead unjust enrichment, even if it

were duplicative of their other claims, at the pleading stage.").

## VI. PLAINTIFF STATES CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION

Defendant again argues that "Plaintiff has not identified any statement NYT made that

was false." MTD at 27. That is incorrect. Defendant's arguments here ignore much of the

subject matter of the FAC. For instance, as Defendant notes, the Checkout Page contains a

"description of the cancellation policy that applies to the offer" in compliance with Section

17602(a)(1) of the ARL merely by stating that "You [the subscriber] can cancel at anytime."

MTD at 10; FAC ¶ 32. This is an affirmative representation of fact, and a specific one at that.

However, as alleged in the FAC, Plaintiff's subsequent experiences as an NYT Subscriber reveal

that consumers cannot, in fact, cancel their subscriptions at "anytime:"

> On or around May 18, 2020, Ms. Moses attempted to cancel her
> NYT Subscription via an email addressed to nytimes-
> paypal@nytimes.com (the "NYT-PayPal email address"). …
> However, on June 16, 2020, … Ms. Moses learned that,
> notwithstanding her attempt to cancel on May 18, 2020, Defendant
> had continued to automatically renew her NYT Subscription on a
> recurring, monthly basis and, without Ms. Moses's authorization,
> charged Ms. Moses's Payment Method another monthly renewal
> fee for $4.00 on May 25, 2020.

FAC ¶¶ 54-55. Plaintiff is not alone in making these allegations, as evidenced by complaints

posted online by other class members. *See id.* ¶¶ 17-19. As such, the factual question as to

whether consumers can truly cancel their NYT Subscriptions at "anytime" is a question of fact

that cannot be resolved prior to discovery. If Defendant's representation had been true, then

Plaintiff would have successfully cancelled her NYT Subscription on May 18, 2020, and would

not have been automatically charged for the next month on May 25, 2020.

Finally, Defendant once again argues that since "Plaintiff has not identified what *specific*

omissions NYT allegedly made," which "dooms her claims at the outset." MTD at 27. But as

already established throughout this brief, Plaintiff *has* alleged specific omissions, which must be

accepted as true at this stage. *See supra.* For instance, Plaintiff alleges that Defendant failed to

disclose its cancellation policy on the Checkout Page and then again in the acknowledgment

email as required by the ARL. *See, e.g.*, FAC ¶ 33. Defendant's non-disclosure of these terms is

a material omission sufficient to sustain her fraud claim at this stage.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the

Defendant's motion to dismiss in its entirety.  Alternatively, if the motion is granted in any respect, Plaintiff should be given leave to amend.  *See Ronzani v. Sanofi S.A*, 899 F.2d 195, 198 (2d Cir. 1990) ("Fed. R. Civ. P. 15(a) requires that leave to amend shall be freely given when justice so requires.").


Dated:  October 29, 2020                          Respectfully submitted,

                                                    **BURSOR & FISHER, P.A.**

                                                    By:      */s/ Neal J. Deckant*
                                                         Neal J. Deckant

                                                   Neal J. Deckant
                                                   Frederick J. Klorczyk III
                                                   1990 North California Boulevard, Suite 940
                                                   Walnut Creek, CA  94596
                                                   Telephone:  (925) 300-4455
                                                   Facsimile:  (925) 407-2700
                                                   Email:  ndeckant@bursor.com
                                                                   fklorczyk@bursor.com

                                                   *Attorneys for Plaintiff*