**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIBEL MOSES, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>    v.<br><br>THE NEW YORK TIMES COMPANY, d/b/a *The New York Times*.<br><br>                        Defendant. | Civil Action No.: 1:20-cv-04658-RA<br><br>Hon. Judge Ronnie Abrams |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**<u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Dated:  March 30, 2021

**BURSOR & FISHER, P.A.**

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**

Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ndeckant@bursor.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

    A.    California's Automatic Renewal Law ................................................. 2

    B.    Plaintiff's Allegations ........................................................................ 3

    C.    The Litigation History And Settlement Discussions .......................... 3

TERMS OF THE SETTLEMENT ....................................................................................... 5

    A.    Class Definition ................................................................................ 5

    B.    Monetary Relief ................................................................................ 5

    C.    Injunctive Relief ............................................................................... 6

    D.    Release ............................................................................................. 7

    E.    Notice And Administration Expenses ................................................ 7

    F.    Incentive Award ............................................................................... 7

    G.    Attorneys' Fees And Expenses ......................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
APPROPRIATE ........................................................................................................ 8

    A.    The *Grinnell* Factors ...................................................................... 10

        1.    Litigation Through Trial Would Be Complex, Costly, And
Long (*Grinnell* Factor 1) .................................................... 10

        2.    The Reaction Of The Class (*Grinnell* Factor 2) .................. 12

        3.    Discovery Has Advanced Far Enough To Allow The Parties
To Responsibly Resolve The Case (*Grinnell* Factor 3) ........ 12

        4.    Plaintiff Would Face Real Risks If The Case Proceeded
(*Grinnell* Factors 4 And 5) .................................................. 13

        5.    Establishing A Class And Maintaining It Through Trial
Would Not Be Simple (*Grinnell* Factor 6) .......................... 13

        6.    Defendant's Ability To Withstand A Greater Judgment
(*Grinnell* Factor 7) ............................................................. 14

        7.    The Settlement Amount Reasonable In Light Of The Possible
Recovery And The Attendant Risks Of Litigation (*Grinnell*
Factors 8 And 9) ................................................................... 14

i

| | | |
|---|---|---|
| B. | The Rule 23(e)(2) Factors ........................................................ 15 | |
| | 1. | The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A) ........................... 15 |
| | 2. | The Settlement Was Negotiated At Arm's Length .................................. 16 |
| | 3. | The Settlement Provides Adequate Relief To The Class ......................... 16 |
| | 4. | The Settlement Treats All Class Members Equally .................................. 18 |
| II. | CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ........................................................................ 18 | |
| | A. | Numerosity ......................................................................... 20 |
| | B. | Commonality ....................................................................... 20 |
| | C. | Typicality .......................................................................... 21 |
| | D. | Adequacy Of The Named Plaintiff ........................................... 22 |
| | E. | The Proposed Settlement Class Satisfies Requirements Of Rule 23(b)(3) ........................................................................ 23 |
| | | 1. Common Questions Predominate .............................................. 23 |
| | | 2. A Class Action Is A Superior Mechanism ................................... 24 |
| III. | PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ............................................................................ 25 | |
| IV. | THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .................................. 26 | |
| | A. | The Content Of The Proposed Class Notice Complies With Rule 23(c)(2) ......................................................................... 26 |
| | B. | Distribution Of The Class Notice Will Comply With Rule 23(c)(2) .................. 27 |
| CONCLUSION ................................................................................ 27 | | |

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................................ 19, 24

*Brown v. Title Ticor Ins. Co.*,
  982 F.2d 386 (9th Cir. 1992) ...................................................................................................... 23

*Cassesse v. Washington Mutual, Inc.*,
  255 F.R.D. 89 (E.D.N.Y. 2008) ................................................................................................ 24

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................................................. 9, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ........................................................................................................ 20

*County of Suffolk v. Long Island Lighting Co.*,
  710 F. Supp. 1422 (E.D.N.Y. 1989) .......................................................................................... 19

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ...................................................................................................... 22

*Dziennik v. Sealift, Inc.*,
  2007 WL 1580080 (E.D.N.Y. May 29, 2007) ........................................................................... 22

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................................ 22, 23

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ..................................................................................... Passim

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................................................. 15

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ...................................................................................................... 24

