**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARIBEL MOSES, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>THE NEW YORK TIMES COMPANY, d/b/a *The New York Times,*<br><br>                              Defendant. | Civil Action No.1:20-cv-04658-RA<br><br>Hon. Ronnie Abrams |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**ATTORNEY'S FEES, COSTS, EXPENSES, AND INCENTIVE AWARD**

Dated:  July 1, 2021

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ndeckant@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

    A.    California's Automatic Renewal Law .................................................. 3

    B.    Plaintiff's Allegations ......................................................................... 4

    C.    The Litigation History And Work Performed To Benefit The Class..................... 5

SUMMARY OF THE SETTLEMENT ........................................................................ 8

ARGUMENT ................................................................................................................ 9

I.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
SHOULD BE APPROVED ................................................................................ 9

    A.    The Percentage Method Should Be Used To Calculate Fees ............... 12

    B.    The Reasonableness Of The Requested Fees Is Supported By This
Circuit's Six-Factor *Goldberger* Test ............................................... 14

        1.    Time And Labor Expended By Counsel ................................... 14

        2.    Magnitude And Complexity Of The Litigation ........................ 16

        3.    The Risk Of Litigation .............................................................. 17

        4.    The Quality Of Representation .................................................. 18

        5.    The Requested Fee In Relation To The Settlement ................... 20

        6.    Public Policy Considerations .................................................... 20

    C.    The Requested Attorneys' Fees Are Also Reasonable Under A
Lodestar Cross-Check ....................................................................... 22

II.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFF'S
ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE
APPROVED ...................................................................................................... 24

CONCLUSION............................................................................................................ 25

i

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008) ............................................................................ 11, 12

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
2002 WL 1315603 (S.D.N.Y. June 17, 2002) ....................................................... 11

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................................ 22, 23

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................................. 21

*Cassese v. Williams*,
503 F. App'x 55 (2d Cir. 2012) ............................................................................. 22

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................... 12

*Clark v. Ecolab, Inc.*,
2010 WL 1948198 (S.D.N.Y. May 11, 2010) ......................................................... 12

*deMunecas v. Bold Food, LLC*,
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ......................................................... 25

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................ 25

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............................................................. 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .............................................................................................. 21

*GB ex rel NB v. Tuxedo Union Free School Dist.*,
894 F. Supp. 2d 415 (S.D.N.Y. 2012) .................................................................... 11

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................ passim

*Hayes v. Harmony Gold Min. Co.*,
2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .................................................... passim

*In re Beacon Assocs. Litig.*,
   2013 WL 2450960 (S.D.N.Y. May 9, 2013) .................................................................. 10, 12

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) .......................................................................... 10

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................................ 13

*In re Initial Public Offering Secs. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .......................................................................... 12

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................. 17, 19

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................................................................... 19

*In re Nasdaq Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................. 16

*In re Nigeria Charter Flights Litig.*,
   2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011) ............................................................... 12

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................ 18, 19, 23

*Ingalls v. Spotify USA, Inc.*,
   2017 WL 3021037 (N.D. Cal. Jul. 17, 2017) .................................................................. 2

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................................................. 12

*King v. Bumble Trading, Inc.*,
   393 F. Supp. 3d 856 (N.D. Cal. 2019) .......................................................................... 21

*Kissel v. Code 42 Software, Inc.*,
   2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ................................................................ 21

*LeBlanc-Sternberg v. Fletcher*,
   143 F. 3d 748 (2d Cir. 1998) ....................................................................................... 23

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. Feb. 9, 2018) .............................................................. 21

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997) ........................................................................................ 23

*Massiah v. MetroPlus Health Plan, Inc.*
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................................................... 11, 20, 24

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ....................................................................................... 12, 20

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ............................................................................................. 10

*McMahon v. Olivier Cheng Catering and Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................................................... 25

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) ................................................................................... 22

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .......................................................................................................... 23

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
  2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...................................................................... 23

*Parker v. Time Warner Entertainment Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) .............................................................................. 22

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) .......................................................................................................... 22

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .......................................................................................................... 13

*Price v. Synapse Grp., Inc.*,
  2017 WL 3131700 (S.D. Cal. July 24, 2017) ................................................................... 21

*Reyes v. Altamarea Grp.*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .............................................................. 12, 24

*Robinson v. OnStar, LLC*,
  2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ....................................................................... 2

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................................................................... 23

*Shapiro v. JPMorgan Chase 7 Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................. 16, 17, 20, 22

*Turnier v. Bed Bath & Beyond Inc.*,
  2021 WL 409720 (S.D. Cal. Feb. 5, 2021) ....................................................................... 21

*Varljen v. H.J. Meyers & Co., Inc.*,
   2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000).................................................................. 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................... 10, 11, 14, 22

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......................................................... 12

*Yuzary v. HSBC Bank USA, N.A.*,
   2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)...................................................... 10, 23

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................... 4

Cal. Bus. & Prof. Code § 17500 ...................................................................... 4

Cal. Bus. & Prof. Code § 17600 ............................................................. 1, 3, 21

Cal. Bus. & Prof. Code § 17602(a)(1) ......................................................... 1, 17

Cal. Bus. & Prof. Code § 17602(a)(2) .............................................................. 1

Cal. Bus. & Prof. Code § 17602(c)................................................................... 2

Cal. Civ. Code § 1750........................................................................................ 4

**RULES**

Fed. R. Civ. P. 16 ............................................................................................. 6

Fed. R. Civ. P. 23(h) ............................................................................... 3, 9, 10

Fed. R. Civ. P. 26 ............................................................................................. 7

Fed. R. Civ. P. 26(f).......................................................................................... 6

**OTHER AUTHORITIES**

California Senate Bill 340.......................................................................... 3, 21

California Senate Bill 313.................................................................................. 4

