**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIBEL MOSES, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>   v.<br><br>THE NEW YORK TIMES COMPANY, d/b/a *The New York Times*.<br><br>                    Defendant. | Civil Action No.: 1:20-cv-04658-RA<br><br>Hon. Judge Ronnie Abrams |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated:  August 27, 2021

**BURSOR & FISHER, P.A.**

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**

Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT TERMS ............... 2

ARGUMENT ............................................................................................................... 2

I.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
APPROPRIATE.................................................................................................. 2

    A.    Numerosity................................................................................................ 3

    B.    Commonality.............................................................................................. 3

    C.    Typicality .................................................................................................. 5

    D.    Adequacy .................................................................................................. 6

    E.    The Proposed Settlement Class Is Ascertainable..................................... 7

    F.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)............ 8

        1.    Common Questions Predominate ............................................... 8

        2.    A Class Action Is A Superior Mechanism ................................. 9

II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ......................................... 10

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE, AND SHOULD BE APPROVED BY THE COURT.............................. 12

    A.    Procedural Fairness: The Negotiation Process .................................... 13

    B.    Substantive Fairness: The *Grinnell* Factors ....................................... 14

        1.    Litigation Through Trial Would Be Complex, Costly, And
Long (*Grinnell* Factor 1)......................................................... 14

        2.    The Reaction Of The Class (*Grinnell* Factor 2)........................ 16

        3.    Discovery Has Advanced Far Enough To Allow The Parties
To Responsibly Resolve The Case (*Grinnell* Factor 3) ........... 17

        4.    Plaintiff Faces Continued Litigation Risks Related To
Establishing Liability, Damages, And Maintaining A Class
Action Through Trial (*Grinnell* Factors 4, 5, And 6) ............... 18

5.      Defendant's Ability To Withstand A Greater Judgment
        (*Grinnell* Factor 7) ................................................................................ 19

6.      The Settlement Amount Reasonable In Light Of The Possible
        Recovery And The Attendant Risks Of Litigation (*Grinnell*
        Factors 8 And 9)........................................................................................ 19

C.      The Rule 23(e)(2) Factors ...................................................................................... 21

1.      The Class Representative And Class Counsel Have
        Adequately Represented The Class (Rule 23(e)(2)(A))............................. 21

2.      The Settlement Was Negotiated At Arm's Length ................................... 21

3.      The Settlement Provides Adequate Relief To The Class.......................... 22

4.      The Settlement Treats All Class Members Equally ................................. 24

CONCLUSION............................................................................................................................. 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................ 2, 9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013)................................................................................................ 8

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000) ...................................................................................... 6, 21

*Cassese v. Washington Mutual, Inc.,*
  255 F.R.D. 89 (E.D.N.Y. 2008)................................................................................... 9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
  504 F.3d 229 (2d Cir. 2007) ........................................................................................ 3

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ......................................................................... 13, 14, 16, 20

*City of Providence v. Aeropostale, Inc.,*
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................................. 23

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) .......................................................................................... 3

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) ...................................................................................... 6, 21

*Dziennik v. Sealift, Inc.,*
  2007 WL 1580080 (E.D.N.Y. May 29, 2007) ............................................................ 6

*Ebin v. Kangadis Food Inc.,*
  297 F.R.D. 561 (S.D.N.Y. 2014)................................................................................. 5, 7

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ................................................................................................... 10

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174, 181 (W.D.N.Y. 2005) ................................................................passim

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................................ 20

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) .............................................................................................. 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................... 10, 17

*Hayes v. Harmony Gold Min. Co.*,
    2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ..................................................................... 23

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
    271 F. App'x 41 (2d Cir. 2008) ......................................................................................... 11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .................................................................. 13

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................... 15, 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................................... 13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ......................................................................... 21, 23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................... 10

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................. 16

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................... 6, 21, 22, 24

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................................................... 13

*In re Petrobas*,
    862 F.3d 250 (2d Cir. 2017) ............................................................................................... 7

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................................ 6

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ........................................................................ 8, 9

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 .............................................................................. 14, 16, 18

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ............................................................................ 24

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ..................................................................... 13

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ....................................................................... 4

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................................... 23

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ......................................................................... 3, 5

*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) ....................................................................... 6

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012) ................................................................. 17

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................... 8

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ............................................................................ 14