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 25, 26

*Hayes v. Harmony Gold Min. Co.*,
   2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ............................................................... 17

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 10, 12, 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................. 9

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...................................................... 15, 16, 17

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................ 26, 27

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................... 15, 16, 17, 18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ........................................................... 10

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) .............................................................................. 22

*In re Traffic Executive Ass'n*,
   627 F.2d 631 (2d Cir. 1980) ...................................................................................... 8

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) .................................................................................... 24

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .......................................................... 12

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) .................................................................................... 18

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ............................................................................... 9

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ............................................................................. 20

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .......................................................... 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................ 21

*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998)..................................................... 22, 23

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) .................................................................. 8

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005)........................................................... 24

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................................... 18

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................ 23

*Pichardo v. Carmine's Broadway Feast Inc.*,
   2016 WL 5338551 (S.D.N.Y. Sept. 26, 2016) .................................. 21, 24

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983) ................................................................ 20

*Reyes v. Altamarea Grp.*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)....................................... 18

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................ 21

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ................................................................ 24

*Savino v. Computer Credit, Inc.*,
   173 F.R.D. 346 (E.D.N.Y. 1997)........................................................... 20

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ........................................................ 10

*Torres v. Gristede's Oper. Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................ 12

*Toure v. Cent. Parking Sys.*,
   2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ....................................... 22

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ............................................................... 20, 21

*Trinidad v. Breakaway Courier Sys., Inc.*,
  2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ...................................................... 21

*Wagner v. NutraSweet Co.*,
  95 F.3d 527 (7th Cir. 1996) .................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................ 20, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................... 8

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ....................................................... 17

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 8

**STATUTES**

28 U.S.C. § 1715 ............................................................................... 27

Cal. Bus. & Prof. Code § 17200 ................................................................. 2

Cal. Bus. & Prof. Code § 17500 ................................................................. 3

Cal. Bus. & Prof. Code § 17600 ................................................................. 1

Cal. Bus. & Prof. Code § 17602(a) ............................................................... 6

Cal. Bus. & Prof. Code § 17602(c) ............................................................... 7

Cal. Civ. Code § 1750 .......................................................................... 3

**RULES**

Fed. R. Civ. P. 8 ............................................................................. 11

Fed. R. Civ. P. 12(b)(6) ...................................................................... 11

Fed. R. Civ. P. 16 ............................................................................ 4

Fed. R. Civ. P. 23 ......................................................................... 25, 27

Fed. R. Civ. P. 23(a) ................................................................................... 19, 20, 24

Fed. R. Civ. P. 23(b) .............................................................................. 2, 19, 23, 24

Fed. R. Civ. P. 23(c) ......................................................................................... 26, 27

Fed. R. Civ. P. 23(e) ........................................................................................... 9, 10

Fed. R. Civ. P. 26(f) ............................................................................................. 4, 13

Fed. R. Civ. P. 23(g) ................................................................................................. 25

Fed. R. Civ. P. 26 ....................................................................................................... 5

**OTHER AUTHORITIES**

Newberg on Class Actions (4th ed. 2002) ................................................... 8, 9, 18, 19

**INTRODUCTION**

In this putative class action, Plaintiff Maribel Moses alleges that Defendant The New York Times Company ("Defendant" or "NYT") has failed to comply with California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., which imposes detailed information, notice, and consent requirements on businesses that make automatic renewal or continuous service offers to California consumers.  Since filing the Complaint, the Parties have engaged in informal discovery, which shows Defendant collected renewal fees from approximately 855,000 subscribers during the Class Period that allegedly were not in compliance with the ARL.  At a mediation in November 2020, the Parties reached a class settlement agreement that, if approved, will deliver immediate relief to putative class members and will thereby resolve Plaintiff's and the putative class's claims against Defendant.  The Class Action Settlement Agreement and Release (the "Settlement") is submitted herewith as **Exhibit 1** to the contemporaneously filed Declaration of Frederick J. Klorczyk III (the "Klorczyk Decl.").

The Settlement consists of cash and non-cash benefits and has a total value of approximately $5,563,000.  Under the terms of the Settlement, NYT will automatically provide over $3,900,000 worth of access codes (the "Automatic Access Codes") for NYT offers to Class Members who do nothing during the claims process, and will also establish a non-reversionary $1,650,000 cash Settlement Fund which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.

Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement falls within the range of possible approval.  For the reasons set forth below, the settlement is fair and reasonable, and warrants preliminary approval.

1

Defendant does not oppose this motion. Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A., as Class Counsel; (4) appoint Plaintiff Maribel Moses as the Class Representative for the Settlement Class; (5) approve the Notice Plan described in the Settlement and direct its distribution; and (6) schedule a hearing for final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      California's Automatic Renewal Law

On December 1, 2010, the California Legislature enacted the Automatic Renewal Law ("ARL") under California Senate Bill 340 with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." *See* First Amended Complaint (ECF No. 22) ("FAC") ¶ 21 (citing statement of legislative intent). In 2018, the California Legislature passed California's Senate Bill 313, which amended the ARL to increase consumer protections for orders that contain free trial and promotional pricing, and subscription agreements entered into online. *See id.* ¶ 22. Thus, the ARL's core requirements are that: (1) businesses must clearly and conspicuously disclose automatic renewal terms of any offer, as defined by the statute; (2) they must obtain a consumer's affirmative consent, and (3) they must provide consumers with an acknowledgment containing the terms of the automatically renewing offer and cancellation information. *See id.* ¶ 23. Private citizens in California may enforce ARL violations as predicate claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, which prohibits "any unlawful[] … business act or practice[.]" *See id.* ¶ 72. Additionally, ARL violations may constitute acts of false advertising in violation of California's False Advertising

Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq. See id*. ¶¶ 93-97.  Finally, ARL

violations may also constitute violations under California's Consumers Legal Remedies Act

("CLRA"), Cal. Civ. Code §§ 1750, *et seq. See id*. ¶ 102-05.

     **B.**     **Plaintiff's Allegations**

     Defendant is an international media company that, among other things, publishes and

distributes to California consumers *The New York Times*, including both print and online

editions, and provides automatically renewing subscription plans for various products and

services under the NYT brand name (the "NYT Subscriptions").  Plaintiff alleges that Defendant

automatically renewed Class Members' NYT subscriptions in violation of the ARL.  FAC ¶ 1.

Specifically, Plaintiff alleges that when consumers sign up for an NYT Subscription through the

NYT Website or App, Defendant actually enrolls consumers in an automatically renewing

subscription that results in monthly or annual charges to the consumer's payment method.  *Id.*

Plaintiff further alleges that Defendant engages in this autorenewal scheme without first

providing California consumers the requisite disclosures and authorizations required under the

ARL.  *Id.*  Furthermore, Plaintiff alleges that because every violation of the ARL constitutes an

"unlawful" practice under the UCL.  *Id*. ¶¶ 72-74.  And because Defendant's ARL violations

involve misrepresentations and/or omissions of material fact, Plaintiff contends Defendant also

violated the FAL and CLRA.  *Id.* ¶¶ 94-95, 104-05.  On that basis, Plaintiff also brought

common law claims against Defendant for conversion, unjust enrichment, negligent

misrepresentation, and fraud.  *Id.* ¶ 4; *see also id.* ¶¶ 87, 111, 115, 123.

     **C.**     **The Litigation History, Defendant's Motion to Dismiss And Settlement Discussions**

     On June 15, 2019, Plaintiff, through counsel, sent a letter to Defendant alleging that it

violated the CLRA by charging her renewal fees in connection with *New York Times*'s

newspaper subscription offerings.  *See* Klorczyk Decl. ¶ 4.  On June 17, 2020, Plaintiff filed her

class action lawsuit in the United States District Court for the Southern District of New York,

alleging that Defendant's renewal charge was in violation of the ARL, thus giving rise to

predicate claims under California's UCL, FAL, CLRA, and other common law claims.  *Id.* ¶ 5;

ECF Nos. 1, 22.

On August 17, 2020, Defendant filed a motion to dismiss under Rule 12(b)(6), arguing,

that Plaintiff failed to state a claim upon which relief could be granted.  ECF Nos. 16, 17.