## INTRODUCTION

The Class Action Settlement Agreement (the "Settlement Agreement" or "Settlement") between Plaintiff Maribel Moses ("Plaintiff" or the "Class Representative") and Defendant The New York Times Company ("NYT" or "Defendant") (together with Plaintiff, the "Parties"), if finally approved, resolves Plaintiff's and the Class' claims against NYT stemming from alleged violations of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.* On May 12, 2021, the Court granted preliminary approval to the Settlement, which consists of cash and non-cash benefits and has a total value of approximately $5,563,000. *See* Declaration of Frederick J. Klorczyk III (the "Klorczyk Decl.") Ex. A, Settlement Agreement.[1]

Under the terms of the Settlement, NYT will establish a non-reversionary Settlement Fund in the amount of $1,650,000, which will be used to pay all approved claims by Class Members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to Class Counsel. Settlement ¶ 1.45. NYT will also automatically provide over $3,900,000 worth of access codes (the "Automatic Access Codes") for NYT publications to Class Members who do nothing during the claims process. *Id.* ¶¶ 1.46, 2.2. In other words, no claim form will be necessary for Class Members to realize the benefits of the Settlement, and in lieu of such benefits Class Members may choose to receive a *pro rata* cash payment by submitting a simple cash election form. And equally important, as part of the settlement, NYT has agreed to revise the presentation and wording of the automatic renewal terms in its mobile and desktop platforms and in its direct mail offers to be consistent with the requirements of Cal. Bus. & Prof. Code § 17602(a)(1)-(2), and NYT has further agreed to provide subscribers with a revised acknowledgment email that includes the automatic renewal terms, cancellation policy,

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement. *See* Klorczyk Decl. Ex. A.

and information regarding how to cancel in a manner that is capable of being retained by the consumer, consistent with Cal. Bus. & Prof. Code § 17602(c).  *Id.* ¶ 2.3.  This prospective relief will benefit Class Members for years to come.

Obtaining this exceptional relief came with significant risks.  As of the date Plaintiff filed her Complaint against Defendant in this matter, there was little, if any, binding authority interpreting the ARL's requirements of "visual proximity" and "affirmative consent" under Section 17602(a) of the ARL (neither of which are defined by statute), or case law applying the gift provision under Section 17603 of the ARL or the good faith safe harbor provision under Section 17604(b) of the ARL.  Thus, the scope of the statute was in dispute.  Moreover, only one court had issued an opinion on a contested class certification motion based on ARL violations, *see Robinson v. OnStar, LLC*, 2020 WL 364221 (S.D. Cal. Jan. 22, 2020), and only one ARL case has progressed through summary judgment, *see Ingalls v. Spotify USA, Inc.*, 2017 WL 3021037 (N.D. Cal. Jul. 17, 2017).  As a result, in pursuing class-wide relief based on Defendant's alleged ARL violations, Plaintiff endured significant risk and battled through hard-fought litigation involving complex factual investigation into NYT's disclosure practices and dispositive motion practice on novel legal issues.  Ultimately, however, when the Parties thought that there was a potential for resolution, they sought the assistance of a well-respected mediator.  That is, rather than put NYT's arguments to the test at the class certification and summary judgment stages, Plaintiff elected to achieve meaningful, immediate relief for her fellow Class Members.  The settlement was only reached in connection with a full-day mediation session with Jill R. Sperber, Esq., who is an experienced neutral affiliated with Judicate West.  Thus, while resolution was achieved in a relatively short period of time, obtaining the exceptional settlement relief did not come easily.

In light of the exceptional relief obtained by the Parties, Plaintiff respectfully requests, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve attorneys' fees, costs, and expenses of approximately 22.5% of the settlement fund, or $1,250,000, as well as an incentive award of $5,000 for Plaintiff for her service as class representative.  Courts in this Circuit routinely approve fee requests for up to one-third of a settlement fund.  *See, e.g., Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class").  Here, Plaintiff is only seeking a far more modest 22.5% in attorneys' fees, costs, and expenses.  As such, this Court should approve the requested fee and incentive awards.

## FACTUAL AND PROCEDURAL BACKGROUND

A brief summary of California's ARL, the litigation performed by Class Counsel for the Settlement Class's benefit, and the beneficial terms of the Settlement provide necessary context to the reasonableness of the requested fee and incentive awards.  These issues are discussed in greater depth in the accompanying Declaration of Frederick J. Klorczyk III (the "Klorczyk Decl."), but will be summarized below.

### A.    California's Automatic Renewal Law

On December 1, 2010, the California Legislature enacted the Automatic Renewal Law ("ARL") under California Senate Bill 340 with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  *See* First Amended Complaint (ECF No. 22) ("FAC") ¶ 21 (quoting Cal. Bus. & Prof.

Code § 17600, ARL statement of legislative intent).  In 2018, the California Legislature passed California's Senate Bill 313, which amended the ARL to increase consumer protections for orders that contain free trial and promotional pricing, and subscription agreements entered into online.  *See id.* ¶ 22.  Thus, the ARL's core requirements are that: (1) businesses must clearly and conspicuously disclose automatic renewal terms of any offer, as defined by the statute; (2) they must obtain a consumer's affirmative consent; and (3) they must provide consumers with an acknowledgment containing the terms of the automatically renewing offer and cancellation information.  *See id.* ¶ 23.

Private citizens in California may enforce ARL violations as predicate claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, which prohibits "any unlawful[] … business act or practice[.]"  *See id.* ¶ 72.  Additionally, ARL violations may constitute acts of false advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*  *See id.* ¶¶ 93-97.  Finally, ARL violations may also constitute violations under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*  *See id.* ¶ 102-05.