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................ 24

*Michalow v. E. Coast Restoration & Consulting Corp.*,
   2011 WL 6942023 (E.D.N.Y. Nov. 17, 2011) .................................................... 4

*Monaco v. Stone*,
   187 F.R.D. 50 (E.D.N.Y. 1999) ......................................................................... 4

*Pichardo v. Carmine's Broadway Feast Inc.*,
   2016 WL 5338551 (S.D.N.Y. Sept. 26, 2016) ................................................ 5, 9

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
  698 F.2d 150 (2d Cir. 1983) ................................................................. 3

*Reyes v. Altamarea Grp.*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ....................................... 23

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................. 5

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986) ................................................................. 9

*Savino v. Computer Credit, Inc.*,
  173 F.R.D. 346 (E.D.N.Y. 1997) .......................................................... 3

*TBK Partners, Ltd. v. Western Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981) ..................................................... 15

*Tiro v. Public House Invs., LLC*,
  2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ..................................... 12

*Torres v. Gristede's Oper. Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................................... 17

*Toure v. Cent. Parking Sys.*,
  2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ................................. 6, 21

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) .......................................................... 4

*Trinidad v. Breakaway Courier Sys., Inc.*,
  2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .......................................... 5

*Wagner v. NutraSweet Co.*,
  95 F.3d 527 (7th Cir. 1996) ................................................................. 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................... 10, 12

*Weigner v. City of N.Y.*,
  852 F.2d 646 (2d Cir. 1988) ............................................................... 11

*Willix v. Healthfirst, Inc.*,
  2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011) ................................. 18, 23

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................ 12

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ....................................................... 9

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ......................................................... 9

**RULES**

Fed. R. Civ. P. 8 .......................................................................................................... 15

Fed. R. Civ. P. 12(b)(6)................................................................................................ 15

Fed. R. Civ. P. 23 ................................................................................................. passim

**OTHER AUTHORITIES**

Newberg on Class Actions § 11.41 (4th ed. 2002) ...................................................... 12

## INTRODUCTION

On May 12, 2021, this Court preliminarily approved the Class Action Settlement between Plaintiff Maribel Moses ("Plaintiff") and Defendant The New York Times Company ("Defendant" or "NYT"), and directed that notice be sent to the Settlement Class.  *See* ECF No. 43.  The settlement administrator, JND Legal Administration ("JND"), has implemented the Court-approved notice plan, and notice has reached more than 95% of the certified Settlement Class.  The reaction from the Class has been overwhelmingly positive.  Specifically, of the approximately 876,000[1] Settlement Class Members, only 3 submitted objections, and only 18 submitted requested to be excluded.[2]

The Settlement was reached after months of settlement negotiations, including a private mediation with Jill R. Sperber, Esq., an experienced neutral affiliated with Judicate West.  The Settlement consists of cash and non-cash benefits and has a total value of approximately $5,563,000.  Under the terms of the Settlement, NYT will automatically provide over $3,900,000 worth of access codes (the "Automatic Access Codes") for NYT offers to Class Members who did nothing during the claims process (*i.e.*, did not opt for a cash claim), and will also establish a non-reversionary cash Settlement Fund in the amount of $1,650,000, which will be used to pay all approved cash claims[3], notice and administration expenses, a Court-approved incentive award to Plaintiff, and attorneys' fees to the extent awarded by the Court.  In all, this is an excellent deal.  The Court should have no hesitation in granting final approval.

---

[1] The number of class members was initially estimated as approximately 855,000 persons.  Defendant provided JND with spreadsheets containing subscriber contact information and other identifying data that resulted in a list containing 876,606 members of the Settlement Class.  *See* Declaration of Jennifer M. Keough Regarding Settlement Administration ("Keough Decl.") ¶ 6.

[2] The deadline to object or opt-out of the Settlement was July 24, 2021.  *See* ECF No. 43 ¶¶ 14, 20.

[3] As of the Claims Deadline, 10,541 Class Members filed valid cash claims.  Keough Decl. ¶ 24.

**FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT TERMS**

The factual and procedural background of this matter, including the key terms of the Settlement Agreement, are discussed at pages 2-8 of Plaintiff's motion for preliminary approval, *see* ECF No. 42; at ¶¶ 4-37 of the Klorczyk Declaration in support of Plaintiff's motion for attorneys' fees, *see* ECF No. 45; and at ¶¶ 3-15 of the Declaration of Frederick J. Klorczyk III in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Klorczyk Decl."), filed contemporaneously herewith.