Defendant argued that its pre-checkout disclosures complied with the ARL because they

provided all of the information required by the ARL, in a clear and conspicuous manner that was

in visual proximity to the request for Plaintiff's consent to the offer, and obtained Plaintiff's

affirmative consent to the subscription terms. On August 31, 2020, Plaintiff filed her First

Amended Class Action Complaint ("FAC") as of right.  ECF No. 22.  In addition to claims for

relief brought by Plaintiff's Complaint, the FAC asserted additional claims for negligent

misrepresentation and fraud.  After Plaintiff filed her FAC, the Parties engaged in a planning

conference pursuant to Fed. R. Civ. P. 26(f) and a scheduling conference pursuant to Fed. R. Civ.

P. 16.  ECF No. 23.  On September 21, 2020, Defendant filed a motion to dismiss Plaintiff's

FAC for failure to state a claim upon which relief could be granted under Rule 12(b)(6).

Defendant again argued that its pre-checkout disclosures complied with the ARL because they

provided all of the information required by the ARL, in a clear and conspicuous manner, and

further argued that Plaintiff's fraud and negligent misrepresentation could not state a claim

because, among other reasons, Plaintiff had not identified a false statement or any specific

omissions from the pre-purchase disclosures, and any omissions in the post-purchase disclosures

could not have influenced Plaintiff's decision to purchase her subscription.  ECF Nos. 28, 29.

Plaintiff filed her opposition brief on October 29, 2020.  ECF No. 32.

From the outset of the case, the Parties engaged in direct communications regarding early resolution as required by Fed. R. Civ. P. 26, which ultimately led to a November 10, 2020 mediation before Jill R. Sperber, Esq., an experienced neutral affiliated with Judicate West.  *See* Klorczyk Decl. ¶¶ 10, 12.  Prior to the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class.  *Id.* ¶ 11.  The mediation was conducted by Zoom, and it lasted approximately nine hours.  *Id.* ¶ 12.  The Parties engaged in good faith negotiations, which at all times were at arms' length, and which culminated in an agreement to settle the case.  *Id*.

## TERMS OF THE SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.    Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as:

> [A]ll Persons who, from June 17, 2016, to and through the Preliminary Approval Date, enrolled in an automatically renewing NYT Subscription directly through NYT using a California billing and/or delivery address, and who were charged and paid an automatic renewal fee(s) in connection with such subscription.

Settlement ¶¶ 1.43, 1.44.

### B.    Monetary Relief

The Settlement consists of cash and non-cash benefits and has a total value of approximately $5,563,000.  NYT will establish a non-reversionary Settlement Fund of $1,650,000 which will be used to pay all approved claims by class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to proposed Class Counsel to the extent awarded by the Court.  *Id*. ¶ 1.45.  NYT will also

automatically provide over $3,900,000 worth of access codes (the "Automatic Access Codes") for NYT offers to Class Members who do nothing during the claims process.  *Id*. ¶¶ 1.46, 2.2. Class members with Active NYT Subscriptions will be entitled to receive either a code for one month of free access to any "NYT Digital Product" subscription program to which the Active Class Member does not currently subscribe, or, at their election, a *pro rata* cash payment from the Settlement Fund.  *Id*. ¶ 2.2(a).  Fully Active Class Members – those class members who are entitled to receive all of NYT's digital offerings – will be entitled to receive access to a one month "NYT Basic Digital Access subscription (NYT's core news subscription), or, at their election, a *pro rata* cash payment from the Settlement Fund.  *Id*. ¶ 2.2(c).  Class members with Inactive NYT Subscriptions will be entitled to receive either access code(s) for a free Basic Digital Access NYT Subscription for one month, or, at their election, a *pro rata* cash payment from the Settlement Fund.  *Id.* ¶ 2.2(b).  Settlement Class Members wishing to receive cash must make an election to receive cash by submitting a valid Claim Form to the Settlement Administrator by the Claims Deadline.  *Id.* ¶ 2.2(e).  Settlement Class Members who do not submit a valid Claim Form electing to receive cash will be automatically provided with codes for one month of free access to the appropriate NYT Subscription, based on whether their NYT Subscription was active or inactive as of the Preliminary Approval Date, issued via email by the Settlement Administrator.  *Id.* ¶ 2.2(d).