### B.    Plaintiff's Allegations

Defendant is an international media company that, among other things, publishes and distributes The New York Times to California consumers, including both print and online editions, and provides automatically renewing subscription plans for various products and services under the NYT brand name (the "NYT Subscriptions").  Plaintiff alleges that Defendant automatically renewed Class Members' NYT subscriptions in violation of the ARL.  FAC ¶ 1.  Specifically, Plaintiff alleges that when consumers sign up for an NYT Subscription through the NYT Website or App, Defendant actually enrolls consumers in an automatically renewing

subscription that results in monthly or annual charges to the consumer's payment method.  *Id.*  Plaintiff further alleges that Defendant engages in this autorenewal scheme without first providing California consumers the requisite disclosures and authorizations required under the ARL.  *Id.*  Furthermore, Plaintiff alleges that every violation of the ARL constitutes an "unlawful" practice under the UCL.  *Id.* ¶¶ 72-74.  And because Defendant's ARL violations involve misrepresentations and/or omissions of material fact, Plaintiff contends Defendant also violated the FAL and CLRA.  *Id.* ¶¶ 94-95, 104-05.  On that basis, Plaintiff also brought common law claims against Defendant for conversion, unjust enrichment, negligent misrepresentation, and fraud.  *Id.* ¶ 4; *see also id.* ¶¶ 87, 111, 115, 123.

### C.     The Litigation History And Work Performed To Benefit The Class

Beginning in August 2019, Class Counsel commenced a pre-suit investigation of companies' violations of the ARL, including Defendant.  *See* Klorczyk Decl. ¶ 4.  Because very few courts had issued an opinion interpreting the statute – in particular, no court had definitively identified the distinction between obtaining a consumer's "*ordinary* consent" (which is required for the formation of all agreements) versus "*affirmative* consent" (which is a heightened form of consent that is required, but not defined, by the ARL), interpreted the term "visual proximity" (another undefined requirement of the ARL), or applied the gift provision under Section 17603 of the ARL – Class Counsel's investigation was extensive, novel, and involved in-depth research into Defendant's billing practices, textual analysis of the statute, and the legislative history of the ARL.  *Id.* ¶¶ 4-6.  Moreover, Class Counsel was aware that Defendant would likely challenge liability by arguing that they achieved a level of compliance sufficient to qualify for a purported "good faith safe harbor" under Section 17604(b) of the ARL.  *Id.* ¶ 7.  Thus, Class Counsel

performed extensive legal research regarding the application of safe harbor provisions under similar statutes in California and across the country.  *Id.*

Despite these litigation risks, on June 15, 2019, Plaintiff, through counsel, sent a letter to Defendant alleging that it violated the CLRA by charging her renewal fees in connection with NYT's newspaper subscription offerings.  *See* Klorczyk Decl. ¶ 8.  Subsequently, on June 17, 2020, Plaintiff filed her class action lawsuit in the United States District Court for the Southern District of New York, alleging that Defendant's renewal charge was in violation of the ARL, thus giving rise to predicate claims under California's UCL, FAL, CLRA, and other common law claims.  *Id*. ¶ 9 (citing ECF No. 1).

On August 17, 2020, Defendant filed a motion to dismiss under Rule 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief could be granted.  *See id.* ¶ 10 (citing ECF Nos. 16, 17).  Defendant argued that its pre-checkout disclosures complied with the ARL because it provided Plaintiff and Class Members all of the information required by the ARL in a clear and conspicuous manner that was in visual proximity to the request for Plaintiff's consent to the offer, and that it obtained Plaintiff's and Class Members' affirmative consent to the subscription terms.  *See id.*  On August 31, 2020, Plaintiff filed her FAC as of right.  *See id.* ¶ 11 (citing ECF No. 22).  In addition to the same claims for relief brought by Plaintiff's initial Complaint, the FAC asserted additional claims for negligent misrepresentation and fraud.  *See id.* After Plaintiff filed her FAC, the Parties engaged in a planning conference pursuant to Fed. R. Civ. P. 26(f) and a scheduling conference pursuant to Fed. R. Civ. P. 16.  *See id.* ¶ 12 (citing ECF No. 23).  On September 21, 2020, Defendant filed a motion to dismiss Plaintiff's FAC for failure to state a claim upon which relief could be granted under Rule 12(b)(6).  *See id.* ¶ 13 (citing ECF Nos. 28, 29).  Defendant again argued that its pre-checkout disclosures complied

with the ARL because they provided all of the information required by the ARL, in a clear and conspicuous manner, and further argued that Plaintiff's fraud and negligent misrepresentation could not state a claim because, among other reasons, Plaintiff had not identified a false statement or any specific omissions from the pre-purchase disclosures, and any omissions in the post-purchase disclosures could not have influenced Plaintiff's decision to purchase her subscription. *See id.* Plaintiff filed her opposition brief on October 29, 2020. *See id.* (citing ECF No. 32).

From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution. As a result of these discussions, the Parties agreed to participate in a mediation with Jill R. Sperber, Esq., who is an experienced neutral affiliated with Judicate West. *See* Klorczyk Decl. ¶ 14. Prior to the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class. *Id.* ¶ 15. Given that this information was the same or substantially similar to that which would be produced in written discovery, the Parties were able to sufficiently assess the strengths and weaknesses of their cases. *Id.* The Parties also exchanged detailed mediation statements, explaining their respective legal arguments. *Id.* ¶ 17. Additionally, in preparing for mediation, Class Counsel devoted substantial time to researching the viability of different class-wide settlement structures under the relevant Second Circuit case law. *Id.* ¶ 16.

On November 10, 2020, the Parties participated in a full-day mediation before Ms. Sperber. The mediation was conducted by Zoom and lasted approximately nine hours. *Id.* ¶ 18. The Parties' negotiations were in good faith and arm's-length at all times. *Id.* Towards the end

of the mediation, the Parties reached an agreement to settle the case and executed a binding

Settlement Term Sheet as to all material terms of a class-wide settlement.  *Id*.