**ARGUMENT**

**I.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE**

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of defined as: "[a]ll Person[s] who, between June 17, 2016, to and through May 12, 2021 enrolled in any of Defendant's digital, print, and/or standalone subscription offerings directly through NYT using a California billing and/or delivery address, and who were charged and paid an automatic renewal fee(s) in connection with such subscription" (the "Settlement Class").  ECF No. 43 ¶ 6.

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to class members predominate
> over any questions affecting only individual members, and that a

> class action is superior to other available methods for fairly and
> efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility" in evaluating class certification.

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The  Court should now grant final certification because the Settlement Class meets all of

the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members."

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Settlement Class easily satisfies Rule 23's numerosity requirement.  According

to Defendant's records, the Settlement Class is comprised of over 876,000 persons.  Keough

Decl. ¶ 6.  Since there is no question that joinder of all members of the Settlement Class would

be impractical, numerosity is satisfied.

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact

common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement is met "if

plaintiffs' grievances share a common question of law or of fact."  *Cent. States Se. & Sw. Areas*

*Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir.

2007).  Although the claims need not be identical, they must share common questions of fact or

law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d

Cir. 1983); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd in part,*

*rev'd in part on other grounds*, 164 F.3d 81 (2d Cir. 1998).  Courts construe the commonality

requirement liberally. *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)). Thus, "a single common issue of law will satisfy the commonality requirement." *Michalow v. E. Coast Restoration & Consulting Corp.*, 2011 WL 6942023, at *3 (E.D.N.Y. Nov. 17, 2011); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999). A common issue of law will be found if Plaintiff can "identify some unifying thread among the members' claims." *Monaco*, 187 F.R.D. at 61; *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Here, there are common questions of law and fact that will generate common answers in the litigation. Specifically, Plaintiff alleges that Defendant made identical misrepresentations and omissions regarding the terms of payment for and cancellation of the NYT Subscriptions, and also that it "uniformly fail[ed] to obtain any form of consent … before charging consumers' Payment Methods on a recurring basis." FAC ¶¶ 33, 98, 118, 126. Among others, common questions include: (1) whether NYT failed to disclose the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer; (2) whether NYT failed to obtain consumers' affirmative consent to the automatic renewal offer terms; and (3) whether NYT failed to provide an acknowledgement, capable of being retained by the consumer, that contained the automatic renewal offer terms and information on how to cancel. *Id.*

Resolution of these common questions requires evaluation of the scope of a single statute: California's Automatic Renewal Law ("ARL"). If Defendant violated the statute, then every Settlement Class Members' right shave been violated in the exact same manner, in which case each Class Member is entitled to a full refund of all subscription fees incurred during the Class Period. Thus, actual damages can be precisely calculated for each Settlement Class

4

Member.  *See id.* ¶ 16; *see also Pichardo v. Carmine's Broadway Feast Inc.*, 2016 WL 5338551, at *3 (S.D.N.Y. Sept. 26, 2016) ("Courts considering similar claims of unlawful payment policies routinely certify classes based on evidence of a common policy.").  Thus, the commonality requirement is satisfied.

### C.    Typicality

To establish typicality, Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted); *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  "When it is alleged that the <u>same unlawful conduct was directed at or affected both the named plaintiff and the class</u> sought to be represented, the typicality requirement is usually met <u>irrespective of minor variations in the fact patterns</u> underlying individual claims."  Robidoux, 987 F.2d at 936-37 (emphasis added).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiff alleges that Defendant's practice of charging renewal fees for its NYT Subscriptions – without first obtaining consumers' affirmative consent to the transaction – violated the ARL and other California statutes.  FAC ¶¶ 1-5, 30-43.  Moreover, Defendant's automatic renewal process is done in the exact same manner and was directed at, or affected, both Plaintiff and the members of the putative class in the same exact way.  Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class by pursuing her claims on behalf of herself Class Members, and typicality is therefore satisfied.  *See, e.g., Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y.

2014) (Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-406 (S.D.N.Y. 2015) (Briccetti, J.) (same).

### D.      Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Generally, adequacy of representation entails inquiry as to whether: (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) the plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *see also Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiff – like each and every Settlement Class Member – is a purchaser of one of Defendant's NYT Subscriptions that was automatically renewed by Defendant.  FAC ¶¶ 30-43.  Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the damages to which they are entitled.  As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class.  *Id.*  Moreover, Plaintiff was extensively involved in the litigation and settlement of this case.  *See* Declaration of Maribel Moses ("Moses Decl."), ECF No. 46.