    **C.**    **Injunctive Relief**

Defendant has agreed to revise the presentation and wording of the automatic renewal terms in its mobile and desktop platforms and in its direct mail offers to be consistent with the requirements of Cal. Bus. & Prof. Code § 17602(a)(1)-(2), and also to provider subscribers with an acknowledgment that includes the automatic renewal terms, cancellation policy, and

information regarding how to cancel in a manner that is capable of being retained by the consumer, consistent with Cal. Bus. & Prof. Code § 17602(c).  *Id.* ¶ 2.3.

>    **D.**    **Release**

In exchange for the relief described above, Defendant and each of its related and affiliated entities as well as all "Released Parties" as defined at ¶ 1.39 of the Settlement will receive a full release of all claims arising out of or related to or arising from Defendant's automatic renewal and/or continuous service programs in California from June 17, 2016 to the date of entry of judgment.  *See id.* ¶¶ 3.1-3.3 for full release language.

>    **E.**    **Notice And Administration Expenses**

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all other costs of administration of the Settlement.  *See id.* ¶¶ 1.25, 1.27, 1.41, 1.45.

>    **F.**    **Incentive Award**

In recognition for her efforts on behalf of the Settlement Class, NYT has agreed that Plaintiff Moses may receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund, as appropriate compensation for her time and effort serving as Class Representative and as a party to the Action.  NYT will not oppose any request limited to this amount.  *Id.* ¶ 8.3.

>    **G.**    **Attorneys' Fees And Expenses**

NYT has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶ 8.1.  Plaintiff will petition the Court for an award of attorneys' fees, costs, and expenses not to exceed $1,250,000, and Defendant agrees to not object to or otherwise challenge, directly or indirectly, Class Counsel's petition for attorneys' fees, costs, and expenses

if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court in attorneys' fees, costs, and expenses.  *Id.*

## ARGUMENT

### I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is left to the discretion of the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).

Preliminary approval, which is what Plaintiff seeks here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Newberg* § 11.25.  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, *4 (S.D.N.Y. July 27, 2007). This first step in the settlement process allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). Although the Court's present task is to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ.

P. 23(e)(2).  "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which

complement, rather than displace each other."  *In re Payment Card Interchange Fee and

Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019).

A.     **The *Grinnell* Factors**

1.     **Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

avoid significant expense and delay, and instead ensure recovery for the class.  "Most class

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them."  *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.

2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate,

its acceptance and approval are preferable to the continuation of lengthy and expensive litigation

with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389

(S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

As discussed above, the Parties engaged in informal written discovery prior to mediation.

The next steps in the litigation would have been resolution by the Court of NYT's Motion to

Dismiss, as well as the start of discovery, including depositions of the Parties, substantial

electronically stored information discovery, and contested motions for summary judgment and

class certification, which would be at minimum costly and time-consuming for the Parties and

10

the Court and creates risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.

More specifically, Plaintiff is aware that Defendant would continue to assert a number of defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P. 8 and 12(b)(6), including because Defendant provided all of the requisite pre-purchase disclosures under the ARL, presented them in a clear and conspicuous manner as defined under the ARL, and obtained Plaintiff's affirmative consent to the automatically renewing subscription; and any omissions in the post-purchase subscription acknowledgment sent to Plaintiff do not rise to the level of fraud or negligent misrepresentation as alleged.  Defendant would also challenge Plaintiff's standing under Article III of the Constitution as well as pursuant to California's consumer protection statutes, including Plaintiff's ability to show that Defendant's conduct caused Plaintiff economic injury.  Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, including because Defendant would continue to take the position that Plaintiff is not entitled to bring at least some of her claims on a class wide basis, given Defendant's position that Plaintiff agreed to a class action waiver in Defendant's Terms of Service.  Plaintiff and Class Counsel further understand that Defendant would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware of the fact that NYT could appeal the merits of any adverse decision, and in light of the potential damages exposure – which Plaintiff contends is the automatic return of all subscription revenues collected by Defendant during the relevant time period – Defendant would argue for a reduction of damages based on due process concerns.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years earlier

than if the case proceeded to judgment through trial and/or appeals, and provides certainty.

Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the

Settlement.

### 2.    The Reaction Of The Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to

gauge the reaction of the Class at this time.  *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL

5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this

factor is premature.").  Plaintiff is unaware of any opposition to the Settlement.