After reaching an agreement in principle on the Settlement, Class Counsel worked

extensively with defense counsel to finalize and memorialize the agreement into a formal Class

Action Settlement Agreement, including proposed class notice documents.  *Id*. ¶ 26.  That

process included multiple rounds of redlines and phone calls to discuss proposed edits.  *Id*.

Thus, the formal Settlement Agreement was reached as a result of extensive arm's-length

negotiations between the Parties and their counsel.  *Id*.

Finally, after finalizing and executing the Class Action Settlement Agreement, Class

Counsel prepared Plaintiff's Motion for Preliminary Approval and Certification of a Settlement

Class, which was filed on March 30, 2021.  *Id*. ¶ 27 (citing ECF Nos. 40-42).  The Court

preliminarily approved the Settlement on May 12, 2021.  *Id*. ¶ 28 (citing ECF No. 43).

## SUMMARY OF THE SETTLEMENT

The Settlement provides an exceptional result for the class by delivering immediate cash

to the more than 876,000[2] persons who, from June 17, 2016, to and through May 12, 2021,

enrolled in an automatically renewing NYT Subscription directly through NYT using a

California billing and/or delivery address, and who were charged and paid an automatic renewal

fee(s) in connection with such subscription.  Klorczyk Decl. ¶ 22.

The Settlement consists of cash and non-cash benefits and has a total value of

approximately $5,563,000.  Under the terms of the Settlement, NYT will establish a non-

reversionary Settlement Fund of $1,650,000, which will be used to pay all approved claims by

---

[2] The Parties previously estimated that there were approximately 758,000 members of the Class.  However, the Class List provided by Defendant indicates that another 120,000 persons joined the Settlement Class between March 30, when Plaintiff filed her preliminary approval motion, and May 13, when the Court granted Plaintiff's motion.

class members, notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to Class Counsel.  Settlement ¶ 1.45.  NYT will also automatically provide over $3,900,000 worth of access codes (the "Automatic Access Codes") for NYT publications to Class Members who do nothing during the claims process.  *Id.* ¶¶ 1.46, 2.2.  The precise type of NYT Subscription a particular Class Member is eligible to receive under the Settlement depends on whether his or her NYT Subscription was Active or Inactive as of May 12, 2021.  Specifically, Class Members with Active NYT Subscriptions will be entitled to receive either a code for one month of free access to any "NYT Digital Product" subscription program to which the Active Class Member does not currently subscribe, or, at their election, a *pro rata* cash payment from the Settlement Fund.  *Id.* ¶ 2.2(a).  Fully Active Class Members – those class members who are entitled to receive all of NYT's digital offerings – will be entitled to receive access to a one month "NYT Basic Digital Access subscription (NYT's core news subscription), or, at their election, a *pro rata* cash payment from the Settlement Fund.  *Id.* ¶ 2.2(c).  Class members with Inactive NYT Subscriptions will be entitled to receive either access code(s) for a free Basic Digital Access NYT Subscription for one month, or, at their election, a *pro rata* cash payment from the Settlement Fund.  *Id.* ¶ 2.2(b).

## ARGUMENT

## I.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

The requested fee award attorneys' fees, costs, and expenses award of $1,250,000, representing 22.5% of the total Settlement Value, is reasonable and should be approved in full. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and

nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h).[3]

Here, the Settlement Agreement between the Parties provides that Class Counsel may petition

the Court for an award of attorneys' fees, costs, and expenses not to exceed $1,250,000, and that

Defendant agrees to not object to or otherwise challenge, directly or indirectly, Class Counsel's

petition for attorneys' fees, costs, and expenses if limited to this amount.  Settlement ¶ 8.1.

In common fund cases such as this one, courts in the Second Circuit apply one of two fee

calculation methods – the "percentage of the fund" method or the "lodestar" method.  *See*

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has

discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595

F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to

'the district court, which is intimately familiar with the nuances of the case'") (quoting

*Goldberger*, 209 F.3d at 48).  "[T]he trend in this Circuit has been toward the use of a percentage

of recovery as the preferred method of calculating the award for class counsel in common fund

cases."  *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013).  In fact,

the "trend" of using the percentage of the fund method to compensate class counsel is now

"firmly entrenched in the jurisprudence of this Circuit."  *In re Citigroup Inc. Sec. Litig.*, 965 F.

Supp. 2d 369, 388 (S.D.N.Y. 2013).  As the Second Circuit has stated, the percentage method

"directly aligns the interests of the class and its counsel and provides a powerful incentive for the

efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A.*,

---

[3] The requested fee award also encompasses unreimbursed litigation costs and expenses.  *See Settlement* ¶ 8.1.
Reasonable litigation expenses are customarily awarded in class actions and include costs such as document
preparation and travel.  *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2,
2013) ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees,
transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's
fees, are reasonable and were incidental and necessary to the representation of the class.").  Thus, included in the
requested fee award, Class Counsel respectfully seeks reimbursement of $5,774.72 for out-of-pocket costs and
expenses in these standard categories.  *See* Klorczyk Decl. ¶ 43; *id.* Ex. C (itemized expenses through 6/30/21).

Inc., 396 F.3d 96, 121 (2d Cir. 2005).  "In contrast, the 'lodestar [method] create[s] an

unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and

compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'"  *Id.* (quoting

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17,

2002)).  Indeed, the Second Circuit has described difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the
> lodestar method proved vexing.  Our district courts found it created
> a temptation for lawyers to run up the number of hours for which
> they could be paid.  For the same reason, the lodestar [method]
> created an unanticipated disincentive to early settlements.  But the
> primary source of dissatisfaction was that it resurrected the ghost
> of Ebenezer Scrooge, compelling district courts to engage in a
> gimlet-eyed review of line-item fee audits.  There was an
> inevitable waste of judicial resources.