Likewise, Class Counsel – Bursor & Fisher, P.A. – has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. *See* Klorczyk Decl. ¶¶ 25-29; *see also id.* Ex. 2, Firm Resume of Bursor & Fisher, P.A. Class Counsel regularly engages in major complex litigation, especially involving consumer products, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country, including courts in this District. *Id.*

Further, Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and those of the Settlement Class, aggressively pursuing such claims through motion practice, conducting informal discovery, participating in a private mediation with a well-respected and experienced neutral, and ultimately, negotiating a favorable class action settlement. ECF No. 45 ¶¶ 10-16, 18. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. *Id.*

Accordingly, since Plaintiff and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E. The Proposed Settlement Class Is Ascertainable

Though it does not appear in the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability." *Ebin*, 297 F.R.D. at 566-67. "The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definitive boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). Here, the Settlement Class is defined as "[a]ll Person[s] who, between June 17, 2016, to and through May 12, 2021 enrolled in any of Defendant's digital, print, and/or standalone subscription offerings directly through NYT using a California billing and/or delivery address, and who were charged and paid an automatic renewal fee(s) in connection with such

7

subscription."  ECF No. 43 ¶ 6.  This Class satisfies the ascertainability requirement as it is

based on "objective criteria" that establish class membership with "definitive boundaries:"

California residents who were charged by Defendant a renewal fee based on the type of NYT

Subscription in which they were enrolled.

### F.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions "predominate over any questions affecting

only individual members and that a class action is superior to other available methods for the fair

and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  As shown below,

Plaintiff has met the Rule 23(b)(3) requirements.

### 1.    Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole, … predominate over those issues that are

subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a

classwide basis, even when there are some individualized damage issues."  *Id*. at 139.  Where

plaintiffs are "unified by a common legal theory" and by common facts, the predominance

requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class

predominate, not that those questions will be answered, on the merits, in favor of the class."

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

Here, Plaintiff brings claims under California's consumer protection laws and common

laws based on allegations of Defendant's violation of a single statute, California's ARL.  In other

words, Plaintiff's allegations all center around Defendant's "automatic renewal scheme."  FAC ¶

1.  "Courts considering similar claims of unlawful payment policies routinely certify classes

8

based on evidence of a common policy." *Pichardo*, 2016 WL 5338551, at *3; *see also Cassesse*

*v. Washington Mutual, Inc.*, 255 F.R.D. 89, 98 (E.D.N.Y. 2008) (certifying a class of consumers

who "who paid or will be demanded to pay prohibited fees").  Since Plaintiff alleges Defendant

engaged in a common course of conduct, predominance is met.[4]

### 2.    A Class Action Is A Superior Mechanism

Next, Rule 23(b)(3)'s superiority requirement examines whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive

list of relevant factors, including whether individual class members wish to bring, or have

already brought, individual actions; and the desirability of concentrating the litigation of the

claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[5]  "Courts have found that the superiority

requirement is satisfied where [t]he potential class members are both significant in number and

geographically dispersed[,] [and] [t]he interest of the class as a whole in litigating the many

common questions substantially outweighs any interest by individual members in bringing and

prosecuting separate actions."  *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *13-14

(S.D.N.Y. Sept. 4, 2014).  "Class adjudication … is superior to individual adjudication because it

will conserve judicial resources and is more efficient for class members, particularly those who

lack the resources to bring their claims individually."  *Yuzary v. HSBC Bank USA, N.A.*, 2013

---

[4] Furthermore, that Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

[5] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

Here, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  But if any such claims were to be filed, employing the class device here will not only achieve economies of scale for Settlement Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Settlement Class Members' claims in this case.