### 3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of

the case before negotiating."  *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5

(S.D.N.Y. Dec. 21, 2010).  "[T]he pretrial negotiations and discovery must be sufficiently

adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret

out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*,

80 F. Supp. 2d at 176.  As discussed above, the Parties have conducted informal written

discovery related to issues of class certification and summary judgment, including the scope and

size of the class; representative web and mobile pay flow and check out pages, digital

acknowledgment emails, and direct mail reply cards during the relevant showing the content and

presentation of the ARL disclosures over time; and Defendant's current and historical Terms of

Sale and Terms of Service, which recap the ARL terms and other relevant provisions related to

subscriptions.  Klorczyk Decl. ¶ 11.  Class Counsel's experience in similar matters, as well as the

efforts made by counsel on both sides confirms that they are sufficiently well apprised of the

facts of this action, and the strengths and weaknesses of their respective cases, to make an

intelligent analysis of the proposed settlement.  This *Grinnell* factor thus also weighs in favor of preliminary approval.

      **4.**       **Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)**

Although Plaintiff's case is strong, it is not without risk.  Defendant has filed a Motion to Dismiss and has made it clear that it will both move for summary judgment on various issues and vigorously contest the certification of a litigation class.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d. at 177.  In the context of this litigation, not only do Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class, but also further litigation will only delay relief to the Class Members.  The Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion.  These *Grinnel* factors thus favor preliminary approval.

      **5.**       **Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after decision on Defendant's Motion to Dismiss, after discovery is completed, and after exhaustive class certification briefing is filed.  Defendant would argue that individual questions preclude class certification, including because of the existence of a class action waiver for some class members, and also that a class action is not a superior method to resolve Plaintiff's claims.  Should the Court certify the class, Defendant would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional

rounds of briefing.  Risk, expense, and delay permeate such a process.  Since the Settlement eliminates this risk, expense, and delay, this factor weighs in favor of preliminary approval.

### 6. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

While NYT could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank,* 228 F.R.D. at 186.  Thus, at worst, this factor is neutral.

### 7. The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Id.*  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  Per the Second Circuit in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Settlement Class Members who neither submit a valid Claim Form nor opt-out of the settlement will be automatically provided with code(s) for one month of free access to the appropriate NYT Subscription.  Settlement Class Members that submit a valid Claim Form to the Settlement Administrator are eligible to receive a *pro rata* cash payment from the Settlement Fund, which Class Counsel estimates will be $5.00 per Class Member based on expected claims rates.  In addition, Defendant has agreed to injunctive relief and to pay the costs of notice and

administration as well as reasonable attorneys' fees and costs for Class Counsel from the all-in fund established by the Settlement.  Settlement ¶¶ 2.1-2.3.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  Moreover, when a settlement assures immediate payment of substantial amounts to class members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" it is reasonable under this factor.  *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008).  Thus, these *Grinnell* factors weigh in favor of preliminary approval.

### B.      The Rule 23(e)(2) Factors

####      1.      The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019).  Here, "plaintiff's interests are aligned with other class members' interests because [she] suffered the same injuries":  paying a fee to Defendant due to its automatic renewal scheme.  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiff[] ha[s] an interest in vigorously pursuing the claims of the class."  *Id.*  Further, numerous other courts in this Circuit have previously found that Plaintiff's attorneys adequately meet the obligations and responsibilities of Class Counsel.  *See* Klorczyk Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A.; *see also id.* Ex. 3, Preliminary Approval Hearing Transcript in *Russett, et al. v. The Northwestern Mutual Life Ins. Co.*, Case No. 19-cv-07414-KMK (S.D.N.Y.) ("NWM Hearing Tr.") at 21:1-4 ("[Bursor & Fisher, P.A.] has extensive experience in litigating

precisely these types of actions, and that's why they've been appointed in numerous cases to be lead counsel."). This factor thus favors preliminary approval.

### 2.     The Settlement Was Negotiated At Arm's Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds*, 414 F. Supp. 3d at 693. Here, both counsel for Plaintiff and counsel for Defendant are experienced in class action litigation and engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral, Jill Sperber of Judicate West. Accordingly, this Rule 23(e)(2) factor has been met.

### 3.     The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors . . . including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial. *In re Payment Card Interchange*, 330 F.R.D. at 36. As noted above, the Settlement has met each of these *Grinnell* factors. *Supra* §§ I.A(1)-(7). As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds*, 414 F. Supp. 3d at 696, no such agreement exists in this case other than the Settlement.