*Goldberger*, 209 F.3d at 48-49.  As Judge Karas noted, "courts in the Second Circuit no longer

use the 'lodestar' method for computing attorneys' fees" in fee-shifting cases.  *GB ex rel NB v.*

*Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (citing *Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)); *see*

*also* Klorczyk Decl. Ex. L, 1/31/18 *Trusted Media Brands* Final Approval Hearing Transcript

("*TMBI* Hearing Tr.") at 16:18-19 ("Now, the lodestar method is not supposed to be used for

computing attorneys' fees.").

Moreover, "[c]ourts in this Circuit have routinely granted requests for one-third or more

of the fund[,]" which is significantly more than the 22.5% Class Counsel seeks here.  *Massiah*,

2012 WL 5874655, at *7 (citing cases); *see also* Klorczyk Decl. Ex. L, *TMBI* Hearing Tr. at

17:21-22 ("As I said, it's one-third.  That's typically approved by other courts."); *Hayes v.*

*Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding

"attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x

21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee

award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *Patterson v. Premier Constr. Co.*, No. 1:15-cv-00662-ST at ECF No. 56 (E.D.N.Y. Dec. 28, 2017) (awarding fees of "33.3% of the settlement fund"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6–7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding one-third of the net settlement fund).  Indeed, as courts in this District have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements."  *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (citing *Arbor Hill*, 522 F.3d 182); *In re Nigeria Charter Flights Litig.*, 2011 WL 7945548, at *4 (same).  Ultimately, the percentage should be "awarded on the basis of the total funds made available, whether claimed or not."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (calculating fee award "on the basis of the total funds made available, … *i.e.*, as if it were a common settlement fund") (internal quotations omitted).

### A.    The Percentage Method Should Be Used To Calculate Fees

As mentioned *supra*, the "trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases."  *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *see also Taylor v. Trusted Media Brands, Inc.*, Case No. 7:16-cv-01812, ECF No. 87 ¶ 14 (S.D.N.Y. Feb.

1, 2018) (granting fee award of $2,741,392.50, equal to one-third of $8.225 million settlement fund); *Russett v. Northwestern Mutual Life Insurance Co.*, No. 7:19-cv-07414, ECF No. 51 ¶ 14 (S.D.N.Y. Oct. 6, 2020) (granting fee award of $198,333.33, equal to one-third of $595,000 settlement fund); *Gregorio v. Premier Nutrition Corporation*, No. 1:17-cv-05987, ECF No. 101 ¶ 15 (S.D.N.Y. Jan. 17, 2019) (granting fee award of $3,000,000, equal to one-third of $9 million settlement fund); *Hufford v. Maxim Inc.*, No. 1:19-cv-04452, ECF No. 70 ¶ 14 (S.D.N.Y. Nov. 12, 2020) (awarding one-third of settlement fund in fees).[4]

In contrast, the lodestar approach is more often applied in federal fee-shifting cases, particularly in civil rights actions. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  As Judge Cote has stated, the percentage method is preferred for several reasons:

> First, it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions.  Second, it decreases plaintiff lawyers' incentive to run up the number of billable hours for which they would be compensated by the lodestar method.  And finally, it decreases the incentive to delay settlement because the fee for the plaintiffs' attorneys does not increase with delay.

*Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (internal citations omitted); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage method is the most efficient means of compensating the work of class action attorneys.  It does not waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.").

---

[4] *See also Edwards v. Hearst Communications, Inc.*, No. 1:15-cv-09279, ECF. No. 314 ¶ 14 (S.D.N.Y. Apr. 24, 2019) (granting fee award of $16,992,431.65, equal to one-third of $50 million settlement fund); *Ruppel v. Consumers Union of United States, Inc.*, No. 7:16-cv-02444, ECF No. 111 ¶ 14 (S.D.N.Y. Dec. 4, 2018) (granting fee award of $5,458,333.33, equal to one-third of the $16.375 million settlement fund); *Heigl v. Waste Management of New York, LLC*, No. 1:19-cv-05487, ECF No. 35 ¶ 14 (E.D.N.Y. May 20, 2021) (granting fee award of $900,000, equal to one-third of $2.7 million settlement fund).

Under the circumstances of this case – wherein Class Counsel received an exceptional result for the Settlement Class – the Second Circuit prefers the percentage method.  *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 (noting that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").  In contrast, "the 'lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'"  *Id*. at 121 (citation omitted).

**B.     The Reasonableness Of The Requested Fees Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation …; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50.  These factors support Class Counsel's fee request.

**1.   Time And Labor Expended By Counsel**

Class Counsel has been working on this case since August 2019, when it began investigating publishing companies' violations of the ARL.  *See* Klorczyk Decl. ¶ 4.  The theory of liability was relatively novel.  *See id.* ¶¶ 4-7, 32.  As of the date Plaintiff filed her Complaint against Defendant in this matter, there was little, if any, binding authority interpreting the ARL's requirements of "visual proximity" and "affirmative consent" under Section 17602(a) of the ARL (neither of which are defined by statute), the gift provision under Section 17603 of the ARL, or the good faith safe harbor provision under Section 17604(b) of the ARL.  *Id*.  Moreover,

as already discussed, the developed case law regarding the ARL is sparse.  *See* Klorczyk Decl. ¶¶ 4-5.  Thus, the scope of the statute was, and remains, in dispute.  *See id* ¶¶ 4-7.  As a result, Class Counsel's investigation was extensive and involved in-depth research into, among other things, industry practices regarding automatic renewal offers, Defendant's billing practices, the legislative history of the ARL, the assertion of predicate claims for ARL violations under California's consumer protection statutes, application of the ARL's "gift" provision under Section 17603, application of the ARL's purported "safe harbor" provision under Section 17604 (and other similar statutes), and the requirements of statutory standing under California law.  *Id.* Class Counsel also spoke with interested potential class members, drafted an initial demand letter, drafted the complaint and amended complaint, conducted meet-and-confer teleconferences with defense counsel, and opposed Defendant's motion to dismiss.  *Id.* ¶¶ 8-9, 11, 12, 14.