## II.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice to more than 95% of the Settlement Class.  *See* Keough Decl. ¶ 6.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* ECF No. 43 ¶¶ 9-11.  The Plan has now been fully carried out by professional settlement administrator, JND.  Pursuant to the Settlement, Defendant provided JND with a list containing the names, email and/or mailing addresses, and status of a total of 876,606 potential Settlement Class Members.  *See* Keough Decl. ¶ 6.  JND successfully delivered the Court-approved notice via email and/or postal mail to 834,251 class members.[6] *Id.* ¶ 13.  Accordingly, the Court-approved notice successfully reached 95.2% of the Settlement Class directly.[7] *Id.*  These notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online, access important court filings (including Plaintiff's Motion for Attorneys' Fees), and view deadlines and answers to frequently asked questions.  *See* ECF No. 42 at 26; *see also* Keough Decl. ¶¶ 4-16.  Given the broad reach of the notice, and the comprehensive information such notice provided to Settlement Class

---

[6] Notably, in addition to distribution of the Court-approved notices, *see* ECF No. 41 at 54-73 (Exhibits B-E to Settlement Agreement), on July 22, 2021, at the Parties' direction, JND sent a follow-up e-mail to 836,159 Class Members who had not yet submitted a request for a cash claim, reminding them of the upcoming Claims Deadline and containing a link to the Settlement Website's online claim form (the "Reminder E-mail Notice"), to ensure that any Class Member who wanted to submit a cash claim had plenty of opportunity to do so.  *See* Keough Decl. ¶ 14.

[7] Defendant also notified the appropriate state and federal officials pursuant to CAFA.  *See* Keough Decl. ¶¶ 3-4.

Members, the requirements of due process and Rule 23 are easily met.

### III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).  To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits."  *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013).  Indeed, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  *See id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116, 117 (2d Cir. 2005) (noting the "compromise of complex litigation is encouraged by the courts and favored by public policy" and emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context"); *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).

In terms of procedural fairness, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008).  If the settlement was achieved through arm's-length negotiations by experienced counsel, then, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the

settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Next, courts consider whether a proposed settlement is substantively fair.  In reaching this determination, Courts should consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine [] factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), as enumerated below.  *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e)(2) factors significantly overlap or implicate the *Grinnell* factors, and the Rule 23(e)(2) factors do not displace the *Grinnell* factors.  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other.").

### A.      Procedural Fairness: The Negotiation Process

The circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair.  Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009).  Here, the Settlement was reached after months of negotiation and a full-day mediation session with a well-respected mediator affiliated with Judicate West, Jill Sperber, and the Parties continued negotiations over the next several weeks following mediation.  Additionally, the negotiations leading to the Settlement were conducted by highly qualified counsel who respectively sought to obtain the best possible result for their clients.  *See* Klorczyk Decl. ¶¶ 18, 20, 25-29.  In such situations, the Second Circuit adopts "a presumption of fairness, reasonableness, and adequacy as to the

13

settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.  Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context."  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

   **B.      Substantive Fairness: The *Grinnell* Factors**

   In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate.  "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4.  The nine *Grinnell* factors include:  "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Id*. at *4 (quoting *Grinnell*, 495 F.2d at 463).  In reviewing and approving a settlement, "a court need not conclude that <u>all</u> of the *Grinnell* factors weigh in favor of a settlement"; rather, courts "should consider the totality of these factors in light of the particular circumstances."  *Id*. (emphasis added).  Here, the *Grinnell* factors weigh in favor of final approval.

   **1.      Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)**

   By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class

14

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.

2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate,

its acceptance and approval are preferable to the continuation of lengthy and expensive litigation

with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389

(S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

 As discussed above, the Parties engaged in informal written discovery prior to mediation.

The next steps in the litigation would have been resolution by the Court of NYT's Motion to

Dismiss, as well as the start of discovery, including depositions of the Parties, substantial

electronically stored information discovery, and contested motions for summary judgment and

class certification, which would be at minimum costly and time-consuming for the Parties and

the Court and creates risk that a litigation class would not be certified and/or that the Settlement

Class would recover nothing at all.

 More specifically, Plaintiff is aware that Defendant would continue to assert a number of

defenses on the merits, including that Plaintiff's allegations are insufficient under Fed. R. Civ. P.

8 and 12(b)(6), including because Defendant purportedly provided all of the requisite pre-

purchase disclosures under the ARL, presented them in a clear and conspicuous manner as

defined under the ARL, and obtained Plaintiff's affirmative consent to the automatically

renewing subscription; and any omissions in the post-purchase subscription acknowledgment

sent to Plaintiff do not rise to the level of fraud or negligent misrepresentation as alleged.