As to "the effectiveness of any proposed method of distributing relief to the class," "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange*, 330 F.R.D. at 40. Here, under the terms of the Settlement, Settlement Class Members will receive Automatic Access Codes for NYT Subscriptions without having to file a claim or anything else. Settlement ¶ 2.2(a). Alternatively, Settlement Class Members can submit a claim form and, if approved, receive a *pro rata* payment from the Settlement Fund in the form of a check. Settlement ¶ 2.2(a). These class members will have one-hundred and eighty (180) days to cash the check. Settlement ¶ 2.2(d). This plan was proposed by experienced and competent counsel with the assistance of an experienced neutral and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds*, 414 F. Supp. 3d at 695.

As to "the terms of any proposed award of attorney's fees," Plaintiff's counsel will apply for attorneys' fees, costs, and expenses "not to exceed $1,250,000[,]" which constitutes approximately 22.5 percent of the Settlement Value. Settlement ¶ 8.1. This is a reasonable request, as courts in this Circuit routinely approve fee requests for up to one-third of a common fund. *See*, *e.g.*, *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement

fund).  Indeed, as courts in this Circuit have noted, fee requests for up to one-third of common

funds represent what "reasonable, paying client[s] . . . typically pay . . . of their recoveries under

private retainer agreements."  *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug.

16, 2011).

The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C).

### 4.     The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of

the release may affect class members in different ways that bear on the apportionment of relief."

*In re Payment Card Interchange*, 330 F.R.D. at 47.  In addition to providing Automatic Access

Codes to those who do nothing, the Settlement also distributes cash relief on a *pro rata* basis,

which has been found by courts in this Circuit to be equitable.  *Id.*; *see also Meredith Corp. v.

SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan

"appears to treat the class members equitably . . . and has the benefit of simplicity").  Thus, this

Rule 23(e)(2) factor is weighs in favor of approval.

* * *

Because the Settlement is, on its face, "'fair, adequate, and reasonable, and not a product

of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d

Cir. 2000)), the Court should grant preliminary approval.

## II.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiff respectfully requests that the Court conditionally certify the Settlement Class for

purposes of effectuating the settlement.  *See Newberg* § 11.27 ("When the court has not yet

entered a formal order determining that the action may be maintained as a class action, the

parties may stipulate that it be maintained as a class action for the purpose of settlement only.");

*County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).  The Court should determine that the proposed Settlement Class satisfies the requirements of both Rule 23(a) and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Newberg* § 11:27, and provisionally certify the settlement class, appoint Plaintiff's counsel as Class Counsel, and appoint Plaintiff as the Class Representative.  As discussed below, all of the certification requirements for settlement purposes are met and Defendant consents to provisional certification for settlement purposes.

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the proposed Settlement Class includes over 855,000 persons. Klorczyk Decl. ¶ 13. Since there is no question that joinder of all members of the Settlement Class would be impractical, numerosity is satisfied.

### B.    Commonality

Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 164 F.3d 81 (2d Cir. 1998). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation. Plaintiff alleges that Defendant made identical misrepresentations and omissions regarding the terms of payment for and cancellation of the NYT Subscriptions, and also that it "uniformly fail[ed] to obtain any form of consent … before charging consumers' Payment Methods on a recurring basis." FAC ¶¶ 33, 98, 118, 126. Among others, common questions include: (1) whether NYT failed to disclose the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent

20

to the offer; (2) whether NYT failed to obtain consumers' affirmative consent to the automatic renewal offer terms; and (3) whether NYT failed to provide an acknowledgement, capable of being retained by the consumer, that contained the automatic renewal offer terms and information on how to cancel.  *Id*.  "Courts considering similar claims of unlawful payment policies routinely certify classes based on evidence of a common policy."  *Pichardo v. Carmine's Broadway Feast Inc.*, 2016 WL 5338551, at *3 (S.D.N.Y. Sept. 26, 2016).