Class Counsel expended considerable time and labor on the settlement process as well. First, Class Counsel thoroughly analyzed the informal discovery produced by Defendant to aid in settlement discussions prior to the mediation, which involved largely the same information that would have been produced in written discovery related to issues of class certification and summary judgment.  *Id.* ¶ 15.  Then, on November 10, 2020, Class Counsel participated in a full-day mediation with Jill R. Sperber, an experienced neutral affiliated with Judicate West.  *Id.* ¶¶ 14, 18.  In preparation for that mediation, and in order to help the Parties and Mediator evaluate any potential settlement, Class Counsel prepared a detailed mediation statement outlining the strength of the Plaintiff's case, in addition to a proposed class action settlement term sheet and a chart comparing the case with other ARL cases that had settled.  *Id.* ¶ 17.  Class Counsel also reviewed Defendant's mediation statement to evaluate the veracity of Defendant's arguments. *Id.* Also, in preparing to make a settlement demand at mediation, Class Counsel devoted

substantial time to researching the viability of different class-wide settlement structures under the relevant Second Circuit case law.  *Id.* ¶ 16.  Next, over the next several months, Class Counsel worked extensively with defense counsel to finalize and memorialize the agreement into a formal Class Action Settlement Agreement, including proposed class notice documents.  *Id.* ¶ 26.  That process included multiple rounds of redlines and phone calls to discuss proposed edits.  *Id.*

Thereafter, Class Counsel prepared and filed Plaintiff's Motion for Preliminary Approval. *Id.* ¶¶ 27-28.  Preliminary approval was granted on May 12, 2021.  *See generally*, Order Granting Preliminary Approval (ECF No. 43).  Since then, Class Counsel has worked with the Settlement Administrator, JND Legal Administration ("JND"), to:  (i) carry out the Court-ordered notice plan; and (ii) monitor the settlement claims on a weekly basis.  *Id.* ¶¶ 36-38.  Class Counsel has also fielded calls and responded to emails from Settlement Class Members and, where applicable, assisted them with filing claims.  *Id.* ¶ 38.

Thus, the work performed by Class Counsel to date has been comprehensive, complex, and wide ranging.  This factor supports the requested fee award.

## 2.  Magnitude And Complexity Of The Litigation

"[C]lass actions have a well deserved reputation as being most complex."  *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and quotations omitted); *see also Shapiro v. JPMorgan Chase 7 Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("It is well settled that class actions are notoriously complex and difficult to litigate.") (internal citation omitted).  This case was no exception, particularly because of its relative novelty.  *See* Klorczyk Decl. ¶¶ 4-7.  Specifically, this case involved a statute – California's ARL – that is in its nascent stages of litigation.  *See id.*  Briefing the relevant issues required both an examination of the statute's text using traditional canons of

statutory interpretation and a review of the statute's legislative history. For example, the Parties would have likely argued over whether various of NYT's Checkout Page disclosures were presented in "visual proximity" to the request for consent on that page, and whether Defendant obtained Plaintiff's and Class Members' "affirmative consent" despite the fact that the Checkout Page for the NYT Subscriptions contained no checkbox or other mechanism that requires consumers to expressly manifest their assent to the automatic renewal offer terms associated with the NYT Subscriptions.[5] Similarly, the Parties have opposing views as to whether Defendant's NYT Subscriptions qualify as "goods, wares, merchandise, or products" and are therefore subject to the gift provision under Section 17603 of the ARL, which in turn would give rise to disputes amongst the Parties concerning the proper measure of classwide damages. *See* ¶ 5. Moreover, Defendant would likely challenge Plaintiff's ability to establish statutory standing on her own behalf and/or on behalf of the putative Class. *See id.* ¶ 7. Defendant would also probably raise an affirmative defense that it is exempt, pursuant to Section 17604, from liability for purely technical ARL violations because it substantially complied with its statutory obligations under the ARL in good faith. *Id.*

Thus, the magnitude and complexity of the litigation support the requested fee award.[6]

### 3. The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g.*, *In re Marsh*

---

[5] Notably, although Section 17602(a) explicitly requires both "visual proximity" and "affirmative consent," neither the statute nor caselaw defines these terms, and so Class Counsel would have been required to craft its arguments from scratch. *See id.* ¶ 6.

[6] As noted above, these questions include, but are not limited to, issues concerning application of the ARL's gift provision under Section 17603 to digital products, application of the good faith safe harbor provision under Section 17604 of the ARL, and what it means under the ARL to present disclosures "in visual proximity" (Cal. Bus. & Prof. Code § 17602(a)(1)), to obtain "affirmative consent" (*id.* § 17602(a)(2)), and to "compl[y] with the provisions of th[e ARL] in good faith" (*id.* § 17604).

*ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis).

Here, Plaintiff's request for 22.5% of the $5.563 million Settlement in attorney's fees is justified given, *inter alia*, that the novelty of this case that made it complex presented a substantial risk of non-payment for Class Counsel. *See* Klorczyk Decl. ¶ 32; *see also id.* ¶¶ 4-7, 30-31. As there are few binding decisions interpreting the ARL, success on the legal issues presented by this case was far from certain. *See id.* ¶ 32. For instance, as noted above, Class Counsel faced the palpable risk that NYT's actions could be characterized as sufficient to qualify for the purported good faith "safe harbor" under Section 17604(b) of the ARL. *See id.* ¶ 7. This risk was exacerbated by the fact that NYT retained highly qualified defense counsel who presented well-argued defenses in its motions to dismiss and mediation statement, as discussed below. Nonetheless, Class Counsel embarked on a fact-intensive investigation of NYT's practices, engaged in informal discovery, and paid for and participated in a full-day mediation, as well as months of additional discussions with the defense counsel in order to try and resolve the action. *See id.* ¶¶ 4-8, 14-21. Class Counsel went out-of-pocket as to this investment of time and resources, despite the significant risk of nonpayment.