Defendant would also likely challenge Plaintiff's standing under Article III of the Constitution as

well as pursuant to California's consumer protection statutes, including Plaintiff's ability to show

that Defendant's conduct caused Plaintiff economic injury.  Plaintiff and Class Counsel are also aware that Defendant would likely oppose class certification vigorously, including because Defendant would take the position that Plaintiff is not entitled to bring at least some of her claims on a class wide basis.  Plaintiff and Class Counsel further understand that Defendant would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware of the fact that NYT could appeal the merits of any adverse decision, and in light of the potential damages exposure – which Plaintiff contends is the automatic return of all subscription revenues collected by Defendant during the relevant time period – Defendant would argue for a reduction of damages based on due process concerns.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and it provides certainty.  Consequently, this *Grinnell* factor plainly weighs in favor of final approval of the Settlement.

## 2.    The Reaction Of The Class (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement."  *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted).  This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.  Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order, ECF No. 43 ¶¶ 9-11, and direct notice reached more than 95.2% of the Settlement Class.  *See* Keough Decl. ¶ 13.

16

Only 3 Class Members objected to the Settlement and only 18 Class Members opted out.  *Id.* ¶¶ 21-22.  Additionally, 10,541 Class Members have filed valid claims for *pro rata* cash payments in lieu of Automatic Access Codes.  *Id.* ¶ 24.  Thus, approximately 95.17% of the total Settlement Class (or 99.99% of the portion of the Settlement Class that received direct notice) will receive benefits of the Settlement.  This exceptional participation rate and the fact that there were few objections to the Settlement leave no question that the Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness."  *See, e.g., Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

With respect to the third *Grinnell* factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010).  As discussed above, the Parties have conducted informal written discovery related to issues of class certification and summary judgment, including the scope and size of the class; representative web and mobile pay flow and check out pages, digital acknowledgment emails, and direct mail reply cards during the relevant showing the content and presentation of the ARL disclosures over time; and Defendant's current and historical Terms of Sale and Terms of Service.  ECF No. 45 ¶ 11.  Class Counsel's experience in similar matters, as well as the efforts made by counsel, on both sides,

confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

As courts in this District have recognized, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). The discovery conducted in this matter clearly traverses this hurdle. This *Grinnell* factor thus also weighs in favor of final approval.

4.    **Plaintiff Faces Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial (*Grinnell* Factors 4, 5, And 6)**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id.* In weighing the risks of certifying a class and establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d. at 177.

Although Plaintiff's case is strong, it is not without risk. Defendant has filed a Motion to Dismiss and has made it clear that it will both move for summary judgment on various issues and vigorously contest the certification of a litigation class. In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendant's summary judgment motion and certifying a class, and further litigation will only delay relief to the Class Members. The Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after a decision on Defendant's Motion to Dismiss, after discovery is completed, and after exhaustive class certification briefing is filed.  Defendant would argue that individual questions preclude class certification, *e.g.*, because of the existence of a class action waiver for some Class Members or based on the claim that the Class includes uninjured members who were not harmed as a result of Defendant's alleged ARL violations.  Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.  Further, should the Court certify the Class pursuant to a contested motion, Defendant would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing.  Risk, expense, and delay permeate such a process.  Settling now avoids these risks.  Consequently, *Grinnell* factors 4, 5, and 6 weigh in favor of final approval of the Settlement.

## 5. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

While NYT could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank,* 228 F.R.D. at 186.  Thus, at worst, this factor is neutral.

## 6. The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Id.*  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion.'"  *Id.*  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  Per the Second Circuit in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.  As courts in this District have held, when a settlement assures immediate payment of substantial amounts to class members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" it is reasonable under this factor.  *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008).

Here, Settlement Class Members who neither submit a valid Claim Form nor opt-out of the Settlement will be automatically provided with a code for one month of free access to the appropriate NYT Subscription.  Settlement Class Members who submitted a valid Claim Form to the Settlement Administrator will receive a *pro rata* cash payment from the net Settlement Fund, which Class Counsel estimates will be approximately $20.05 per Class Member based on expected claims rates.[8]  In addition, Defendant has agreed to injunctive relief, and to pay the costs of notice and administration, as well as reasonable attorneys' fees and costs for Class Counsel, from the cash fund established by the Settlement.  Settlement ¶¶ 2.1-2.3.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  Thus, *Grinnell* factors 9 and 10 weigh in favor of final approval.