### C.     Typicality

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiff alleges that Defendant's practice of charging renewal fees for its NYT Subscriptions to consumers' payment methods without first obtaining their affirmative consent to the transaction – violated the ARL and other California statutes because Defendant failed to fully comply with the ARL for each subscription.  FAC ¶¶ 1-5, 30-43.  It is Plaintiff's contention that Defendant's automatic renewal process is done in the exact same manner and was directed at, or affected, both Plaintiff and the members of the putative class in the same exact way. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied.  *See, e.g.*, Klorczyk Decl.

Ex. 3, NWM Hearing Tr. at 20:12-16 ("Here, I don't think there's any question about typicality. As I said, the claims all involve what Plaintiffs alleged to be the improper charging of fees for payments of premiums made by mail.  So that seems pretty straightforward … therefore, typicality is satisfied."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-406 (S.D.N.Y. 2015) (Briccetti, J.) (same).

### D.      Adequacy Of The Named Plaintiff

"The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  In this case, Plaintiff – like each and every Settlement Class Member – is a purchaser of one of Defendant's NYT Subscriptions who was automatically renewed by Defendant.  FAC ¶¶ 30-43.  Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the damages to which they are entitled.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Klorczyk

Decl. ¶ 17; *see also id.* Ex. 2, Firm Resume of Bursor & Fisher, P.A.  Class Counsel regularly engages in major complex litigation involving consumer products, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country.  *See, e.g.*, *Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008.").  Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting informal discovery, participating in a private mediation and ultimately, negotiating a favorable class action settlement.  Klorczyk Decl. ¶¶ 10-16, 18.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

### E.   The Proposed Settlement Class Satisfies Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently.  *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects class members' due process rights.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).  As shown below, Plaintiff has met the Rule 23(b)(3) requirements.

### 1.   Common Questions Predominate

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the

proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"). Here, Plaintiff's allegations all center around Defendant's "automatic renewal scheme." FAC ¶ 1. "Courts considering similar claims of unlawful payment policies routinely certify classes based on evidence of a common policy." *Pichardo*, 2016 WL 5338551, at *3; *see also Cassese v. Washington Mutual, Inc.*, 255 F.R.D. 89, 98 (E.D.N.Y. 2008) (certifying a class of consumers who "who paid or will be demanded to pay prohibited fees"). Since Plaintiff alleges Defendant engaged in a common course of conduct, predominance is met.

### 2.     A Class Action Is A Superior Mechanism

Rule 23(b)(3)'s superiority requirement examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[1] Here, Plaintiff and the Class Members

---

[1] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored"

have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for Settlement Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## III.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed Class Counsel's:  (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions in general.  *See supra* II.D.  And as a result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief to the Settlement Class Members.  Thus, the Court should appoint Frederick J. Klorczyk III of Bursor & Fisher, P.A. as Class Counsel.

---

and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,140 (2d Cir. 2001) (internal quotation marks omitted).

**IV.     THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**

    **A.     The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)**

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Notice will provide detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and an incentive award for the Named Plaintiff; and (3) detailed information about the Released Claims.  Settlement ¶ 4, Exs. B-E.  In addition, the Notice will provide information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information.  *Id.*  In short, the Notice Plan is intended to fully inform Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules.  Indeed, courts have approved class notices even when they provided only general information about a settlement.  *See, e.g.*, *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

### B.       Distribution Of The Class Notice Will Comply With Rule 23(c)(2)

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and due process.  First, the Parties will provide the Class List identifying individual subscribers to the Settlement Administrator.  Settlement ¶ 4.1(a).  The Settlement Administrator will then send direct notice by email to all Settlement Class Members for whom a valid email address is identified in Defendant's records.  *Id.* ¶ 4.1(b).  The email will contain an electronic link to the online claim form.  *Id.*  Next, in the event that a valid email address is not available, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to all the Settlement Class Members who did not receive an email.  *Id.* ¶¶ 4.1(b)-(c).  Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice," as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id*. ¶¶ 1.24, 1.47, 4.1(e).  Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id*. ¶ 4.1(f).  In sum, the proposed methods for providing notice to the Class comport with both Rule 23 and due process, and should thus be approved.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

Respectfully submitted,

Dated: March 30, 2021
**BURSOR & FISHER, P.A.**

By:      */s/ Frederick J. Klorczyk III*
            Frederick J. Klorczyk III

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail:  fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ndeckant@bursor.com

*Attorneys for Plaintiff*