The fact that Class Counsel undertook this representation, despite the significant risk of nonpayment, supports the requested fee award.

### 4. The Quality Of Representation

Class action litigation presents unique challenges and, by achieving a meaningful settlement over purported violations of a relatively untested statute, Class Counsel proved that

they have the ability and resources to litigate this case zealously and effectively.  In addition,

Class Counsel are well-respected attorneys with significant experience litigating consumer class

actions of similar size, scope, and complexity.  Klorczyk Decl. ¶¶ 47, 49, 51-52.  Indeed, other

judges in this District have previously commended Class Counsel's work in representing class

members and achieving a meaningful settlement.  *See, e.g.*, *Taylor*, ECF No. 87 ¶ 8 ("The Court

finds that … Class Counsel adequately represented the Settlement Class for the purposes of

litigating this matter and entering into and implementing the Settlement Agreement."); *Ruppel*,

ECF No. 111 ¶ 8 (same); *Heigl*, ECF No. 35 ¶ 8 (same); *Russett*, ECF No. 51 ¶ 8 (same);

*Gregorio*, ECF No. 101 ¶ 9 (same); *Edwards*, No. 1:15-cv-09279, ECF. No. 314 ¶ 8 (same);

*Hufford*, ECF No. 70 ¶ 8 (same).  Moreover, Class Counsel has been recognized by courts across

the country for its expertise litigating Rule 23 class action claims.  *See* Klorczyk Decl. ¶ 51; *see

also id.* Ex. M, Firm Resume.[7]

Furthermore, "[t]he quality of the opposition should be taken into consideration in

assessing the quality of the plaintiffs' counsel's performance."  *In re MetLife Demutualization

Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010); *see also, e.g.*, *Marsh ERISA Litig.*, 265 F.R.D.

at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the

caliber of representation that was necessary to achieve the Settlement.").  As noted above, Class

Counsel achieved an exceptional result in this case while facing well-resourced and experienced

---

[7] *See also Williams v. Facebook, Inc.*, No. 3:18-cv-01881, ECF No. 51 (N.D. Cal June 26, 2018) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of all persons who installed Facebook Messenger applications and granted Facebook permission to access their contact list); *In re Welspun Litigation*, No. 1:16-cv-06792, ECF No. 58, at *2 (S.D.N.Y. Jan. 26, 2017) ("[The] Bursor firm … ha[s] extensive experience in handling class actions and complex litigation, including products liability and consumer protection cases; appear[s] to have knowledge of applicable law; and ha[s] extensive resources."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

defense counsel.  Class Counsel has litigated this case efficiently and effectively.  The excellent

result is a function of the high quality of that work, which supports the requested fee award.

### 5.  The Requested Fee In Relation To The Settlement

Class Counsel seeks fees, costs, and expenses totaling 22.5% of the $5.563 million

settlement fund.  As mentioned above, courts in this Circuit routinely approve fee requests for a

higher percentage, *e.g.*, one-third of a common fund.  *See* cases cited in Argument § I, *supra*.

The requested fees should be "awarded on the basis of the total funds made available, whether

claimed or not."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)

(calculating fee award "on the basis of the total funds made available, … *i.e.*, as if it were a

common settlement fund") (internal quotations omitted).

Here, the requested fees, costs, and expenses of 22.5% of the settlement fund is less than

the percentage routinely approved by courts in this District.  This factor thus supports approval

of the requested fee award.

### 6.  Public Policy Considerations

The final *Goldberger* factor concerns public policy.  "Skilled counsel must be

incentivized to pursue complex and risky claims [that protect the public on a contingency

basis]."  *Shapiro*, 2014 WL 1224666, at *24.  As such, reasonable fee awards must be provided

in order to ensure that attorneys are incentivized to litigate class actions, which serve as private

enforcement tools to police defendants who engage in misconduct.  *See id*.  "Attorneys who fill

the private attorney general role must be adequately compensated for their efforts," otherwise the

public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."

*Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012)

(citing *Goldberger*, 209 F.3d at 51).  Further, when individual class members seek relatively

small amounts of damages, "economic reality dictates that [their] suit proceed as a class action or

not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

California undoubtedly has a strong interest in incentivizing lawyers to bring complex

litigation under the ARL.[8]  *See Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d at 1071 (("The

purpose of the ARL is to protect consumers from unwittingly consenting to automatic renewals

or subscription orders.") (quoting *Price v. Synapse Grp., Inc.*, 2017 WL 3131700, at *5 (S.D.

Cal. July 24, 2017)); *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *4-5 (C.D. Cal.

Apr. 14, 2016) ("[T]he ARL was clearly enacted to protect consumers from 'the oppressive use

of superior bargaining power' when entering into subscription or purchasing agreements.")

(citation omitted); *Turnier v. Bed Bath & Beyond Inc.*, 2021 WL 409720, at *4 n.6 (S.D. Cal.

Feb. 5, 2021) ("Notably, the practice that led to ARL was the inclusion of autorenewal terms in

fine print."); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 868 (N.D. Cal. 2019)

("California courts generally consider the '[p]rotection of unwary consumers from being duped

by unscrupulous sellers ... an exigency of the utmost priority in contemporary society.'")

(quoting *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008)); *see also* Cal. Bus. &

Prof. Code § 17600 (statement of legislative intent).  Class action litigation is the most realistic

means of safeguarding the interests of low-income consumers who are disproportionately

affected by renewal fees.  The alternative to a class action in this case would have been no

enforcement at all, and NYT's allegedly unlawful conduct would have continued unabated.