---

[8] Given that 10,541 cash claims were submitted, and there is $211,432 to distribute if the requested attorneys' fees, litigation expenses, and incentive award are granted in full (and notice and administration expenses are deducted), then the payout per cash claimant is presently estimated to be $20.05.

### C.     The Rule 23(e)(2) Factors

#### 1.     The Class Representative And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card*, 330 F.R.D. at 30; *Baffa*, 222 F.3d at 60; *Toure*, 2007 WL 2872455, at *7 (quoting *Denney*, 443 F.3d at 268).

As noted above, "plaintiff's interests are aligned with other class members' interests because [she] suffered the same injuries" – namely, paying a fee to Defendant due to its automatic renewal scheme. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). "Because of these injuries, plaintiff[] ha[s] an interest in vigorously pursuing the claims of the class." *Id.* Further, this Court and numerous other courts in this Circuit have previously found that Plaintiff's attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* ECF No. 43 ¶ 5 ("The Court finds that these attorneys are competent and capable of exercising the responsibilities of Class Counsel and that Plaintiff will adequately protect the interests of the Settlement Class defined below."); *see also* Klorczyk Decl. Ex. 2, Firm Resume of Bursor & Fisher, P.A. This Rule 23(e)(2) factor thus favors final approval.

#### 2.     The Settlement Was Negotiated At Arm's Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds*, 414 F. Supp. 3d at 693 (internal quotations omitted). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id.* Here, both counsel for Plaintiff and counsel for Defendant are experienced in class action litigation and engaged in protracted settlement discussions. Moreover, the Parties

participated in a mediation before Judge Andersen and engaged in protracted settlement discussions.  Accordingly, this Rule 23(e)(2) factor has been met.

### 3.    The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors . . .  including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial.  *In re Payment Card Interchange*, 330 F.R.D. at 36.  As noted above, the Settlement has met each of these *Grinnell* factors.  *Supra* §§ I.A(1)-(7).

As to "the effectiveness of any proposed method of distributing relief to the class," "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Payment Card Interchange*, 330 F.R.D. at 40. Here, under the terms of the Settlement, Settlement Class Members will <u>automatically</u> receive Automatic Access Codes for NYT Subscriptions <u>without having to file a claim or take any other</u> <u>action</u>.  Klorczyk Decl. Ex. 1, Settlement ¶ 2.2(a).  Alternatively, Settlement Class Members can submit a claim form and, if approved, receive a *pro rata* payment from the Settlement Fund in the form of a check.  *Id*. ¶ 2.2(a).  These class members will have one-hundred and eighty (180) days to cash the check.  *Id*. ¶ 2.2(d).  This plan was proposed by experienced and competent counsel with the assistance of an experienced neutral and ensures "the equitable and timely

distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds*, 414 F. Supp. 3d at 695.

As to "the terms of any proposed award of attorney's fees," Plaintiff's counsel will apply for attorneys' fees, costs, and expenses "not to exceed $1,250,000[,]" which constitutes approximately 22.5 percent of the Settlement Value.  Klorczyk Decl. Ex. 1, Settlement ¶ 8.1. This is a reasonable request, as courts in this Circuit routinely approve fee requests for up to one-third of a common fund.  *See Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award; noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund).  Indeed, as courts in this District have noted, fee requests for up to one-third of common funds represent what "reasonable, paying client[s] . . . typically pay . . . of their recoveries under private retainer agreements."  *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011). And courts in this district have previously approved Class Counsel's request for attorneys' fees equal to one-third of a settlement fund.  *See, e.g.*, *Ruppel*, No. 7:16-cv-02444 (S.D.N.Y), ECF No. 111 ¶ 14.

Finally, as to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds*, 414 F. Supp. 3d at 696, no

such agreement exists in this case, other than the Settlement Agreement.  In light of the foregoing, the Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C).

### 4.       The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange*, 330 F.R.D. at 47.  In addition to providing Automatic Access Codes to those who do nothing, the Settlement also distributes cash relief on a *pro rata* basis, which has been found by courts in this Circuit to be equitable.  *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably . . . and has the benefit of simplicity").  Thus, this Rule 23(e)(2) factor is weighs in favor of approval.

* * *

Because the Settlement is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter the Proposed Order.

Dated: August 27, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  _/s/ Frederick J. Klorczyk III_

Frederick J. Klorczyk III

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

_Class Counsel_