---

[8] Notably, in enacting the ARL, the California legislature expressed concern that "[i]t has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to."  Senate Judiciary Committee, Bill Analysis of Senate Bill No. 340 (2009-2010 Regular Session), as amended April 2, 2009 (Date of hearing: April 14, 2009) (emphasis added).

Accordingly, this factor thus supports the requested fee award.

**C.    The Requested Attorneys' Fees Are Also Reasonable Under A
Lodestar Cross-Check**

A lodestar cross-check further supports the requested fee.  Courts applying the lodestar

method generally apply a multiplier to take into account the contingent nature of the fee, the

risks of non-payment, the quality of representation, and the results achieved.  *See Wal-Mart

Stores, Inc.*, 396 F.3d at 121.  Where the lodestar is "used as a mere cross-check, the hours

documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*,

209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the

"need for exact [billing] records [is] not imperative" where lodestar used as "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are

multiplied by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for

Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time

Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009).  The resulting

figure may be adjusted at the court's discretion by a multiplier, taking into account various

equitable factors.  *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24

("Additionally, under the lodestar method, a positive multiplier is typically applied to the

lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature

of the engagement, the skill of the attorneys, and other factors.") (internal quotations and

citations omitted); *Milstein v. Huck*, 600 F. Supp. 254, 257 (E.D.N.Y. 1984) ("An increase in a

fee award is appropriate in situations, such as this one, where an action is prosecuted solely on a

contingent fee basis and counsel, faced with a large case containing complex and novel legal

issues, successfully recovers a substantial benefit to the class.").  The hourly billing rate to be

applied is the hourly rate that is normally charged in the community where the counsel practices,

*i.e.*, the "market rate."  *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted).

Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market.  *See* Klorczyk Decl. ¶ 32.[9]  The hours worked, lodestar fee, and expenses for Class Counsel are set forth in the declaration of Mr. Klorczyk, submitted herewith.  *Id.* ¶¶ 39-44; *see also id.*, Exs. B-C.  In total, through June 30, 2021, Class Counsel has billed 670.5 hours, which at their hourly rates amounts to a lodestar of $321,808.00.  *Id.* ¶ 40.  Therefore, the requested fee award currently reflects a 3.87 times multiplier on Class Counsel's regular hourly rates, which is well within the range of reasonableness.  *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").[10]

---

[9] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

[10] Class Counsel's lodestar multiplier is also reasonable because it will decrease further as Class Counsel spends additional time on notice and distribution issues. *See, e.g.*, *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."); *Yuzary*, 2013 WL 5492998, at *11 (internal quotation marks and citation omitted) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Moreover, Class Counsel's requested fees are also reasonable given the unique circumstances of this case.  Specifically:

- Class members will receive relief of substantial value quickly, and 95% or more of class members will receive such benefits automatically without the need for a claim process.

- The litigation was conducted and the Settlement was obtained in an efficient manner, by experienced and qualified counsel.

- The case involved complex and novel legal issues and factual theories, which involved significant litigation risks.

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case.

In sum, Class Counsel's efforts in this case resulted in an exceptional recovery for the Settlement Class.  Class Counsel should be rewarded for achieving this result.

## II.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFF'S ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

Incentive awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Reyes*, 2011 WL 4599822, at *9.  Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take.  *Massiah*, 2012 WL 5874655, at *8.

Here, the participation of Plaintiff Maribel Moses was critical to the ultimate success of the case.  *See* Klroczyk Decl. ¶¶ 53-54.  Ms. Moses spent approximately 30 hours protecting the interests of the Class through her involvement in this case.  *See* Declaration of Maribel Moses ("Moses Decl.") ¶ 10.  Plaintiff assisted Class Counsel in investigating her claims by detailing her account history and the automatic renewal charges associated with therewith, supplying supporting documentation, and aiding in drafting the Complaint.  *Id*. ¶¶ 3-4, 6.  During the

course of this litigation, Plaintiff kept in regular contact with her lawyers to receive updates on the progress of the case and to discuss strategy. *Id.* ¶ 5. Further, Plaintiff preserved documents likely to be requested in formal discovery and was prepared to testify at deposition and trial, if necessary. *Id.* ¶ 6. Finally, Plaintiff was actively consulted during the settlement process. *Id.* ¶ 7. On these facts, the requested incentive payment of $5,000 is fair and reasonable. *See, e.g.*, Klorczyk Decl. Ex. L, *TMBI* Hearing Tr. at 15:10-19; *id.*, Ex. N, Preliminary Approval Hearing Transcript in *Russett,* No. 7:19-cv-07414-KMK ("NWM Hearing Tr."); *Heigl*, No. 1:19-cv-05487; *Gregorio*, No. 1:17-cv-05987. Thus, the incentive award is warranted.

Moreover, the requested $5,000 is well within the range of incentive awards approved by other courts in this Circuit. *See, e.g.*, *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (awarding $5,000 service payments to class representatives from $800,000 fund); *McMahon v. Olivier Cheng Catering and Events, LLC*, 2010 WL 2399328, at *8-9 (S.D.N.Y. Mar. 3, 2010) (awarding $5,000 service payments to two class representatives from $400,000 fund); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) approve attorneys' fees, costs, and expenses in the amount of $1,250,000; (2) grant Plaintiff an incentive award of $5,000 in recognition of her efforts on behalf of the Class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: July 1, 2021                         Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:_____*/s/ Frederick J. Klorczyk III*_____
                                                       Frederick J. Klorczyk III

                                            Frederick J. Klorczyk III
                                            888 Seventh Avenue
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile: (212) 989-9163
                                            Email:  fklorczyk@bursor.com

                                            **BURSOR & FISHER, P.A.**
                                            Neal J. Deckant
                                            1990 N. California Blvd., Suite 940
                                            Walnut Creek, CA 94596
                                            Telephone: (925) 300-4455
                                            Facsimile: (925) 407-2700
                                            E-Mail: ndeckant@bursor.com

                                            *Class Counsel*